ACCEPTED
04-15-00532-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/8/2015 5:10:39 PM
KEITH HOTTLE
CLERK

**No.04-15-00532-CV**

IN THE COURT OF APPEALS
FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
9/8/2015 5:10:39 PM
KEITH E. HOTTLE
Clerk

_____

METSO MINERALS INDUSTRIES, INC.,

Appellant

v.

MAVERICK AGGREGATES, INC.,
Appellee

_____

From the 365th Judicial District Court in Maverick County, Texas,
Cause No. 12-09-27789-MCVAJA, *Maverick Aggregates, Inc., v. IPE Aggregate, LLC, Metso Minerals Industries, Inc. and Crisp Industries, Inc.*

_____

**MOTION FOR TEMPORARY ORDERS**
_____

**TO THE HONORABLE FOURTH COURT OF APPEALS:**

Now comes Appellant, Metso Minerals Industries, Inc. ("Metso"), and pursuant to TEX. R. APP. P. 29.3, files this motion requesting the Court enter temporary orders pending a final decision in this accelerated interlocutory appeal, and in support thereof, would show the Court as follows:

**INTRODUCTION**

Appellant Metso appeals from an interlocutory order signed by the trial court on August 25, 2015, in which the Court denied Metso's Application to Compel

1

Arbitration. *Tab 1: (Order)*[1]. The underlying lawsuit brought by appellee, Maverick Aggregates, Inc., involves allegations of breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, breach of contract, and negligent or fraudulent misrepresentation. *Tab 2: (Plaintiff's Second Amended Petition).* Because Maverick Aggregates seeks to derive a benefit from a contract containing both an express warranty and a valid arbitration clause, the doctrine of direct benefits estoppel mandates that Maverick Aggregates arbitrate all of its claims against Metso. *Tab 3: (Application to Compel Arbitration of Metso Minerals Industries, Inc. at p. 2*; *Tab 4: (Supplement to Defendant Metso Minerals Industries, Inc.'s Application to Compel Arbitration of Metso Minerals Industries, Inc. at Ex. Sup-3).*

At the trial court's hearing on arbitrability, Maverick Aggregates argued that Metso had waived its right to compel arbitration by substantially invoking the judicial process prior to filing its Application to Compel Arbitration; Metso adamantly disagreed. *RR 13-14, 16-18, 21-35.* Despite the fact that Plaintiff failed to even suggest it had been prejudiced by any such delay, the trial court denied Metso's Application to Compel Arbitration. *Tab 1*; *see RR 35.* Because a party does not waive a right to arbitration merely by delay, and because Maverick Aggregates failed to assert or present any evidence of prejudice, Metso will prevail in this accelerated interlocutory appeal. *See In re Service Corp. Int'l*, 85 S.W.3d

---

[1] Metso promptly requested the Clerk's Record, but as of the date of this filing, it has not yet been made available.

171, 174 (Tex. 2002) (per curiam); *see also In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763-64 (Tex. 2006) (per curiam) (determining that, although the relators had been litigating for two years in the trial court, the appellant had not demonstrated sufficient prejudice to overcome the strong presumption against waiver of the right to compel arbitration).

A stay of the lower court's proceedings is required in order to protect the parties' rights and preserve the jurisdiction of this Court. *See In re Merrill Lynch Trust Co., FSB*, 235 S.W.3d 185, 196 (Tex. 2007) (holding that the trial court abused its discretion in failing to compel arbitration of the plaintiff's claims and failing to stay such litigation until the arbitration was concluded); TEX. R. APP. P. 29.3. If Metso is required to attend and conduct depositions during the course of this appeal, the cost-saving benefits of arbitration will be greatly, if not completely, reduced, and both the state and federal presumptions in favor of arbitration will be ignored. All of the defendants are unopposed to a stay of the underlying lawsuit until such time as this Court makes a final determination in this accelerated interlocutory appeal.

## ISSUE PRESENTED

Because this Court has the authority to issue temporary orders to protect its jurisdiction or preserve the parties' rights, should it issue an order staying all of the proceedings in this matter at the trial court level until a final determination is

reached in this accelerated interlocutory appeal, so that the parties do not have to conduct expensive and potentially unnecessary discovery?

## PERTINENT BACKGROUND

The Fourth Amended Docket Control Order ("DCO"), signed by the presiding judge on June 10, 2015, mandates numerous deadlines for all parties. *Tab 5: (Fourth Amended DCO).* The parties attempted to negotiate a Rule 11 Agreement to stay the upcoming deadlines and, although an agreement was reached, Maverick Aggregates failed to provide a signed Rule 11 Agreement until after Metso's deadline for amending its pleadings. *Tab 6: (Email from Plaintiff with Initial Rule 11 Agreement).* Thus, Metso and co-defendant Crisp Industries, Inc. ("Crisp") both reluctantly filed their amended pleadings, subject to their Applications to Compel Arbitration, expressly stating they were only doing so to comply with the trial court's mandated deadlines—and not to invoke the judicial process. *Tabs 7, 8: (Amended Answers of Metso and Crisp).*

Thereafter, the parties attempted to enter an amended Rule 11 Agreement to reflect that an accelerated interlocutory appeal would be filed and that the filing of the Rule 11 Agreement was not intended to constitute an invocation of the judicial process. Maverick Aggregates was provided with the amended Rule 11 Agreement—signed by all of the defendants—on August 26, 2015. *Tab 9: (Amended Rule 11 Agreement).* To date, Plaintiff has failed to sign the agreement, and has indicated that although it has no objection to suspending deadlines while

the interlocutory appeal is being considered, it is opposed to staying "the entire case while the Court of Appeals decides whether the case against one of the parties should be sent to arbitration." *Tab 10: (August 2015 emails between Plaintiff's counsel and Metso's counsel).* Thus at this juncture, the underlying proceedings have not been completely stayed by statute, by order of the Court, or by agreement of the parties.

## ARGUMENT

"When an appeal from an interlocutory order is perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal . . . ." TEX. R. APP. P. 29.3. If alleged claims must be arbitrated, that proceeding must be given priority so that it is not rendered moot by deciding the same issues in court. *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 196 (Tex. 2007); *cf.* TEX. CIV. PRAC. & REM. CODE § 171.025 (a court must stay a proceeding that involves an issue subject to arbitration if an application for that order is made under the Texas Arbitration Act). During an interim period, a stay of litigation ensures that a Plaintiff being compelled to arbitration does not both have the benefit of a contract while defeating it too. *See In re Merrill Lynch Trust Co., supra.*

As Plaintiff's pleadings and emails show, it would like the benefits from Metso's express warranty, but seeks to avoid arbitration. In the process, Maverick Aggregates is driving up defendants' legal costs and expenses. *See Tab 11:*

*(Plaintiff's Response and Objections to Application to Compel Arbitration of Metso Minerals Industries, Inc. at p. 12)* (requesting an evidentiary hearing on the issue of arbitrability be scheduled "with sufficient time to allow Plaintiff to conduct written and deposition discovery of witnesses relevant to these issues, including but not limited to all electronic versions of documents at issue in this case, and all individuals identified as authors or any and all documents Defendant seeks to admit into evidence in this case, together with sufficient time in that discovery period for the forensic analysis of all documents, necessary computers, hard drives, backup tapes, and metadata of/from such documents and items. Plaintiff further requests this Court issue an Order allowing Plaintiff to conduct electronic discovery with regard to the relevant documents to Defendant's Application, permitting the necessary time frame for Plaintiff to conduct forensic computer analysis prior to the evidentiary hearing in this case")); *Tab 10.* In sum, after initially requesting costly discovery ostensibly to determine the issue of arbitrability, Plaintiff now contends that it should be allowed to conduct expensive and time consuming depositions—but without being subject to any deadlines.

Direct benefits estoppel, under which Metso is requesting the Court compel arbitration, is based in equity. This Court would forfeit its jurisdiction to make a determination based on this equitable principle, if all of the defendants were forced to undertake expensive depositions at the bequest of a Plaintiff who would not be able to compel such depositions in arbitration. *See Tab 12*, ICC Rules, Article 25.

Further, Metso has the right to request an accelerated appeal on the issue of arbitrability and should not be unfairly subjected to unnecessary discovery expenses by Maverick Aggregates. *Cf. In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Courts must focus on preserving the right to meaningful arbitration rather than addressing potential harm to the rights of a non-signatory.").

## REQUEST FOR RELIEF

For these reasons, Appellant Metso Minerals Industries, Inc. asks this Court to grant all orders necessary to preserve this Court's jurisdiction and protect Metso Minerals Industries, Inc.'s rights, including:

- Staying all proceedings in the trial court matter (Cause No. 12-09-27789-MCVAJA in the 365th Judicial District Court in Maverick County, Texas) as of the date the Notice of Appeal was signed (August 25, 2015), until such time as this Court makes a final determination on Metso Mineral Industries, Inc.'s accelerated interlocutory appeal of the denial of its Application to Compel Arbitration; and

- Grant Metso Minerals Industries, Inc., all other relief to which it is entitled.

Respectfully submitted,

*/s/Catherine M. Stone*
CATHERINE M. STONE
State Bar No. 19286000
Email: cstone@langleybanack.com
PAULA C. BOSTON
State Bar No. 24089661
Email: pboston@langleybanack.com
LANGLEY & BANACK, INC.
745 E. Mulberry, Ste. 900
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Facsimile

ATTORNEYS FOR APPELLANT
METSO MINERALS INDUSTRIES, INC.

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), Appellant Metso Minerals Industries, Inc. certifies that the number of words in Appellant's Motion for Temporary Orders to Preserve Jurisdiction and Protect Rights Pending Appeal, including its headings, footnotes, and quotations, is: **1,497**.

/s/ *Paula C. Boston*
PAULA C. BOSTON

## CERTIFICATE OF CONFERENCE

The undersigned attorney has conferred with Appellee's attorney, Daniel R. Dutko, regarding this Motion, and he is opposed to it.

*/s/ Paula C. Boston*
PAULA C. BOSTON

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document has been served upon the following counsel of record pursuant to the Texas Rules of Appellate Procedure on September 8, 2015.

Mr. Daniel R. Dutko
HANSZEN LAPORTE
11767 Katy Freeway, Ste. 850
Houston, Texas 77970
DDutko@hanszenlaporte.com
FAX: 713-524-2580
ATTORNEYS FOR APPELLEE
MAVERICK AGGREGATES, INC.

*/s/ Paula C. Boston*
PAULA C. BOSTON

## INDEX OF TABS

Tab 1:      Order Denying Application to Compel Arbitration of Metso Minerals Industries, Inc.

Tab 2:      Plaintiff's Second Amended Petition

Tab 3:      Application to Compel Arbitration of Metso Minerals Industries, Inc.

Tab 4:      Supplement to Defendant Metso Minerals Industries, Inc.'s Application to Compel Arbitration of Metso Minerals Industries, Inc.

Tab 5:      Fourth Amended Docket Control Order

Tab 6:      Email from Plaintiff with Initial Rule 11 Agreement

Tab 7:      Metso Minerals Industries, Inc.'s First Amended Answer to Plaintiff's First Amended Petition and Cross Claim

Tab 8:      Crisp Industries, Inc.'s First Amended Answer and Counterclaim

Tab 9:      Amended Rule 11 Agreement

Tab 10:     August 2015 Emails between Plaintiff's counsel and Metso's counsel

Tab 11:     Plaintiff's Response to Application to Compel Arbitration of Metso's Minerals Industries, Inc.

Tab 12:     ICC Rules

# Tab 1

Order

CAUSE NO. 12-09-27789-MCVAJA

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC.,<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | 365th JUDICIAL DISTRICT |
| IPE AGGREGATE, LLC,<br>METSO MINERALS INDUSTRIES, INC.<br>and CRISP INDUSTRIES, INC.,<br>Defendants. | §<br>§<br>§<br>§ | MAVERICK COUNTY, TEXAS |

## ORDER DENYING APPLICATION TO COMPEL ARBITRATION OF METSO MINERALS INDUSTRIES, INC.

On this 28th day of July, 2015, came to be heard the Application to Compel Arbitration of Metso Minerals Industries, Inc., and the Plaintiff's Response, Defendant's Supplement, Defendant's Reply, and Plaintiff's Sur-Reply thereto. After considering the Motion; the related Response, Supplement, Reply and Sur-Reply; the evidence presented; and the arguments of counsel, the Court DENIES the Application to Compel Arbitration.

Dated this _25_ day of August, 2015.

_____
JUDGE PRESIDING

L & B 14833/0002/1.1010224.DOCX/                    1

AGREED TO AS TO FORM ONLY—DEFENDANT METSO MINERALS INDUSTRIES, INC. DISAGREES WITH THE DENIAL OF ITS APPLICATION TO COMPEL ARBITRATION—BY:

Heriberto Morales, Jr.
State Bar No. 24011285
Eric W. Matzke (*pro hac vice*)
WI State Bar No. 1079340
ATTORNEYS FOR DEFENDANT,
METSO MINERAL INDUSTRIES, INC.

AGREED TO AND APPROVED BY:

Daniel Dutko
State Bar No. 24054206
ATTORNEY FOR PLAINTIFF

AGREED TO AS TO FORM ONLY BY:

Oscar A. Garza
State Bar No. 24040960
ATTORNEY FOR DEFENDANT,
IPE AGGREGATE, LLC

G. Alan Powers
State Bar No. 24005089
ATTORNEY FOR DEFENDANT,
CRISP INDUSTRIES, INC.

L & B 14833/0002/L1010224.DOCX/                    2

# Tab 2

Plaintiff's Second Amended Petition



CAUSE NO. 12-09-27789-MCVAJA

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC. | § | IN THE DISTRICT COURT |
|     Plaintiff | § | |
| | § | |
| | § | 365TH JUDICIAL DISTRICT |

365TH — 365TH JUDICIAL DISTRICT

MAVERICK AGGREGATES, INC.    §    IN THE DISTRICT COURT
    Plaintiff    §
   §
   §    365TH JUDICIAL DISTRICT
   §
   §
v.    §
   §
IPE AGGREGATE, LLC.    §
AND METSO MINERALS    §
INDUSTRIES INC.    §
    Defendants    §    MAVERICK COUNTY, TEXAS

**PLAINTIFF'S SECOND AMENDED PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MAVERICK AGGREGATES, INC.., hereinafter sometimes referred to as "Plaintiff", complaining of IPE AGGREGATE, L.L.C., METSO MINERAL INDUSTRIES, INC., and CRISP INDUSTRIES, INC. for cause of action would respectfully show unto the Court as follows:

## I.    DISCOVERY

1.1    Plaintiff affirmatively pleads that discovery should be conducted in accordance with a Level II discovery control plan under Rule 190.3 of the Texas Rules of Civil Procedure.

## II.    PARTIES

2.1    Plaintiff, MAVERICK AGGREGATES, INC., is a Texas corporation doing business in Texas.

2.2    Defendant, IPE AGGREGATE, L.L.C. is a Texas Limited Liability Company. Service of process is not necessary because Defendant has appeared and answered and is currently before this Court

FILED
AT 3:14 O'CLOCK P M

JUN 04 2013

IRENE RODRIGUEZ
DISTRICT CLERK, MAVERICK COUNTY, TEXAS
BY_____ DEPUTY

2.3 Defendant, METSO MINERAL INDUSTRIES, INC. is a Texas Corporation. Service of process is not necessary because Defendant has appeared and answered and is currently before this Court

2.4 Defendant, CRISP INDUSTRIES, INC., is a Texas Corporation. Service of process may be effectuated by serving its President: John Crisp, Crisp Industries, Inc., P.O. Box 326, Bridgeport, Texas 76426.

## III.    JURISDICTION & VENUE

3.1 Venue is proper in Maverick County, Texas, pursuant to Section 15.002 (a) (1) of the Texas Civil Practice and Remedies Code, since all or a substantial part of the events or omissions giving rise to the claim occurred in Maverick County, Texas.

3.2 Jurisdiction is proper in this Court because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

## IV.    FACTS

4.1 Plaintiff, MAVERICK AGGREGATES, INC, purchased a Metso ST358 screener from Defendant IPE AGGREGATE, LLC. on March 11, 2011.

4.2 Plaintiff paid a total of $297,687.00 for the Metso ST358.

4.3 Ignacio Martinez a representative from Defendant IPE AGGREGATE, L.L.C. and METSO MINERAL INDUSTRIES, INC., represented to plaintiff that the Metso had a near new condition, but had all the manufacturer warranties for a full year or 1800 hours. CRISP INDUSTRIES, INC. is an authorized dealer for METSO MINERAL INDUSTRIES, INC. and which was in fact the owner of the Metso ST358 Screener and who authorized IPE AGGREGATES, L.L.C. to sell said screener to Plaintiff.

4.4     Since the purchase of the Metso Plaintiff has encountered several mechanical problems with the Screener which have rendered the Metso ST358 inoperable.

4.5     Plaintiff had to incur repair costs of $15,579.00 to replace a hydraulic pump.

4.6     Plaintiff has found the need to purchase an additional screener in order to maintain his business in operation and to mitigate its losses.

4.7     On February 21, 2012 Defendant IPE AGGREGATE, L.L.C. was given notice of yet another breakdown which has rendered the Metso inoperable.

## V.     BREACH OF CONTRACT

5.1     Plaintiff would allege that he entered into a contract with IPE AGGREGATE, L.L.C .for the purchase of a Metso screener, which included a full factory warranty.

5.2     Plaintiff would further allege that by the terms of the agreement, IPE AGGREGATE, L.L.C. promised to make valid the full factory warranty by either IPE AGGREGATE, L.L.C. performing the repairs or by contacting Defendants METSO MINERAL INDUSTRIES, INC. and/or CRISP INDUSTRIES, INC., and IPE AGGREGATE, L.L.C. failed to perform on the warranty as per the agreement with Plaintiff which constitutes a material breach of contract.

5.3     Plaintiff would further allege that they have fully performed all conditions, covenants, and promises under their respective contract with IPE AGGREGATE, L.L.C.

5.4     As of the date of filing this petition Plaintiff MAVERICK AGGREGATES, INC.'s damages due from Defendants IPE AGGREGATE, L.L.C. and METSO MINERAL INDUSTRIES, INC. and CRISP INDUSTRIES, INC.'S material breach total $313,216.00. IPE AGGREGATE, L.L.C. and METSO MINERAL INDUSTRIES, INC. and CRISP INDUSTRIES,

INC.'s material breach of its contract with MAVERICK AGGREGATES, INC. has been the direct and proximate cause of damages to Plaintiff.

5.5 Defendants' conduct has made it necessary for Plaintiff to employ the undersigned attorney to file this suit. This claim was timely presented to Defendants and remains unpaid. A reasonable fee for attorney's services rendered and to be rendered in this case collectively is $80,000.00, plus reasonable attorney fees for any necessary appeals.

## VI. NEGLIGENT OR FRAUDALENT MISREPRESENTATION

6.1 On March 11, 2011 the Plaintiff was informed by Defendants that the Metso was still under warranty as it had full manufacture warranty.

6.2 The invoice expressly states that the Metso, has one full year or 1800 hours of warranty.

6.3 Defendants IPE AGGREGATE, L.L.C. and METSO MINERAL INDUSTRIES, INC. and CRISP INDUSTRIES, INC. negligently or fraudulently misrepresented the presence of a full warranty. This misrepresentation was made with the intent of obtaining an unjust advantage over the plaintiff, which caused Plaintiff injury

## VII. BREACH OF EXPRESS WARRANTY

7.1 The invoice attached hereto, expressly states the full manufacture warranty for one year or 1800 that the Metso screener has.

7.2 Defendants IPE AGGREGATE, L.L.C. and METSO MINERAL INDUSTRIES, INC. and CRISP INDUSTRIES, INC. breached this express warranty, and caused Plaintiff damages.

7.3 Plaintiff asserts a cause of action for recovery of the damages related to this breach

## VIII.   BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

8.1  Defendants are all merchants of the Metso Screener, and an action is asserted against them for breach of implied warranty of fitness for a particular purpose.

8.2  At the time the Defendants entered into the applicable contracts, they had reason to know that the Metso Screener was being purchased for the purpose of screening different types of soils, and Defendants' breached this express warranties, and subsequently that Plaintiff has been damaged for the same, and asserts a cause of action for recovery of its damages related to this breach.

## IX.   BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

9.1  Defendants are all merchants of Metso Screener, and an action is asserted against them for breach of implied warranty of merchantability.

9.2  At the time the Defendants entered into the applicable contracts, they had reason to know that the Metso Screener was being purchased for the purpose of screening different types of soils, and Defendants breached this implied warranty of merchantability, by selling the particular Metso Screener that was defective and not reasonably fit for the ordinary purpose for which the Metso is used for. As a result of the breach of this implied warranty of merchantability, the Plaintiff has suffered damages.

## X.   PRAYER

**WHEREFORE**, Plaintiff request that the Defendants be served with process, and that after due proceedings are had, a judgment be entered in favor of the Petitioners and against the Defendants, jointly and severally, for (i) damages, (ii) attorneys fees, (iii) costs, (iv) post-judgment and pre-judgment interest at the maximum rate allowable at law, (v) punitive damages in an amount to be determined at trial, (vi) all statutory damages,

(vii) disgorgement of Defendants' profits from sale, (viii) reimbursement for all costs and expenses insured in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal and equitable relief to which Plaintiffs may be entitled; (ix) diminution in value of the business; (x) any and all other just and equitable relief that this Court determines just and equitable under the law.

Respectfully submitted,

**RUIZ & ASSOCIATES, P. C.**
513 N. Ceylon St.
Eagle Pass, Texas 78852
Telephone No.: (830) 773-7500
Facsimile No.: (830) 773-7711

**JOSE J. RUIZ**
State Bar No. 17385960

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of May, 2013, a true and correct copy

of the Plaintiff's First Amended Petition has been served **VIA FACSIMILE TRANSMISSION**,

upon the following counsel of record:

Mr. Heriberto Morales, Jr.
**LANGLEY & BANACK**
401 Quarry Street
Eagle Pass, Texas 78852
*Via Facsimile No. 757-4045*

Mr. Oscar A. Garza
**THE LAW FIRM OF OSCAR A. GARZA, L.L.C.**
111 Soledad St. 300
San Antonio, Texas 78205
*Via Facsimile No. (210) 299-7711*

JOSE J. RUIZ

# CITATION BY MAILING

THE STATE OF TEXAS

CRISP INDUSTRIES, INC. / BY AND THRU ITS PRESIDENT FOR SERVICE: JOHN CRISP / P.O. BOX 326 / BRIDGEPORT, TX 76426

Defendant, in the hereinafter styled and numbered cause:

## NOTICE

You have sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration or twenty days after you were served this citation and petition, default judgment may be taken against you.

YOU ARE HEREBY COMMANDED to appear before the 365TH Judicial District Court of the City of Eagle Pass, Texas, County of Maverick, Texas, by filing a written answer to the Petition of Plaintiff at or before 10:00 a.m. of the Monday next after the expiration of 38 days from the date the citation was placed in the custody of the U.S. Postal Service in accordance with the clerk's standard mailing procedures and state the date that the citation was placed in the custody of the U.S. Postal Service by the clerk. Hereof, a copy of which accompanies the Citation, in Cause Number 12-09-27789-MCVAJA styled MAVERICK AGGREGATES, INC. VS. IPE AGGREGATE, LLC. AND METSO MINERALS INDUSTRIES INC. filed in said Court on 6/4/13. Plaintiff is represented by JOSE J. RUIZ / 513 N. CEYLON ST. / EAGLE PASS, TX 78852. ISSUED AND GIVEN UNDER MY HAND AND SEAL of said court at this office on this 13TH day of JUNE, 2013.

IRENE RODRIGUEZ
District Clerk, Maverick County, Texas
500 Quarry St. Ste. 5
Eagle Pass, TX 78852
By:_____
Deputy

## OFFICER'S RETURN BY MAILING

Came to hand the _____ day of _____ 20___, and executed by mailing to the Defendant certified mail, return receipt requested to wit restricted delivery a true and correct copy of this citation together with an attached copy of Plaintiff's Petition to the following address:

| Defendant | Address |
|---|---|

Service upon the Defendant is evidenced by the return receipt
Incorporated herein and attached hereto, signed by _____and dated
_____.

*Citation was not served despite the following use of diligence to execute service by the officer or person authorized to execute this citation: _____
_____.

Citation was not executed because _____.
Defendant may be found at: _____.
To certify which witness my hand officially.

_____County, Texas
By; _____Deputy Fee for Servicing Citation
$ _____

# Tab 3

Application to Compel Arbitration of Metso Minerals Industries, Inc.

CAUSE NO. 12-09-27789-MWAJA

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 365th JUDICIAL DISTRICT |
| | § | |
| IPE AGGREGATE, LLC, | § | |
| METSO MINERALS INDUSTRIES, INC., | § | |
| and CRISP INDUSTRIES, INC. | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

---

## APPLICATION TO COMPEL ARBITRATION OF
## METSO MINERALS INDUSTRIES, INC.

---

TO THE HONORABLE JUDGE OF SAID COURT:

Metso Minerals, Industries, Inc. ("Metso"), one of the Defendants in this cause, files this Application to Compel Arbitration and would show as follows:

SUMMARY OF THE CASE

The subject lawsuit is a breach of contract and warranty action involving a Metso ST358 Screener ("Screener") that Maverick Aggregates, Inc. ("Plaintiff") purchased from Defendant, IPE Aggregate, LLC ("IPE") on March 11, 2011. In its Second Amended Petition ("Petition"), Plaintiff alleges that although IPE sold the Screener, at the time of the sale, the machine was owned by Defendant, Crisp Industries, Inc. ("Crisp"). Petition, par 4.1-4.3. Plaintiff's basic complaint is that the Screener did not meet its expectations and frequently broke down and, accordingly, all Defendants breached their contract to Plaintiff as well as the Screener's "express warranty". Petition, par. 7.2.

FILED
AT ___ O'CLOCK ___ M

FEB 05 2015

LEOPOLDO VIELMA
District Clerk Maverick County, Texas
By _____ Deputy

## METSO DOCUMENTS

1.      Metso sold the Screener to Crisp in December, 2010.  A copy of the sales order confirmation for that purchase by Crisp, inclusive of the bill of lading and the terms and conditions of the express warranty, are attached as Exhibit A and B.  Finally, also attached as Exhibit C is an email chain between a Metso representative and a Crisp representative generally outlining the terms of the sale and providing for a warranty of one year or 1,800 hours, whichever comes first.

## BASIS FOR MOTION

2.      Metso did not have any contractual relationship with Plaintiff with regard to the sale of this Screener.  However, Plaintiff is asserting both breach of warranty and breach of contract claims against Metso.  In that regard, Plaintiff has produced documents it received from IPE which purport to extend a "full factory warranty," without any explanation as to what that "warranty" is.  Assuming this factory warranty references Metso, it would show that the only contract/warranty dealings Metso had with regard to the Screener were with Crisp, namely Exhibits A and C.

3.      The sales order (Exhibit A) between Metso and Crisp provides under Paragraph 20 of the terms and conditions that should any dispute arise regarding the agreement, sale of the machinery or terms of the warranty, the same shall be resolved in the Rules of Arbitration of the International Chamber of Commerce ("Rules").  (*Id*. at bates number Metso/Maverick 0163).

4.      Because Plaintiff seeks recovery from Metso under a breach of express warranty theory, and the only warranty Metso extended with regard to the Screener is the standard Metso product warranty which is described in Exhibits A and C, Plaintiff necessarily has accepted the benefits of those documents – namely the warranty – and must likewise accept the terms and conditions of that warranty, to wit: the agreement to arbitrate.  Metso, therefore, moves the court to

compel arbitration in this proceeding pursuant to the aforementioned Rules as to all parties in this proceeding and to obey this proceeding accordingly until the arbitration action is terminated.

**WHEREFORE, PREMISES CONSIDERED**, Metso Minerals Industries, Inc., requests that this Application to Compel Arbitration be granted and that as granted, the case as to all parties be referred to arbitration pursuant to Rules referenced in the sales order confirmation attached as Exhibit A.

Respectfully submitted,

**QUARLES & BRADY, LLP**
411 East Wisconsin Avenue
Suite 2350
Milwaukee, Wisconsin 53202
(414) 277-5365 Telephone
(414) 978-8906 Facsimile

**LANGLEY & BANACK, INC.**
401 Quarry Street
Eagle Pass, Texas 78852
(830) 773-6700 Telephone
(830) 757-4045 Facsimile

Heriberto Morales, Jr.
State Bar No. 24011285
Michael C. Boyle
State Bar No. 02797600

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been sent to:

Mr. Jose J. Ruiz                            **VIA FACSIMILE (830) 773-7711**
Ruiz & Associates, P.C.
513 Ceylon Street
Eagle Pass, Texas 78852

Mr. Oscar A. Garza                      **VIA FACSIMILE (210) 299-7711**
The Law Firm of Oscar A. Garza, LLC
111 Soledad Street, Suite 300
San Antonio, Texas 78205

Mr. Michael A. Simpson                **VIA FACSIMILE (940) 683-3122**
Mr. G. Alan Powers
Simpson, Boyd & Powers
P.O. Box 685
1119 Halsell Street
Bridgeport, Texas 76426

on this 5th day of February, 2015.

Heriberto Morales, Jr.
Michael C. Boyle



# Sales Order Confirmation
301209892

**Sold To**
Crisp Industries Inc,
PO Box 328
BRIDGEPORT TX 76426-0328
USA

**Ship To**
Maverick Concrete
1002 Carlton Drive
EAGLE PASS TX 78852
USA

**Bill To**
Crisp Industries Inc,
PO Box 328
BRIDGEPORT TX 76426-0328
USA

**Information**

| | |
|---|---|
| Sales Order No. | 301209892 |
| Order Date | 2010DEC08 |
| Metso Contact | Kathleen Laska |
| Telephone | 1-262-717-2622 |
| Sales Representative | Christian Aparicio |
| Customer Number | 183179 |
| Customer Contact | Terry Holland |
| Telephone | 940-683-4070 |
| Fax Number | 940-683-2161 |
| Purchase Order No. | 05621 |

**Additional Information**

| | | |
|---|---|---|
| Payment Terms | 30 days net | Marking |
| Currency | USD | |
| Incoterms | FCA / SHIPPING POINT | |
| Freight Pay. Terms | Hold for pickup | |
| Ship Via | Ground | |
| Partial Shipment | Yes | |
| Delivery Priority | Stock | |

| Item | Material/ Description | Quantity Ordered | Quantity Confirmed | UM | Ship Date | Unit Price | Item Discount | Extended Price |
|---|---|---|---|---|---|---|---|---|
| 10 | MM0244115 MOBILE SCREEN MOBILE SCREEN ST358, SN R3581310 | 1 | 1 | EA | | 212,500.00 | 20.00 % | 170,000.00 |

| | |
|---|---|
| Subtotal | 170,000.00 |
| Total Tax | 0.00 |
| Total (USD) | 170,000.00 |

Metso Minerals Industries Inc.
20965 Crossroads Circle
Waukesha, WI 53186 USA
MA: MI797 FA:MI797



**EXHIBIT A**

Wire Transfer: Wachovia Bank, N.A.
For: Metso Minerals Industries, Inc.
Acct. No: 2079800137141 ABA0530-00219
Swift Code: PNBPUS3S
Tax ID 39:159880170
Check Remit to: Metso Minerals Industries Inc.
PO Box 845859 Atlanta, GA 00394-5859

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Metso/Maverick 0161


| Total Excl. Tax (USD): | 170,000.00 |
|---|---|

*If this order is exempt from tax, please send an exemption certificate as soon as possible. If no exemption certificate is received, tax will be charged on the invoice*

Metso Minerals Industries Inc.
20965 Crossroads Circle
Waukesha, WI 53186 USA
MA: MI797 FA:MI797

Wire Transfer: Wachovia Bank, N.A.
For: Metso Minerals Industries, Inc.
Acct. No: 2079900137141 ABA0530-00219
Swift Code: PNBPUS33
Tax ID 39:169980170
Check Remit to: Metso Minerals Industries Inc.
PO Box 845859 Atlanta,GA 30384-5859

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Metso/Maverick 0162

1. "Metso" means Metso Minerals Industries, Inc., or a Metso corporate affiliate identified in the Proposal. "Proposal" means the Metso proposal, quotation, estimate or other Metso supplied documents and all addenda thereto, including drawings and specifications, that describe a scope of supply. The provisions of this Metso Sales Terms and Conditions document are a part of the Proposal, except to the limited extent specifically provided elsewhere in the Proposal. "Agreement" means the Proposal and any other term, condition, or provision if and to the extent agreed to in writing Metso. "Product(s)" means the Metso supplied equipment and related parts, software, services or documentation as described in the Proposal.

2. BUYER'S ACCEPTANCE OF THE PROPOSAL IS EXPRESSLY LIMITED TO AND CONDITIONED UPON ACCEPTANCE ALL OF THE PROVISIONS THEREOF, INCLUDING THESE SALES TERMS AND CONDITIONS. IF A METSO PROPOSAL IS CONSTRUED AS AN ACCEPTANCE OF BUYER'S OFFER OR AS A CONFIRMATION OF AN EXISTING CONTRACT, SUCH ACCEPTANCE OR CONFIRMATION IS EXPRESSLY CONDITIONED ON THE BUYER'S ASSENT TO ANY ADDITIONAL OR DIFFERENT TERMS CONTAINED HEREIN.

3. PRICE & PAYMENT: (A) Prices and payments are in U.S. Dollars and do not include any sales, use or excise taxes, customs duties or similar charges or fees. If not specifically stated elsewhere in the Proposal, Prices do not include the services of any representative of Metso including, but not limited to the assistance in the installation, inspection or startup of the Products. Pro rata payments are due for partial shipments. If shipment is delayed by Buyer, the date the shipment is ready shall be deemed to be the date of delivery for payment purposes and Metso reserves the right to store the Products at Buyer's risk and expense. If Buyer fails to pay by the due date, Metso shall be entitled to interest at a rate of 1.5% per month not to exceed the legal maximum. The Proposal is subject to credit approval and Metso's right to require an irrevocable letter of credit established in acceptable form with a prime U.S. bank. (B) For sales under $50,000 payment shall be net cash 30 days after shipment. For sales between $50,000 and $150,000, payment shall be 15% down payment due at time of Buyer's purchase order placement with remaining 85%, net cash 30 days after shipment. For sales over $150,000, payment shall be progress milestones as described elsewhere in the Proposal. (D) Metso shall have the right to suspend its performance of the Agreement if Buyer fails to pay on any due date.

4. DELIVERY: Delivery terms shall be a current Incoterm. Partial deliveries and transshipments are permitted. All delivery dates are approximate.

5. REJECTION: Any rejection of Products must be made by the Buyer in writing within a reasonable time after delivery but in no event later than thirty (30) business days after delivery. Failure to make such claim within the stated period shall constitute an irrevocable acceptance of the Products.

6. LIMITED WARRANTY: Except as provided herein, Metso warrants that Products will be free of defects in workmanship and material. This warranty covers the Buyer only and is not transferable. EXCEPT FOR WARRANTY OF TITLE, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER REPRESENTATIONS, WARRANTIES, GUARANTEES AND THE LIKE, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, AND CONSTITUTES THE ONLY WARRANTY OF METSO WITH RESPECT TO THE PRODUCTS.

EXCLUSIONS TO WARRANTY: METSO MAKES NO WARRANTIES AS TO PERFORMANCE OR PRODUCTION, NOR AS TO WEAR PARTS OR CONSUMABLES, NOR AS TO ANY SEPARATELY LISTED ITEM OF THE PRODUCT(S) WHICH IS NOT MANUFACTURED BY METSO, which latter item shall be covered only by the manufacturer's warranty, if any. Metso and its suppliers shall have no obligation under the limited warranty as to any Product which has been improperly stored or handled, or which has not been installed, operated or maintained according to Metso or supplier furnished manuals or other instructions or is operated during the warranty remedy period with other than genuine Metso parts.

7. LIMITED WARRANTY REMEDY: (A) If, within twelve (12) months from date of delivery, but not more than eighteen (18) months from date that Buyer is advised that Products are ready for shipment, Buyer discovers that a Product was not as warranted and promptly notifies Metso in writing thereof, Metso shall cause the repair or replacement the defective Product or part thereof. Buyer shall assume all responsibility and expense for removal, reinstallation, and freight in connection with replacement parts furnished by Metso. Buyer's entitlement to warranty remedies is contingent upon Buyer's cooperation in permitting Metso to investigate the defect and in returning replaced parts to Metso, if requested, at Metso's expense. The warranty period shall not be extended by the repair or replacement, nor shall there be a separate warranty period for any replacement Product or part. The warranty remedy period for Metso spare parts (not replacement parts furnished under warranty) is six (6) months from date of delivery. (B) If, after a reasonable number of repeated efforts, Metso determines that it is unable to repair or replace a defective Product or part, Buyer shall, at Metso's option, return the Product (or part thereof, if such does not materially impair the value of the remaining Product) to Metso at Buyer's expense and Metso shall return the applicable purchase price as Buyer's entire and exclusive remedy. (C) THE REMEDIES EXPRESSLY PROVIDED HEREIN ARE BUYER'S EXCLUSIVE REMEDY AGAINST METSO AND ITS SUPPLIERS UNDER THE AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY, AND WHETHER ARISING OUT OF WARRANTIES, REPRESENTATIONS, INSTRUCTIONS, INSTALLATIONS OR DEFECTS FROM ANY CAUSE. (D) If the foregoing disclaimer of additional warranties is not given full force and effect, any resulting additional warranty shall be limited in duration to the above warranty remedy periods and be otherwise subject to and limited by these sales terms and conditions.

8. BUYER'S PERMITS, APPROVALS AND DATA: Buyer shall provide and pay for all permits and licenses required for the installation and operation of the Products. Timely performance by Metso is contingent upon Buyer's supplying to Metso, when needed, all required technical information and data, including drawing approval, and all required commercial documentation.

10. FOUNDATIONS: Buyer shall be solely responsible for the design and construction of foundations. Any plans furnished by Metso shall be considered examples only, and Metso assumes no responsibility for foundation adequacy and disclaims any liability arising out of inadequate foundations and any effect on Products.

11. BUYER EMPLOYEES AND PREMISES: Compliance with OSHA, MSHA or similar federal, state local laws during any installation, operation, or use of the Product(s) is the sole responsibility of Buyer.

12. NUCLEAR AND HAZARDOUS WASTE USES: Products shall not be used in or in connection with a nuclear or hazardous waste application, and Buyer agrees to indemnify, defend, and hold Metso harmless from all loss, cost, damage, expense and other liability whatsoever from such use. Buyer also acknowledges its responsibility for the disposal of any Products

(including any computer or other electronic equipment or components) in accordance with applicable law, including any recycling, reporting or record keeping requirements.

13. RELIEF: If Metso is hindered or suffers delay in performance due to any cause beyond its reasonable control, including but not limited to war or other hostilities or civil unrest, act or failure to act of government, lack or loss of services or access (such as utilities or roads), act of God, including fire, flood, earthquake, landslide, or extreme weather event, strike or other labor trouble, or any sabotage, the time of performance shall be extended a period of time equal to the period of the resulting inability to perform and its consequences. In no event shall Metso have liability to Buyer arising out of any such delays. If the delay arising under this section is more than 180 days, either party has the right to terminate the Agreement and the parties' respective obligations shall be equitably adjusted. Metso shall be reimbursed and for any additional costs it reasonably incurs as a direct result of Buyer's delay or inability or failure to perform.

14. INTELLECTUAL PROPERTY. (A) Metso shall pay costs and damages finally awarded to the extent based upon a finding by a U.S. court that the design or construction of a Product as furnished infringes a U.S. patent or copyright (except infringement occurring as a result of incorporating a design or modification at Buyer's request or Buyer's use of the Products in a manner contrary to the Agreement or Metso's manuals or instructions), provided that Buyer promptly notifies Metso in writing of any claim of such infringement, and Metso is given the right at its expense to settle and defend and control the defense of any such claim. THIS SECTION SETS FORTH METSO'S EXCLUSIVE LIABILITY WITH RESPECT TO INFRINGEMENT OF INTELLECTUAL PROPERTY. (B) All drawings, specifications, data, software, firmware, manuals, instructions, documentation or other works of authorship furnished by Metso are copyrighted property of Metso or its suppliers, and are to be used by Buyer only for the purpose of installing, operating, maintaining and repairing the Products. Such works and data may not be otherwise used or reproduced or disclosed. (C) Metso or its suppliers retain all right, title and interest in and to its and their inventions, discoveries, concepts, ideas or other intellectual property embodied in or related to its Products.

15. LIMITATION OF LIABILITY.

(A) NEITHER METSO NOR ITS SUPPLIERS SHALL BE LIABLE, WHETHER IN CONTRACT (INCLUDING BREACH OF REPRESENTATION OR WARRANTY) OR IN TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), OR FOR INFRINGEMENT OR UNDER ANY OTHER LEGAL THEORY, FOR LOSS OF USE, PRODUCTION, REVENUE OR PROFIT, OR FOR COST OF CAPITAL, OR FOR INCREASED COSTS OF OPERATION OR MAINTENANCE, OR FOR INCIDENTAL, INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT ANY OF THE FOREGOING DAMAGES ARE FORESEEABLE. In Agreements where Metso does not have responsibility for installation and erection of the equipment, all costs related to the disassembly, assembly reinstallation and erection shall be deemed to be excluded herein.

(B) IN ANY EVENT, METSO'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO 25% OF THE PURCHASE PRICE TO THE EXTENT PAID BY BUYER OR ANY SUCH OTHER LIABILITY CAP AS MAY BE PROVIDED ELSEWHERE IN THE AGREEMENT, WHICHEVER IS LESS.

(C) The limitations of liability contained in this section 15 shall be effective without regard to (i) Metso's performance or failure or delay of performance under any other term or condition of this Agreement, including any warranty or remedy or (ii) the invalidity or unenforceability of any other limitation, disclaimer or exclusion of any warranty, remedy or other right.

16. SECURITY INTEREST AND INSURANCE: Metso retains and Buyer grants to Metso a security interest in the Product(s) and proceeds and any replacement regardless of mode of attachment to realty or other property to secure payment of all amounts due to Metso. Buyer agrees to do all acts necessary to perfect and maintain said security interest and to protect Metso's interest by adequately insuring the Product against loss or damage from any external cause with Metso named as insured or additionally insured.

17. CHANGES AND SUBSTITUTIONS: (A) Metso reserves the right to make, at no cost to Buyer, such changes in materials or designs that are, in Metso's judgment, reasonable and necessary for the proper operation and use of the Products. Metso further reserves the right to make improvements to subsequently supplied Products without imposing an obligation on itself to modify its previously supplied products. (B) Whenever a material, piece of equipment or other item is identified by brand name, manufacturer's or vendor's name, trademark, catalog number, etc ("Brand"), it is intended merely to establish a general quality standard and not to require the use of the Branded item. Metso shall have the option to provide items that otherwise conform to the applicable standard, although the Buyer shall have the option to pay any increased cost of the Brand item.

18. NONCANCELLATION: Buyer acknowledges that the Proposal does not contain any Buyer right to terminate any Agreement for convenience or to suspend performance thereunder without cause (i.e., applicable Metso breach).

19. ASSIGNMENT: The Proposal and any Agreement and any rights and obligations thereunder may not be assigned or delegated by either party, except with written consent of the parties, except that Metso may so assign or delegate to a corporate affiliate owned or controlled by Metso Corporation, a Finnish corporation.

20. APPLICABLE LAW, DISPUTE RESOLUTION AND SEVERABILITY: (a) This Agreement shall be governed by, enforced and disputes resolved in accordance with the substantive laws of the State of Delaware, USA. (b) All disputes arising out of or in connection with the Agreement shall be submitted to the International Court of Arbitration of the International Chamber of Commerce and shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The arbitration shall take place in Chicago, Illinois, USA, in the English language. The arbitration hearings shall last no longer than two weeks and the arbitrators shall issue a reasoned written opinion. The arbitrator(s) shall have no authority to award punitive damages or other damages not permitted under this Agreement. Judgment upon such award may be entered in any court having jurisdiction. Arbitrator fees and costs shall be equally shared, but otherwise the parties are responsible for their own legal fees, costs and expenses. Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for preliminary injunctive or other interim or equitable relief to prevent disclosure of confidential information or misappropriation or other misuse of intellectual property pending final determination in arbitration. (c) Should any provision or portion thereof be held invalid or unenforceable, the validity and enforceability of the remaining provisions of the Agreement will not be affected.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

THIS MEMORANDUM is an acknowledgment that a bill of Lading has been issued and is not the Original Bill of Lading, nor a copy or duplicate covering the property named herein, and is intended solely for filing record.
RECEIVED subject to the classifications and lawfully filed tariffs in effect on the date of the issue of the Bill of Lading.

SEE OUR ORDER NUMBER

**CONSIGNED TO AND DESTINATION**

**FROM**

Ship to: **CRISP INDUSTRIES**
**C/O MAVERICK CONCRETE**
**1002 CARLTON DRIVE**
**EAGLE PASS, TX 78852-5787**

**metso**

**METSO MINERALS INDUSTRIES INC.**

| X | **C/O  ROAD MACHINERY** |

**AT**

**1181 BURGUNDY DRIVE**
**EL PASO, TX 78907**
**GABRIEL  915 872 1001**

CUSTOMER ORDER NO.   **05821**
SALES ORDER NUMBER   **3012 28882**

DATE  **DECEMBER     , 2010**

ROUTE     **CUSTOMER PICK UP**

| ITEM NO. | NO. OF PKGS | DESCRIPTION OF ARTICLES, SPECIAL MARKS AND EXCEPTIONS | WEIGHT (SUB TO COR) | CLASS OR RATE | CHECK COLUMN |
|---|---|---|---|---|---|
| 1 | 1 | ST358  S/N R8881310 | 82,000 | LBS APPROX. | |

**SPECIAL INSTRUCTIONS**

**PLEASE FAX TO METSO MINERALS INDUSTRIES INC. ATTENTION OF KATHY LASKA,**

**FAX # 262 717 2501 A SIGNED COPY OF THIS INLAND BILL OF LADING**

**WHEN EQUIPMENT HAS BEEN PICKED UP;**

*Mcl Contracting Tak 03 Wildwood Fla*

**metso**

Permanent post office address of shipper     **METSO MINERALS INDUSTRIES, INC.**
**20965 CROSSROADS CIRCLE, WAUKESHA, WI 53189**
AGENT, PER

**EXHIBIT**

**B**

**METSO MINERALS INDUSTRIES INC.**

(Signature of Consignee)

**CUSTOMER PICK UP**

THIRD PARTY BILLING
CRISP INDUSTRIES

fyl

Christian Aparicio
Distribution Manager, Southwest US Region
Metso Mining and Construction Technology
Mobile +1 (602) 317-8598
Office   +1 (480) 988-3615
—— Forwarded by Christian Aparicio/MKE/Minerals/METSO on 12/10/2010 10:03 AM ——

| | |
|---|---|
| From: | Christian Aparicio/MKE/Minerals/METSO |
| To: | dale@crispindustries.com |
| Cc: | "Terry" <terry@crispindustries.com> |
| Date: | 11/30/2010 10:53 AM |
| Subject: | Re: ST 358  & ST 458 (1st email) |

Hello Dale
I'm going to write you 3 e-mails, 1st. Used ST358, 2nd New ST3.8, & 3rd New ST4.8

We have a used ST358 in El Paso (at Road Machinery former Metso dealer in the area), per mistake this unit was taken off of our inventory list and nobody was promoting this machine, but this weekend I went to El Paso and I saw the machine there.
I'm going to give you the price that we handle last April 2010. The ST358 has 270 hours, and we can pass to Road Machinery to see it any time.

Distributor Net of 170k and we will provide remaining warranty (1,800 hours or 1 year - whichever comes first).

 

Lokotrack ST358 s n R3581310.pdf   ST358 AZ email from Stephane Feb 10.pdf

I can offer the first Metso screen square wire mesh set with no cost of the product (only the customer pays the freight)

Regards,

Christian Aparicio
Distribution Manager, Southwest US Region
Metso Mining and Construction Technology
Mobile +1 (602) 317-8598
Office   +1 (480) 988-3615

| Christian Aparicio | Hello Dale I guess we have a used ST358 in El... | 11/29/2010 04:51:32 PM |
|---|---|---|

| | |
|---|---|
| From: | Christian Aparicio/MKE/Minerals/METSO |
| To: | "Dale Greenroy" <dale@crispindustries.com> |
| Cc: | christian.aparicio@metso.com, "Terry" <terry@crispindustries.com> |
| Date: | 11/29/2010 04:51 PM |
| Subject: | Re: ST 358  & ST 458 |


EXHIBIT
C

Hello Dale

I guess we have a used ST358 in El Paso TX. Tomorrow I will send you the details, when our inventory control department send me if the machine is still available.

Regards,


Christian Aparicio
Distribution Manager, Southwest US Region
Metso Mining and Construction Technology
Mobile +1 (602) 317-8598
Office   +1 (480) 988-3615

| "Dale Greenroy" | Christian, Can you help me with this, Customer I... | 1/29/2010 09:38:34 AM |

# Tab 4

Supplement to Defendant Metso Minerals Industries, Inc.'s Application to Compel Arbitration of Metso Minerals Industries, Inc.

CAUSE NO. 12-09-27789-MCVAJA

| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | 365th JUDICIAL DISTRICT |
| v. | § | |
| | § | |
| IPE AGGREGATE, LLC, | § | |
| METSO MINERALS INDUSTRIES, INC. | § | |
| and CRISP INDUSTRIES, INC., | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

## SUPPLEMENT TO DEFENDANT METSO MINERALS INDUSTRIES, INC.'S APPLICATION TO COMPEL ARBITRATION OF METSO MINERALS INDUSTRIES, INC.

TO THE HONORABLE JUDGE OF SAID COURT:

On February 5, 2015, Metso Minerals, Industries, Inc. ("Metso"), one of the Defendants in this cause, filed its initial Application to Compel Arbitration ("Initial Application"). Approximately four months later, on June 3, 2015, Plaintiff filed its Response and Objections to Application to Compel Arbitration of Metso Minerals Industries, Inc. ("Response"), asserting, for the first time, that Exhibits A and B to Metso's Initial Application "are illegible" and disputing the validity of Metso's Sales Terms & Conditions, which contain the Arbitration Agreement at issue in this matter. Plaintiff's Response at pg. 11.

Previously, however, when the same Sales Terms & Conditions were attached to Metso's First Set of Requests for Admissions and Second Set of Interrogatories and Requests for Production ("Defendant's Discovery Requests"), Plaintiff merely responded that it was unsure of whether this was the applicable warranty to the purchase of the ST358 and failed to mention any issue concerning illegibility. **Exhibit Sup-1**, Exhibit A to Defendant's Discovery Requests; **Exhibit Sup-2**, Plaintiff's Response to Defendant's Discovery Requests, Request for Admission No.1 on pg. # 3. Indeed, when asked to produce any and all documents which supported its denials (in whole or part) of any of the accompanying requests for admission, Plaintiff responded: "All exhibits produced by Defendants in this discovery instrument," evidencing

1

FILED
AT 3:15 O'CLOCK P M

JUN 18 2015

LEOPOLDO VIELMA
District Clerk Maverick County, Texas
By _____ Deputy

Plaintiff did not have any problem reading Metso's Sales Terms and Conditions at that juncture. **Exhibit Sup-2**, Plaintiff's Response to Defendant's Discovery Requests, Requests for Production No. 16 on pg. # 9. Additionally, by May 16, 2014, Metso had already provided Plaintiff with legible copies of same records that are in the now purportedly illegible Exhibit A, and discussed these documents on the phone with Plaintiff's then-counsel of record. **Exhibit Sup-3**, Documents labeled Metso-Maverick 161-163; **Exhibit Sup-4**, Metso Attorney E. Matzke's May 16, 2014, letter responding to Plaintiff's requests to supplement. Further, over the course of nearly four months, Plaintiff neither contacted Metso's counsel to request a clearer copy of any of the Initial Application's exhibits, which Metso would have gladly provided, nor informed Metso of any other issue with the Initial Application's exhibits.

However, in the event that either exhibits A or B, as attached to the Initial Application, are in any part illegible or difficult to interpret, Defendant Metso respectfully files this Supplement to Defendant Metso's Application to Compel Arbitration of Metso Minerals Industries, Inc., in an effort to provide the clearest exact copies available of these documents, as well as an attestation to this fact and their validity by Metso employee, Robert M. Wissing, in an affidavit attached hereto as **Exhibit Sup-5**, which includes the pertinent records.[1]

Respectfully submitted,

By: _____
Paula C. Boston
State Bar No. 24089661
Heriberto Morales, Jr.
State Bar No. 24011285
LANGLEY & BANACK, INC.
401 Quarry Street
Eagle Pass, Texas 78852
(830) 773-6700 Telephone
(830) 757-4045 Facsimile

---

[1] Should the Court prefer to treat this filing as an amendment to the Application to Compel Arbitration of Metso Minerals Industries, Inc. ("Application"), all of said Application is incorporated herein and throughout by this reference.

2

Eric W. Matzke (*pro hac vice*)
WI State Bar No. 1079340
QUARLES & BRADY LLP
411 E. Wisconsin Avenue, Suite 2350
Milwaukee WI 53202-4426
(414) 277-5365 Telephone
(414) 978-8906 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2015, a copy of the above and foregoing document, including its attached exhibits, were sent via regular mail and in pdf format via email to:

Mr. Daniel R. Dutko                DDutko@hanszenlaporte.com
HANSZEN LAPORTE
11767 Katy Freeway, Ste. 850
Houston, Texas 77970
Attorneys for Maverick Aggregates, Inc.

Mr. Oscar A. Garza                 ogarza@oscargarzalaw.com
THE LAW FIRM OF OSCAR A. GARZA, LLC
111 Soledad Street, Suite 300
San Antonio, Texas 78205
Attorney for IPE Aggregate, LLC

Mr. G. Alan Powers                 apowers@sbplaw.com
SIMPSON, BOYD & POWERS
P. O. Box 685
1119 Halsell Street
Bridgeport, Texas 76426
Attorneys for Crisp Industries, Inc.

_____
Paula C. Boston

3

# Exhibit Sup-1

1. "Metso" means Metso Minerals Industries, Inc., or a Metso corporate affiliate identified in the Proposal. "Proposal" means the Metso proposal, quotation, estimate or other Metso supplied cuments and all addenda thereto, including drawings and specifications, that describe a scope of pply. The provisions of this Metso Sales Terms and Conditions document are a part of the Proposal, except to the limited extent specifically provided elsewhere in the Proposal. "Agreement" means the Proposal and any other term, condition, or provision if and to the extent agreed to in writing Metso. "Product(s)" means the Metso supplied equipment and related parts, software, services or documentation as described in the Proposal.

2. BUYER'S ACCEPTANCE OF THE PROPOSAL IS EXPRESSLY LIMITED TO AND CONDITIONED UPON ACCEPTANCE ALL OF THE PROVISIONS THEREOF, INCLUDING THESE SALES TERMS AND CONDITIONS. IF A METSO PROPOSAL IS CONSTRUED AS AN ACCEPTANCE OF BUYER'S OFFER OR AS A CONFIRMATION OF AN EXISTING CONTRACT, SUCH ACCEPTANCE OR CONFIRMATION IS EXPRESSLY CONDITIONED ON THE BUYER'S ASSENT TO ANY ADDITIONAL OR DIFFERENT TERMS CONTAINED HEREIN.

3. PRICE & PAYMENT: (A) Prices and payments are in U.S. Dollars and do not include any sales, use or excise taxes, customs duties or similar charges or fees. If not specifically stated elsewhere in the Proposal, Prices do not include the services of any representative of Metso including, but not limited to the assistance in the installation, inspection or startup of the Products. Pro rata payment are due for partial shipments. If shipment is delayed by Buyer, the date the shipment is ready shall be deemed to be the date of delivery for payment purposes and Metso reserves the right to store the Products at Buyer's risk and expense. If Buyer fails to pay by the due date, Metso shall be entitled to interest at a rate of 1.5% per month not to exceed the legal maximum. The Proposal is subject to credit approval and Metso's right to require an irrevocable letter of credit established in acceptable form with a prime U.S. bank. (B) For sales under $50,000 payment shall be net cash 30 days after shipment. For sales between $50,000 and $150,000, payment shall be 15% down payment due at time of Buyer purchase order placement with remaining 85% net cash 30 days after shipment. For sales over $150,000, payment shall be progress milestones as described elsewhere in the Proposal. (C) Metso shall have the right to suspend its performance of the Agreement if Buyer fails to pay on any due date.

4. DELIVERY: Delivery terms shall be a current Incoterm. Partial deliveries and transshipments are permitted. All delivery dates are approximate.

5. REJECTION: Any rejection of Products must be made by the Buyer in writing within a reasonable time after delivery but in no event later than thirty (30) business days after delivery. Failure to make such claim within the stated period shall constitute an irrevocable acceptance of the Products.

6. LIMITED WARRANTY: Except as provided herein, Metso warrants that Products will be free of defects in workmanship and material. This warranty covers the Buyer only and is not transferable. EXCEPT FOR WARRANTY OF TITLE, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER REPRESENTATIONS, WARRANTIES, GUARANTEES AND THE LIKE, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, AND CONSTITUTES THE ONLY WARRANTY OF METSO WITH RESPECT TO THE PRODUCTS.

EXCLUSIONS TO WARRANTY: METSO MAKES NO WARRANTIES AS TO PERFORMANCE OR PRODUCTION, NOR AS TO WEAR PARTS OR CONSUMABLES, NOR AS TO ANY SEPARATELY LISTED ITEM OF THE PRODUCT(S) WHICH IS NOT MANUFACTURED BY METSO, which latter item shall be covered only by the manufacturer's warranty, if any. Metso and its suppliers shall have no obligation under the limited warranty as to any Product which has been improperly stored or handled, or which has not been installed, operated or maintained according to Metso or supplier furnished manuals or other instructions or is operated during the warranty remedy period with other than genuine Metso parts.

8. LIMITED WARRANTY REMEDY: (A) If, within twelve (12) months from date of delivery, but not more than eighteen (18) months from date that Buyer is advised that Products are ready for shipment, Buyer discovers that a Product was not as warranted and promptly notifies Metso in writing thereof, Metso shall cause the repair or replacement the defective Product or part thereof. Buyer shall assume all responsibility and expense for removal, reinstallation, and freight in connection with replacement parts furnished by Metso. Buyer's entitlement to warranty remedies is contingent upon Buyer's cooperation in permitting Metso to investigate the defect and in returning replaced parts to Metso, if requested, at Metso's expense. The warranty period shall not be extended by the repair or replacement, nor shall there be a separate remedy period for any replacement Product or part. The warranty remedy period for Metso spare parts (not replacement parts furnished under warranty) is six (6) months from date of delivery. (B) If, after a reasonable number of repeated efforts, Metso determines that it is unable to repair or replace a defective Product or part, Buyer shall, at Metso's option, return the Product (or part thereof, if such does not materially impair the value of the remaining Product) to Metso at Buyer's expense and Metso shall return the applicable purchase price as Buyer's entire and exclusive remedy. (C) THE REMEDIES EXPRESSLY PROVIDED HEREIN ARE BUYER'S EXCLUSIVE REMEDY AGAINST METSO AND ITS SUPPLIERS UNDER THE AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY, AND WHETHER ARISING OUT OF WARRANTIES, REPRESENTATIONS, INSTRUCTIONS, INSTALLATIONS OR DEFECTS FROM ANY CAUSE. (D) If the foregoing disclaimer of additional warranties is not given full force and effect, any resulting additional warranty shall be limited in duration to the above warranty remedy periods and be otherwise subject to and limited by these sales terms and conditions.

9. BUYER'S PERMITS, APPROVALS AND DATA: Buyer shall provide and pay for all permits and licenses required for the installation and operation of the Products. Timely performance by Metso is contingent upon Buyer's supplying to Metso, when needed, all required technical information and data, including drawing approval, and all required commercial documentation.

10. FOUNDATIONS: Buyer shall be solely responsible for the design and construction of foundations. Any plans furnished by Metso shall be considered examples only, and Metso assumes no responsibility for foundation adequacy and disclaims any liability arising out of inadequate foundations and any effect on Products.

11. BUYER EMPLOYEES AND PREMISES: Compliance with OSHA, MSHA or similar federal, state local laws during any installation, operation, or use of the Product(s) is the sole responsibility of yer.

12. NUCLEAR AND HAZARDOUS WASTE USES: Products shall not be used in or in connection with a nuclear or hazardous waste application, and Buyer agrees to indemnify, defend, and hold Metso harmless from all loss, cost, damage, expense and other liability whatsoever from such use. Buyer also acknowledges its responsibility for the disposal of any Products

(including any computer or other electronic equipment or components) in accordance with applicable law, including any recycling, reporting or record keeping requirements.

13. RELIEF. If Metso is hindered or suffers delay in performance due to any cause beyond its reasonable control, including but not limited to war or other hostilities or civil unrest, act or failure to act of government, lack or loss of services or access (such as utilities or roads), act of God, including fire, flood, earthquake, landslide, or extreme weather event, strike or other labor trouble, or any sabotage, the time of performance shall be extended a period of time equal to the period of the resulting inability to perform and its consequences. In no event shall Metso have liability to Buyer arising out of any such delays. If the delay arising under this section is more than 180 days, either party has the right to terminate the Agreement and the parties' respective obligations shall be equitably adjusted. Metso shall be reimbursed and for any additional costs it reasonably incurs as a direct result of Buyer's delay or inability or failure to perform.

14. INTELLECTUAL PROPERTY. (A) Metso shall pay costs and damages finally awarded to the extent based upon a finding by a U.S. court that the design or construction of a Product as furnished infringes a U.S. patent or copyright (except infringement occurring as a result of incorporating a design or modification at Buyer's request or Buyer's use of the Products in a manner contrary to the Agreement or Metso's manuals or instructions), provided that Buyer promptly notifies Metso in writing of any claim of such infringement. and Metso is given the right at its expense to settle and defend and control the defense of any such claim. THIS SECTION SETS FORTH METSO'S EXCLUSIVE LIABILITY WITH RESPECT TO INFRINGEMENT OF INTELLECTUAL PROPERTY. (B) All drawings, specifications, data, software, firmware, manuals, instructions, documentation or other works of authorship furnished by Metso are copyrighted property of Metso or its suppliers, and are to be used by Buyer only for the purpose of installing, operating, maintaining and repairing the Products. Such works and data may not be otherwise used or reproduced or disclosed. (C) Metso or its suppliers retain all right, title and interest in and to its and their inventions, discoveries, concepts, ideas or other intellectual property embodied in or related to its Products.

15. LIMITATION OF LIABILITY.

(A) NEITHER METSO NOR ITS SUPPLIERS SHALL BE LIABLE, WHETHER IN CONTRACT (INCLUDING BREACH OF REPRESENTATION OR WARRANTY) OR IN TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), OR FOR INFRINGEMENT OR UNDER ANY OTHER LEGAL THEORY, FOR LOSS OF USE, PRODUCTION, REVENUE OR PROFIT, OR FOR COST OF CAPITAL, OR FOR INCREASED COSTS OF OPERATION OR MAINTENANCE, OR FOR INCIDENTAL, INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT ANY OF THE FOREGOING DAMAGES ARE FORESEEABLE. In Agreements where Metso does not have responsibility for installation and erection of the equipment, all costs related to the disassembly, assembly reinstallation and erection shall be deemed to be excluded herein.

(B) IN ANY EVENT, METSO'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO 25% OF THE PURCHASE PRICE TO THE EXTENT PAID BY BUYER OR ANY SUCH OTHER LIABILITY CAP AS MAY BE PROVIDED ELSEWHERE IN THE AGREEMENT, WHICHEVER IS LESS.

(C) The limitations of liability contained in this section 15 shall be effective without regard to (i) Metso's performance or failure or delay of performance under any other term or condition of this Agreement, including any warranty or remedy or (ii) the invalidity or unenforceability of any other limitation, disclaimer or exclusion of any warranty, remedy or other right.

16. SECURITY INTEREST AND INSURANCE: Metso retains and Buyer grants to Metso a security interest in the Product(s) and proceeds and any replacement regardless of mode of attachment to realty or other property to secure payment of all amounts due to Metso. Buyer agrees to do all acts necessary to perfect and maintain said security interest, and to protect Metso's interest by adequately insuring the Product against loss or damage from any external cause with Metso named as insured or additionally insured.

17. CHANGES AND SUBSTITUTIONS: (A) Metso reserves the right to make, at no cost to Buyer, such changes in materials or designs that are, in Metso's judgment, reasonable and necessary for the proper operation and life of the Products. Metso further reserves the right to make improvements to subsequently supplied Products without imposing an obligation on itself to modify its previously supplied products. (B) Whenever a material, piece of equipment or other item is identified by brand name, manufacturer's or vendors' name, trademark, catalog number, etc ("Brand"), it is intended merely to establish a general quality standard and not to require the use of the Branded item. Metso shall have the option to provide items that otherwise conforms to the applicable standard, although the Buyer shall have the option to pay any increased cost of the Brand item.

18. NONCANCELLATION: Buyer acknowledges that the Proposal does not contain any Buyer right to terminate any Agreement for convenience or to suspend performance thereunder without cause (i.e., applicable Metso breach).

19. ASSIGNMENT: The Proposal and any Agreement and any rights and obligations thereunder may not be assigned or delegated by either party, except with written consent of the parties, except that Metso may so assign or delegate to a corporate affiliate owned or controlled by Metso Corporation, a Finnish corporation.

20. APPLICABLE LAW, DISPUTE RESOLUTION AND SEVERABILITY: (a) This Agreement shall be governed by, enforced and disputes resolved in accordance with the substantive laws of the State of Delaware, USA. (b) All disputes arising out of or in connection with the Agreement shall be submitted to the International Court of Arbitration of the International Chamber of Commerce and shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The arbitration shall take place in Chicago, Illinois, USA, in the English language. The arbitration hearings shall last no longer than two weeks and the arbitrators shall issue a reasoned written opinion. The arbitrator(s) shall have no authority to award punitive damages or other damages not permitted under this Agreement. Judgment upon such award may be entered in any court having jurisdiction. Arbitrator fees and costs shall be equally shared, but otherwise the parties are responsible for their own legal fees, costs and expenses. Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for preliminary injunctive or other interim or equitable relief to prevent disclosure of confidential information or misappropriation or other misuse of intellectual property pending final determination in arbitration. (c) Should any provision or portion thereof be held invalid or unenforceable, the validity and enforceability of the remaining provisions of the Agreement will not be affected.

A

# Exhibit Sup-2

CAUSE NO. 12-09-27789-MCVAJA

| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 365th JUDICIAL DISTRICT |
| | § | |
| IPE AGGREGATE, LLC and | § | |
| METSO MINERALS INDUSTRIES, INC., | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

## PLAINTIFF MAVERICK AGGREGATES, INC.'S RESPONSES, ANSWERS AND OBJECTIONS TO DEFENDANT METSO MINERALS INDUSTRIES, INC.'S FIRST SET OF REQUESTS FOR ADMISSIONS AND SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

TO:    Defendant, Metso Minerals Industries, Inc.
By and through their Counsel of Record:
Mr. Heriberto Morales, Jr.
Langley & Banack, Inc.
401 Quarry Street
Eagle Pass, Texas 78852

**ATTORNEY FOR DEFENDANT**

NOW COMES, Plaintiff, MAVERICK AGGREGATES, INC. and provides these

Responses, Answers and Objections to Defendant Metso Minerals Industries, Inc.'s First Set of

Requests for Admissions and Second Set of Interrogatories and Requests for Production and

pursuant to the Texas Rules of Civil Procedure and would respectfully show as follows:

Respectfully submitted,

**RUIZ & ASSOCIATES, P.C.**
513 Ceylon Street
Eagle Pass, Texas 78852
Telephone) (830) 773-7500
Facsimile: (830) 773-7711

**JOSE J. RUIZ**
State Bar No. 17385960
**SANDRA MATA-CORTES**
State Bar No. 24057812

**ATTORNEYS FOR PLAINTIFF**

RECEIVED

JUN -3 2013

LANGLEY & BANACK

1

## CERTIFICATE OF SERVICE

A true and correct copy of **PLAINTIFF'S RESPONSES, ANSWERS AND OBJECTIONS TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS AND SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION** was sent in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure, on this the _3rd_ day of June, 2013.

Mr. Heriberto Morales, Jr.
**LANGLEY & BANACK**
401 Quarry Street
Eagle Pass, Texas 78852
_Via Hand Delivery_

Mr. Oscar Garza
The Law Firm of Oscar A. Garza
111 Soledad St., Suite 300
San Antonio, Texas 78205
_Via Regular Mail_

_____
JOSE J. RUIZ

2

## REQUESTS FOR ADMISSIONS

1. The terms and conditions of the manufacturer warranty referenced in Paragraph 4.3 of your Petition are recited in the document attached hereto as Exhibit A.

**ADMIT OR DENY:**

Cannot admit or deny due to the fact that up until Exhibit A was submitted, said exhibit was unknown to Plaintiff. Further, Plaintiff is unaware of whether or not Exhibit A was the applicable warranty to the purchase of the Metso ST-358.

2. Maverick Aggregates purchased the screener in December, 2010.

**ADMIT OR DENY:**

Deny.

3. Maverick Aggregates purchased the screener from IPE.

**ADMIT OR DENY:**

Plaintiff objects to this Request for Admission as to form on the basis that the request is vague and ambiguous. Subject to the foregoing objection and without waiving same, Plaintiff responds:

Deny

4. At the time of its purchase, Maverick Aggregates knew that the screener had been previously used.

**ADMIT OR DENY:**

Plaintiff objects to this Request for Admission as to form.

5. Maverick Aggregates did not purchase the screener form Crisp.

**ADMIT OR DENY:**

Deny.

3

## SECOND SET OF REQUESTS FOR PRODUCTION

16. Produce any and all documents with support your denials (in whole or part) of any of the accompanying Requests for Admission.

**RESPONSE:**

All exhibits produced by Defendants in this discovery instrument.

17. Produce any and all documents supporting your claim in Paragraph 6.3 of your Petition that Metso "negligently or fraudulently misrepresented the presence of a full warranty."

**RESPONSE:**

All exhibits produced by Defendants in this discovery instrument.

18. Other than Exhibits D and E, please produce all written documents sent or delivered to Maverick Aggregates by IPE directly – not through some third party – that relate to the screener.

**RESPONSE:**

None other than Exhibits D and E, however Plaintiff reserves the right to supplement this request in accordance with the Texas Rules of Civil Procedure.

19. Please produce all written documents sent or delivered to Maverick Aggregates by Crisp directly – not through some third party – that relate to the screener.

**RESPONSE:**

See, copy of documents sent by Crisp to Maverick Aggregates attached hereto as Exhibit "A."

20. Please produce all written documents sent or delivered to Maverick Aggregates by Metso directly – not through some third party – that relate to the screener.

**RESPONSE:**

None in Plaintiff's possession.

9

# Exhibit Sup-3

 **metso**

# Sales Order Confirmation

301209892

<table>
<tr><td>

**Sold To**

Crisp Industries Inc.
PO Box 326
BRIDGEPORT TX 76426-0326
USA

</td></tr>
</table>

**Information**

| | |
|---|---|
| Sales Order No. | 301209892 |
| Order Date | 2010DEC06 |
| Metso Contact | Kathleen Laska |
| Telephone | 1-262-717-2622 |
| Sales Representative | Christian Aparicio |
| Customer Number | 193173 |
| Customer Contact | Terry Holland |
| Telephone | 940-683-4070 |
| Fax Number | 940-683-2181 |
| Purchase Order No. | 05621 |

**Ship To**

Maverick Concrete
1002 Carlton Drive
EAGLE PASS TX 78852
USA

**Bill To**

Crisp Industries Inc.
PO Box 326
BRIDGEPORT TX 76426-0326
USA

**Additional Information**

| | | |
|---|---|---|
| Payment Terms | 30 days net | Marking |
| Currency | USD | |
| Incoterms | FCA / SHIPPING POINT | |
| Freight Pay. Terms | Hold for pickup | |
| Ship Via | Ground | |
| Partial Shipment | Yes | |
| Delivery Priority | Stock | |

| Item | Material/ Description | Quantity Ordered | Quantity Confirmed | UM | Ship Date | Unit Price | Item Discount | Extended Price |
|---|---|---|---|---|---|---|---|---|
| 10 | MM0244115 | 1 | 1 | EA | | 212,500.00 | 20.00 % | 170,000.00 |
| | MOBILE SCREEN | | | | | | | |
| | MOBILE SCREEN ST358, SN R3581310 | | | | | | | |

| | |
|---|---|
| Subtotal | 170,000.00 |
| Total Tax | 0.00 |
| Total (USD) | 170,000.00 |

Metso Minerals Industries Inc.
20965 Crossroads Circle
Waukesha, WI 53186 USA
MA: MI797 FA:MI797

Wire Transfer: Wachovia Bank, N.A.
For: Metso Minerals Industries, Inc.
Acct. No: 2079900137141 ABA0530-00219
Swift Code: PNBPUS33
Tax ID 39:159980170
Check Remit to: Metso Minerals Industries Inc.
PO Box 945859 Atlanta, GA 30394-5859

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Metso/Maverick 0161

 
| Total Excl. Tax (USD): | 170,000.00 |
|---|---|

*If this order is exempt from tax, please send an exemption certificate as soon as possible. If no exemption certificate is received, tax will be charged on the invoice*

Metso Minerals Industries Inc.
20965 Crossroads Circle
Waukesha, WI 53186 USA
MA: MI797 FA:MI797

Wire Transfer: Wachovia Bank, N.A.
For: Metso Minerals Industries, Inc.
Acct. No: 2079900137141 ABA0530-00219
Swift Code: PNBPUS33
Tax ID 39:159980170
Check Remit to: Metso Minerals Industries Inc.
PO Box 945859 Atlanta,GA 30394-5859

1. "Metso" means Metso Minerals Industries, Inc., or a Metso corporate affiliate identified in the Proposal. "Proposal" means the Metso proposal, quotation, estimate or other Metso supplied cuments and all addenda thereto, including drawings and specifications, that describe a scope of pply. The provisions of this Metso Sales Terms and Conditions document are a part of the Proposal, except to the limited extent specifically provided elsewhere in the Proposal. "Agreement" means the Proposal and any other term, condition, or provision if and to the extent agreed to in writing Metso. "Product(s)" means the Metso supplied equipment and related parts, software, services or documentation as described in the Proposal.

2. BUYER'S ACCEPTANCE OF THE PROPOSAL IS EXPRESSLY LIMITED TO AND CONDITIONED UPON ACCEPTANCE ALL OF THE PROVISIONS THEREOF, INLCLUDING THESE SALES TERMS AND CONDITIONS. IF A METSO PROPOSAL IS CONSTRUED AS AN ACCEPTANCE OF BUYER'S OFFER OR AS A CONFIRMATION OF AN EXISTING CONTRACT, SUCH ACCEPTANCE OR CONFIRMATION IS EXPRESSLY CONDITIONED ON THE BUYER'S ASSENT TO ANY ADDITIONAL OR DIFFERENT TERMS CONTAINED HEREIN.

3. PRICE & PAYMENT: (A) Prices and payments are in U.S. Dollars and do not include any sales, use or excise taxes, customs duties or similar charges or fees. If not specifically stated elsewhere in the Proposal, Prices do not include the services of any representative of Metso including, but not limited to the assistance in the installation, inspection or startup of the Products. Pro rata payment are due for partial shipments. If shipment is delayed by Buyer, the date the shipment is ready shall be deemed to be the date of delivery for payment purposes and Metso reserves the right to store the Products at Buyer's risk and expense. If Buyer fails to pay by the due date, Metso shall be entitled to interest at a rate of 1.5% per month not to exceed the legal maximum. The Proposal is subject to credit approval and Metso's right to require an irrevocable letter of credit established in acceptable form with a prime U.S. bank. (B) For sales under $50,000 payment shall be net cash 30 days after shipment. For sales between $50,000 and $150,000, payment shall be 15% down payment due at time of Buyer purchase order placement with remaining 85% net cash 30 days after shipment. For sales over $150,000, payment shall be progress milestones as described elsewhere in the Proposal. (C) Metso shall have the right to suspend its performance of the Agreement if Buyer fails to pay on any due date.

4. DELIVERY: Delivery terms shall be a current Incoterm. Partial deliveries and transshipments are permitted. All delivery dates are approximate.

5. REJECTION: Any rejection of Products must be made by the Buyer in writing within a reasonable time after delivery but in no event later than thirty (30) business days after delivery. Failure to make such claim within the stated period shall constitute an irrevocable acceptance of the Products.

6. LIMITED WARRANTY: Except as provided herein, Metso warrants that Products will be free of defects in workmanship and material. This warranty covers the Buyer only and is not transferable. EXCEPT FOR WARRANTY OF TITLE, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER REPRESENTATIONS, WARRANTIES, GUARANTEES AND THE LIKE, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, AND CONSTITUTES THE ONLY WARRANTY OF METSO WITH RESPECT TO THE PRODUCTS.

EXCLUSIONS TO WARRANTY: METSO MAKES NO WARRANTIES AS TO PERFORMANCE JR PRODUCTION, NOR AS TO WEAR PARTS OR CONSUMABLES, NOR AS TO ANY SEPARATELY LISTED ITEM OF THE PRODUCT(S) WHICH IS NOT MANUFACTURED BY METSO, which latter item shall be covered only by the manufacturer's warranty, if any. Metso and its suppliers shall have no obligation under the limited warranty as to any Product which has been improperly stored or handled, or which has not been installed, operated or maintained according to Metso or supplier furnished manuals or other instructions or is operated during the warranty remedy period with other than genuine Metso parts.

8. LIMITED WARRANTY REMEDY: (A) If, within twelve (12) months from date of delivery, but not more than eighteen (18) months from date that Buyer is advised that Products are ready for shipment, Buyer discovers that a Product was not as warranted and promptly notifies Metso in writing thereof, Metso shall cause the repair or replacement the defective Product or part thereof. Buyer shall assume all responsibility and expense for removal, reinstallation, and freight in connection with replacement parts furnished by Metso. Buyer's entitlement to warranty remedies is contingent upon Buyer's cooperation in permitting Metso to investigate the defect and in returning replaced parts to Metso, if requested, at Metso's expense. The warranty period shall not be extended by the repair or replacement, nor shall there be a separate remedy period for any replacement Product or part. The warranty remedy period for Metso spare parts (not replacement parts furnished under warranty) is six (6) months from date of delivery. (B) If, after a reasonable number of repeated efforts, Metso determines that it is unable to repair or replace a defective Product or part, Buyer shall, at Metso's option, return the Product (or part thereof, if such does not materially impair the value of the remaining Product) to Metso at Buyer's expense and Metso shall return the applicable purchase price as Buyer's entire and exclusive remedy. (C) THE REMEDIES EXPRESSLY PROVIDED HEREIN ARE BUYER'S EXCLUSIVE REMEDY AGAINST METSO AND ITS SUPPLIERS UNDER THE AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY, AND WHETHER ARISING OUT OF WARRANTIES, REPRESENTATIONS, INSTRUCTIONS, INSTALLATIONS OR DEFECTS FROM ANY CAUSE. (D) If the foregoing disclaimer of additional warranties is not given full force and effect, any resulting additional warranty shall be limited in duration to the above warranty remedy periods and be otherwise subject to and limited by these sales terms and conditions.

9. BUYER'S PERMITS, APPROVALS AND DATA: Buyer shall provide and pay for all permits and licenses required for the installation and operation of the Products. Timely performance by Metso is contingent upon Buyer's supplying to Metso, when needed, all required technical information and data, including drawing approval, and all required commercial documentation.

10. FOUNDATIONS: Buyer shall be solely responsible for the design and construction of foundations. Any plans furnished by Metso shall be considered examples only, and Metso assumes no responsibility for foundation adequacy and disclaims any liability arising out of inadequate foundations and any effect on Products.

11. BUYER EMPLOYEES AND PREMISES: Compliance with OSHA, MSHA or similar federal, state local laws during any installation, operation, or use of the Product(s) is the sole responsibility of yer.

12. NUCLEAR AND HAZARDOUS WASTE USES: Products shall not be used in or in connection with a nuclear or hazardous waste application, and Buyer agrees to indemnify, defend, and hold Metso harmless from all loss, cost, damage, expense and other liability whatsoever from such use. Buyer also acknowledges its responsibility for the disposal of any Products

(including any computer or other electronic equipment or components) in accordance with applicable law, including any recycling, reporting or record keeping requirements.

13. RELIEF. If Metso is hindered or suffers delay in performance due to any cause beyond its reasonable control, including but not limited to war or other hostilities or civil unrest, act or failure to act of government, lack or loss of services or access (such as utilities or roads), act of God, including fire, flood, earthquake, landslide, or extreme weather event, strike or other labor trouble, or any sabotage, the time of performance shall be extended a period of time equal to the period of the resulting inability to perform and its consequences. In no event shall Metso have liability to Buyer arising out of any such delays. If the delay arising under this section is more than 180 days, either party has the right to terminate the Agreement and the parties' respective obligations shall be equitably adjusted. Metso shall be reimbursed and for any additional costs it reasonably incurs as a direct result of Buyer's delay or inability or failure to perform.

14. INTELLECTUAL PROPERTY. (A) Metso shall pay costs and damages finally awarded to the extent based upon a finding by a U.S. court that the design or construction of a Product as furnished infringes a U.S. patent or copyright (except infringement occurring as a result of incorporating a design or modification at Buyer's request or Buyer's use of the Products in a manner contrary to the Agreement or Metso's manuals or instructions), provided that Buyer promptly notifies Metso in writing of any claim of such infringement, and Metso is given the right at its expense to settle and defend and control the defense of any such claim. THIS SECTION SETS FORTH METSO'S EXCLUSIVE LIABILITY WITH RESPECT TO INFRINGEMENT OF INTELLECTUAL PROPERTY. (B) All drawings, specifications, data, software, firmware, manuals, instructions, documentation or other works of authorship furnished by Metso are copyrighted property of Metso or its suppliers, and are to be used by Buyer only for the purpose of installing, operating, maintaining and repairing the Products. Such works and data may not be otherwise used or reproduced or disclosed. (C) Metso or its suppliers retain all right, title and interest in and to its and their inventions, discoveries, concepts, ideas or other intellectual property embodied in or related to its Products.

15. LIMITATION OF LIABILITY.

(A) NEITHER METSO NOR ITS SUPPLIERS SHALL BE LIABLE, WHETHER IN CONTRACT (INCLUDING BREACH OF REPRESENTATION OR WARRANTY) OR IN TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), OR FOR INFRINGEMENT OR UNDER ANY OTHER LEGAL THEORY, FOR LOSS OF USE, PRODUCTION, REVENUE OR PROFIT, OR FOR COST OF CAPITAL, OR FOR INCREASED COSTS OF OPERATION OR MAINTENANCE, OR FOR INCIDENTAL, INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT ANY OF THE FOREGOING DAMAGES ARE FORESEEABLE. In Agreements where Metso does not have responsibility for installation and erection of the equipment, all costs related to the disassembly, assembly reinstallation and erection shall be deemed to be excluded herein.

(B) IN ANY EVENT, METSO'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO 25% OF THE PURCHASE PRICE TO THE EXTENT PAID BY BUYER OR ANY SUCH OTHER LIABILITY CAP AS MAY BE PROVIDED ELSEWHERE IN THE AGREEMENT, WHICHEVER IS LESS.

(C) The limitations of liability contained in this section 15 shall be effective without regard to (i) Metso's performance or failure or delay of performance under any other term or condition of this Agreement, including any warranty or remedy or (ii) the invalidity or unenforcability of any other limitation, disclaimer or exclusion of any warranty, remedy or other right.

16. SECURITY INTEREST AND INSURANCE: Metso retains and Buyer grants to Metso a security interest in the Product(s) and proceeds and any replacement regardless of mode of attachment to really or other property to secure payment of all amounts due to Metso. Buyer agrees to do all acts necessary to perfect and maintain said security interest, and to protect Metso's interest by adequately insuring the Product against loss or damage from any external cause with Metso named as insured or additionally insured.

17. CHANGES AND SUBSTITUTIONS: (A) Metso reserves the right to make, at no cost to Buyer, such changes in materials or designs that are, in Metso's judgment, reasonable and necessary for the proper operation and life of the Products. Metso further reserves the right to make improvements to subsequently supplied Products without imposing an obligation on itself to modify its previously supplied products. (B) Whenever a material, piece of equipment or other item is iden tifi ed by brand name, manufacturer's or vendors' name, trademark, catalog number, etc ("Brand"), it is intended merely to establish a general quality standard and not to require the use of the Branded item. Metso shall have the option to provide items that otherwise conforms to the applicable standard, although the Buyer shall have the option to pay any increased cost of the Brand item.

18. NONCANCELLATION: Buyer acknowledges that the Proposal does not contain any Buyer right to terminate any Agreement for convenience or to suspend performance thereunder without cause (i.e., applicable Metso breach ).

19. ASSIGNMENT: The Proposal and any Agreement and any rights and obligations thereunder may not be assigned or delegated by either party, except with written consent of the parties, except that Metso may so assign or delegate to a corporate affiliate owned or controlled by Metso Corporation, a Finnish corporation.

20. APPLICABLE LAW, DISPUTE RESOLUTION AND SEVERALBILITY: (a) This Agreement shall be governed by, enforced and disputes resolved in accordance with the substantive laws of the State of Delaware, USA. (b) All disputes arising out of or in connection with the Agreement shall be submitted to the International Court of Arbitration of the International Chamber of Commerce and shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The arbitration shall take place in Chicago, Illinois, USA, in the English language. The arbitration hearings shall last no longer than two weeks and the arbitrators shall issue a reasoned written opinion. The arbitrator(s) shall have no authority to award punitive damages or other damages not permitted under this Agreement. Judgment upon such award may be entered in any court having jurisdiction. Arbitrator fees and costs shall be equally shared, but otherwise the parties are responsible for their own legal fees, costs and expenses. Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for preliminary injunctive or other interim or equitable relief to prevent disclosure of confidential information or misaapropration or other misuse of intellectual property pending final determination in arbitration. (c) Should any provision or portion thereof be held invalid or unenforceablee, the validity and enforceability of the remaining provisions of the Agreement will not be affected.

# CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Metso/Maverick 0163

# Exhibit Sup-4

 **Quarles & Brady** LLP

411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-4426
Tel 414.277.5000
Fax 414.271.3552
www.quarles.com

*Attorneys at Law in:*
*Phoenix and Tucson, Arizona*
*Naples and Tampa, Florida*
*Chicago, Illinois*
*Milwaukee and Madison, Wisconsin*
*Washington, DC*
*Shanghai, China*

Writer's Direct Dial: (414) 277-5365
Writer's Direct Fax: (414) 978-8906
E-mail: marcus.wester@quarles.com

May 16, 2014

Jose J. Ruiz, Esq.
RUIZ & ASSOCIATES, P.C.
513 N. Ceylon St.
Eagle Pass, TX 78852

> Re: *Maverick Aggregates, Inc. v. IPE Aggregate, LLC, et al.*
> Cause No. 12-09-27789-MWAJA

Dear Jose:

Please allow this letter to serve as a response to yours dated May 9, 2014. I will separately address each of the five (5) requests for supplementation below.

First, you Request that Metso supplement its responses to Requests for Production Nos. 4 and 10 regarding repairs made to the subject screener. Last week, on Friday, May 9, 2014, I e-mailed you all of the repair documentation Metso has for the subject screener. Those documents constitute the entirety of Metso's holdings for warranty documentation for the subject screener and are bates labeled Metso-Maverick 210-364.

Second, you Request that we supplement Metso's response to Request for Production No. 8, regarding sales by Crisp of screeners. With respect to the sale of the subject screener, please see Metso-Maverick 161-163. With respect to Crisp's sales of other screeners, please direct your request to Crisp, which is also a party to this action.

Third, you Request that we supplement Metso's response to your Request for Production No. 9 regarding warranties applicable to the sale of the subject screener. As we discussed on the phone, the terms and conditions of the warranty extended in the sale of the subject ST358 from Metso to Crisp are reflected in the sales documentation marked Metso-Maverick 161-163.

Fourth, you Request that we supplement Metso's response to your Request for Production No. 11 regarding the history of sales of the subject Metso. I still fail to see how that Request is reasonably calculated to lead to the discovery of admissible evidence. However, for the sake of cooperation, Metso advises that it previously sold the subject screener to Road Machinery, LLC, which sold it to an entity called Khani Company. While Metso has not been able to locate any documentation regarding that sale, the warranty documentation produced as Metso-Maverick 210-364 reflects warranty claims and repairs made while the screener was owned by Khani Company.

Finally, you also Request that Metso supplement its response to Request for Production No. 13 regarding "records reflecting training provided to users of the subject Metso." Metso has not been able to locate any documentation specifically reflecting the training performed, but will supplement if and when such documents are found. However, as stated in Metso's Answer to Interrogatory No. 20, Metso employee Frank Dorr provided Maverick employees, including Carlos Gonzalez, instruction regarding how to properly operate and maintain the machine. In addition, please see the Operator's Manual produced as Metso-Maverick 0001-156, which Metso provided to Crisp to provide to Maverick.

I trust that the above addresses your questions and concerns, but please do not hesitate to contact me if you have any additional questions. Also, when you get a chance, please advise me of your availability for the depositions in June, as I still would like to depose Carlos Gonzalez, Arturo Morales, and Maverick's corporate designee.

Very truly yours,

QUARLES & BRADY LLP

Marcus A. Wester

MAW:jag
990696.00161
27127114_1.docx

cc:     Oscar A. Garza, Esq.
        Michael A. Simpson, Esq.
        Heriberto Morales, Jr., Esq.
        Michael C. Boyle, Esq.

# Exhibit Sup-5

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | 365th JUDICIAL DISTRICT |
| v. | § | |
| | § | |
| IPE AGGREGATE, LLC, | § | |
| METSO MINERALS INDUSTRIES, INC. | § | |
| and CRISP INDUSTRIES, INC., | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

## AFFIDAVIT OF ROBERT M. WISSING

| | |
|---|---|
| STATE OF WISCONSIN | § |
| | § |
| COUNTY OF WAUKESHA | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Robert M. Wissing, who first being duly sworn according to law, on his oath deposed and said:

1.  My name is Robert M. Wissing. I am over eighteen years of age, am fully competent to make this Affidavit. I have never been convicted of any felony or crime of moral turpitude. I have personal knowledge of the facts stated herein, which are all true and correct.

2.  I am an employee of Metso Minerals Industries, Inc. ("Metso"), and am familiar with the manner in which its sales records are created and maintained by virtue of my duties and responsibilities.

3.  Attached are four pages of records. These are exact duplicates of the original records.

4.  The records were made at or near the time of the sale of the ST358 from Metso to Crisp Industries, Inc. Indeed, it is the regular practice of Metso to make this type of record at or near the time of each sale of a mobile screener.

5.  The records were made by, or from information transmitted by, persons with knowledge of the matters set forth.

6.  The records were kept in the course of regularly conducted business activity.

7.  It is the regular practice of Metso, in the regular course of its business activities, to make the records.

Further Affiant sayeth naught.

_____
Robert M. Wissing

SUBSCRIBED AND SWORN TO BEFORE ME by the said Affiant on June 12, 2015, to certify which witness my hand and seal of office.

_____
Notary Public, State of Wisconsin
My Commission expires: July 19, 2015.

QB\35401102.1

 **metso**

# Sales Order Confirmation

301209892

**Sold To**
Crisp Industries Inc.
PO Box 326
BRIDGEPORT TX 76426-0326
USA

**Ship To**
Maverick Concrete
1002 Carlton Drive
EAGLE PASS TX 78852
USA

**Bill To**
Crisp Industries Inc.
PO Box 326
BRIDGEPORT TX 76426-0326
USA

**Information**

| | |
|---|---|
| Sales Order No. | 301209892 |
| Order Date | 2010DEC06 |
| Metso Contact | Kathleen Laska |
| Telephone | 1-262-717-2622 |
| Sales Representative | Christian Aparicio |
| Customer Number | 193173 |
| Customer Contact | Terry Holland |
| Telephone | 940-683-4070 |
| Fax Number | 940-683-2181 |
| Purchase Order No. | 05621 |

**Additional Information**

| | | |
|---|---|---|
| Payment Terms | 30 days net | Marking |
| Currency | USD | |
| Incoterms | FCA / SHIPPING POINT | |
| Freight Pay. Terms | Hold for pickup | |
| Ship Via | Ground | |
| Partial Shipment | Yes | |
| Delivery Priority | Stock | |

| Item | Material/ Description | Quantity Ordered | Quantity Confirmed | UM | Ship Date | Unit Price | Item Discount | Extended Price |
|---|---|---|---|---|---|---|---|---|
| 10 | MM0244115 MOBILE SCREEN MOBILE SCREEN ST358, SN R3581310 | 1 | 1 | EA | 2010DEC13 | 212,500.00 | 20.00 % | 170,000.00 |

| | |
|---|---|
| Subtotal | 170,000.00 |
| Total Tax | 0.00 |
| Total (USD) | 170,000.00 |

Metso Minerals Industries Inc.
20965 Crossroads Circle
Waukesha, WI 53186 USA
MA: MI797 FA:MI797

Wire Transfer: Wachovia Bank, N.A.
For: Metso Minerals Industries, Inc.
Acct. No: 2079900137141 ABA0530-00219
Swift Code: PNBPUS33
Tax ID 39:159980170
Check Remit to: Metso Minerals Industries Inc.
PO Box 945859 Atlanta,GA 30394-5859


| Total Excl. Tax (USD): | 170,000.00 |
|---|---|

*If this order is exempt from tax, please send an exemption certificate as soon as possible. If no exemption certificate is received,tax will be charged on the invoice*

Metso Minerals Industries Inc.
20965 Crossroads Circle
Waukesha, WI 53186 USA
MA: MI797 FA:MI797

Wire Transfer: Wachovia Bank, N.A.
For: Metso Minerals-Industries, Inc.
Acct. No: 2079900137141 ABA0530-00219
Swift Code: PNBPUS33
Tax ID 39:159980170
Check Remit to: Metso Minerals Industries Inc.
PO Box 945859 Atlanta,GA 30394-5859

1. "Metso" means Metso Minerals Industries, Inc., or a Metso corporate affiliate identified in the Proposal. "Proposal" means the Metso proposal, quotation, estimate or other Metso supplied documents and all addenda thereto, including drawings and specifications, that describe a scope of pply. The provisions of this Metso Sales Terms and Conditions document are a part of the Proposal, except to the limited extent specifically provided elsewhere in the Proposal "Agreement" means the Proposal and any other term, condition, or provision if and to the extent agreed to in writing Metso. "Product(s)" means the Metso supplied equipment and related parts, software, services or documentation as described in the Proposal.

2. BUYER'S ACCEPTANCE OF THE PROPOSAL IS EXPRESSLY LIMITED TO AND CONDITIONED UPON ACCEPTANCE ALL OF THE PROVISIONS THEREOF, INLCLUDING THESE SALES TERMS AND CONDITIONS. IF A METSO PROPOSAL IS CONSTRUED AS AN ACCEPTANCE OF BUYER'S OFFER OR AS A CONFIRMATION OF AN EXISTING CONTRACT, SUCH ACCEPTANCE OR CONFIRMATION IS EXPRESSLY CONDITIONED ON THE BUYER'S ASSENT TO ANY ADDITIONAL OR DIFFERENT TERMS CONTAINED HEREIN.

3 PRICE & PAYMENT: (A) Prices and payments are in U.S. Dollars and do not include any sales, use or excise taxes, customs duties or similar charges or fees. If not specifically stated elsewhere in the Proposal, Prices do not include the services of any representative of Metso including, but not limited to the assistance in the installation, inspection or startup of the Products. Pro rata payment are due for partial shipments. If shipment is delayed by Buyer, the date the shipment is ready shall be deemed to be the date of delivery for payment purposes and Metso reserves the right to store the Products at Buyer's risk and expense If Buyer fails to pay by the due date, Metso shall be entitled to interest at a rate of 1.5% per month not to exceed the legal maximum. The Proposal is subject to credit approval and Metso's right to require an irrevocable letter of credit established in acceptable form with a prime U.S. bank (B) For sales under $50,000 payment shall be net cash 30 days after shipment For sales between $50,000 and $150,000, payment shall be 15% down payment due at time of Buyer purchase order placement with remaining 85% net cash 30 days after shipment. For sales over $150,000, payment shall be progress milestones as described elsewhere in the Proposal. (C) Metso shall have the right to suspend its performance of the Agreement if Buyer fails to pay on any due date

4. DELIVERY: Delivery terms shall be a current Incoterm. Partial deliveries and transshipments are permitted. All delivery dates are approximate

5. REJECTION: Any rejection of Products must be made by the Buyer in writing within a reasonable time after delivery but in no event later than thirty (30) business days after delivery Failure to make such claim within the stated period shall constitute an irrevocable acceptance of the Products

6. LIMITED WARRANTY: Except as provided herein, Metso warrants that Products will be free of defects in workmanship and material. This warranty covers the Buyer only and is not transferable. EXCEPT FOR WARRANTY OF TITLE, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER REPRESENTATIONS, WARRANTIES, GUARANTEES AND THE LIKE, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, AND CONSTITUTES THE ONLY WARRANTY OF METSO WITH RESPECT TO THE PRODUCTS.

7. EXCLUSIONS TO WARRANTY: METSO MAKES NO WARRANTIES AS TO PERFORMANCE OR PRODUCTION, NOR AS TO WEAR PARTS OR CONSUMABLES, NOR AS TO ANY SEPARATELY LISTED ITEM OF THE PRODUCT(S) WHICH IS NOT MANUFACTURED BY METSO, which latter item shall be covered only by the manufacturer's warranty, if any. Metso and its suppliers shall have no obligation under the limited warranty as to any Product which has been improperly stored or handled, or which has not been installed, operated or maintained according to Metso or supplier furnished manuals or other instructions or is operated during the warranty remedy period with other than genuine Metso parts.

8. LIMITED WARRANTY REMEDY: (A) If, within twelve (12) months from date of delivery, but not more than eighteen (18) months from date that Buyer is advised that Products are ready for shipment, Buyer discovers that a Product was not as warranted and promptly notifies Metso in writing thereof, Metso shall cause the repair or replacement the defective Product or part thereof Buyer shall assume all responsibility and expense for removal, reinstallation, and freight in connection with replacement parts furnished by Metso. Buyer's entitlement to warranty remedies is contingent upon Buyer's cooperation in permitting Metso to investigate the defect and in returning replaced parts to Metso, if requested, at Metso's expense. The warranty period shall not be extended by the repair or replacement, nor shall there be a separate remedy period for any replacement Product or part. The warranty remedy period for Metso spare parts (not replacement parts furnished under warranty) is six (6) months from date of delivery. (B) If, after a reasonable number of repeated efforts, Metso determines that it is unable to repair or replace a defective Product or part, Buyer shall, at Metso's option, return the Product (or part thereof if such does not materially impair the value of the remaining Product) to Metso at Buyer's expense and Metso shall return the applicable purchase price as Buyer's entire and exclusive remedy. (C) THE REMEDIES EXPRESSLY PROVIDED HEREIN ARE BUYER'S EXCLUSIVE REMEDY AGAINST METSO AND ITS SUPPLIERS UNDER THE AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY, AND WHETHER ARISING OUT OF WARRANTIES, REPRESENTATIONS, INSTRUCTIONS, INSTALLATIONS OR DEFECTS FROM ANY CAUSE (D) If the foregoing disclaimer of additional warranties is not given full force and effect, any resulting additional warranty shall be limited in duration to the above warranty remedy periods and be otherwise subject to and limited by these sales terms and conditions

9. BUYER'S PERMITS, APPROVALS AND DATA: Buyer shall provide and pay for all permits and licenses required for the installation and operation of the Products. Timely performance by Metso is contingent upon Buyer's supplying to Metso, when needed, all required technical information and data, including drawing approval, and all required commercial documentation

10. FOUNDATIONS: Buyer shall be solely responsible for the design and construction of foundations. Any plans furnished by Metso shall be considered examples only, and Metso assumes no responsibility for foundation adequacy and disclaims any liability arising out of inadequate foundations and any effect on Products

11 BUYER EMPLOYEES AND PREMISES: Compliance with OSHA, MSHA or similar federal, state or local laws during any installation, operation, or use of the Product(s) is the sole responsibility of Buyer.

12 NUCLEAR AND HAZARDOUS WASTE USES: Products shall not be used in or in connection with a nuclear or hazardous waste application, and Buyer agrees to indemnify, defend, and hold Metso harmless from all loss, cost, damage, expense and other liability whatsoever from such use. Buyer also acknowledges its responsibility for the disposal of any Products

(including any computer or other electronic equipment or components) in accordance with applicable law, including any recycling, reporting or record keeping requirements.

13. RELIEF. If Metso is hindered or suffers delay in performance due to any cause beyond its reasonable control, including but not limited to war or other hostilities or civil unrest, act or failure to act of government, lack or loss of services or access (such as utilities or roads), act of God, including fire, flood, earthquake, landslide, or extreme weather event, strike or other labor trouble, or any sabotage, the time of performance shall be extended a period of time equal to the period of the resulting inability to perform and its consequences. In no event shall Metso have liability to Buyer arising out of any such delays. If the delay arising under this section is more than 180 days, either party has the right to terminate the Agreement and the parties' respective obligations shall be equitably adjusted Metso shall be reimbursed and for any additional costs it reasonably incurs as a direct result of Buyer's delay or inability or failure to perform.

14 INTELLECTUAL PROPERTY. (A) Metso shall pay costs and damages finally awarded to the extent based upon a finding by a U.S. court that the design or construction of a Product as furnished infringes a U.S. patent or copyright (except infringement occurring as a result of incorporating a design or modification at Buyer's request or Buyer's use of the Products in a manner contrary to the Agreement or Metso's manuals or instructions), provided that Buyer promptly notifies Metso in writing of any claim of such infringement, and Metso is given the right at its expense to settle and defend and control the defense of any such claim THIS SECTION SETS FORTH METSO'S EXCLUSIVE LIABILITY WITH RESPECT TO INFRINGEMENT OF INTELLECTUAL PROPERTY (B) All drawings, specifications, data, software, firmware, manuals, instructions, documentation or other works of authorship furnished by Metso are copyrighted property of Metso or its suppliers, and are to be used by Buyer only for the purpose of installing, operating, maintaining and repairing the Products. Such works and data may not be otherwise used or reproduced or disclosed. (C) Metso or its suppliers retain all right, title and interest in and to its and their inventions, discoveries, concepts, ideas or other intellectual property embodied in or related to its Products.

15. LIMITATION OF LIABILITY.

(A) NEITHER METSO NOR ITS SUPPLIERS SHALL BE LIABLE, WHETHER IN CONTRACT (INCLUDING BREACH OF REPRESENTATION OR WARRANTY) OR IN TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), OR FOR INFRINGEMENT OR UNDER ANY OTHER LEGAL THEORY, FOR LOSS OF USE, PRODUCTION, REVENUE OR PROFIT, OR FOR COST OF CAPITAL, OR FOR INCREASED COSTS OF OPERATION OR MAINTENANCE, OR FOR INCIDENTAL, INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT ANY OF THE FOREGOING DAMAGES ARE FORESEEABLE. In Agreements where Metso does not have responsibility for installation and erection of the equipment, all costs related to the disassembly, assembly reinstallation and erection shall be deemed to be excluded herein.

(B) IN ANY EVENT, METSO'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO 25% OF THE PURCHASE PRICE TO THE EXTENT PAID BY BUYER OR ANY SUCH OTHER LIABILITY CAP AS MAY BE PROVIDED ELSEWHERE IN THE AGREEMENT, WHICHEVER IS LESS.

(C) The limitations of liability contained in this section 15 shall be effective without regard to (i) Metso's performance or failure or delay of performance under any other term or condition of this Agreement, including any warranty or remedy or (ii) the invalidity or unenforceability of any other limitation, disclaimer or exclusion of any warranty, remedy or other right

16. SECURITY INTEREST AND INSURANCE: Metso retains and Buyer grants to Metso a security interest in the Product(s) and proceeds and any replacement regardless of mode of attachment to realty or other property to secure payment of all amounts due to Metso. Buyer agrees to do all acts necessary to perfect and maintain said security interest, and to protect Metso's interest by adequately insuring the Product against loss or damage from any external cause with Metso named as insured or additionally insured.

17. CHANGES AND SUBSTITUTIONS: (A) Metso reserves the right to make, at no cost to Buyer, such changes in materials or designs that are, in Metso's judgment, reasonable and necessary for the proper operation and life of the Products. Metso further reserves the right to make improvements to subsequently supplied Products without imposing an obligation on itself to modify its previously supplied products. (B) Whenever a material, piece of equipment or other item is iden tifi ed by brand name, manufacturer s or vendors' name, trademark, catalog number, etc ("Brand"), it is intended merely to establish a general quality standard and not to require the use of the Branded item. Metso shall have the option to provide items that otherwise conforms to the applicable standard, although the Buyer shall have the option to pay any increased cost of the Brand item.

18. NONCANCELLATION: Buyer acknowledges that the Proposal does not contain any Buyer right to terminate any Agreement for convenience or to suspend performance thereunder without cause (i.e., applicable Metso breach )

19. ASSIGNMENT: The Proposal and any Agreement and any rights and obligations thereunder may not be assigned or delegated by either party, except with written consent of the parties, except that Metso may so assign or delegate to a corporate affiliate owned or controlled by Metso Corporation, a Finnish corporation

20 APPLICABLE LAW, DISPUTE RESOLUTION AND SEVERALBILITY: (a) This Agreement shall be governed by, enforced and disputes resolved in accordance with the substantive laws of the State of Delaware, USA (b) All disputes arising out of or in connection with the Agreement shall be submitted to the International Court of Arbitration of the International Chamber of Commerce and shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The arbitration shall take place in Chicago, Illinois, USA, in the English language. The arbitration hearings shall last no longer than two weeks and the arbitrators shall issue a reasoned written opinion The arbitrator(s) shall have no authority to award punitive damages or other damages not permitted under this Agreement. Judgment upon such award may be entered in any court having jurisdiction. Arbitrator fees and costs shall be equally shared, but otherwise the parties are responsible for their own legal fees, costs and expenses Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for preliminary injunctive or other interim or equitable relief to prevent disclosure of confidential information or misappropriation or other misuse of intellectual property pending final determination in arbitration. (c) Should any provision or portion thereof be held invalid or unenforceablee, the validity and enforceability of the remaining provisions of the Agreement will not be affected

**THIS MEMORANDUM** is an acknowledgment that a bill of Lading has been issued and is not the Original Bill of Lading, nor a copy or duplicate covering the property named herein, and is intended solely for filing record RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of the Bill of Lading.

*The property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination...*

SEE OUR ORDER NUMBER

**CONSIGNED TO AND DESTINATION** (Mail or street address - For purposes of notification only)

ship to: **CRISP INDUSTRIES**
**C/O MAVERICK CONCRETE**
**1002 CARLTON DRIVE**
**EAGLE PASS, TX 78852-5767**

CUSTOMER ORDER NO. **05621**
SALES ORDER NUMBER **3012 29892**

ROUTE **CUSTOMER PICK UP**

FROM:
**metso**
**METSO MINERALS INDUSTRIES INC.**
X C/O **ROAD MACHINERY**
**1181 BURGUNDY DRIVE**
**EL PASO, TX 79907**
GABRIEL 915 872 1001
DATE **DECEMBER** , 2010
Car or Vehicle Initials & No.

| ITEM NO. | NO. OF PKGS | DESCRIPTION OF ARTICLES, SPECIAL MARKS AND EXCEPTIONS | WEIGHT (SUB TO COR.) | CLASS OR RATE | CHECK COLUMN |
|---|---|---|---|---|---|
| 1 | 1 | ST358 S/N R3581310 | 62,000 | LBS APPROX. | |

X bill of lading. If this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following: The carrier shall not make any delivery of this shipment without payment of freight and all other lawful charges.

METSO MINERALS INDUSTRIES INC.

(Signature of Consignee)

If charges are to be prepaid, write or stamp here. "To be Prepaid"

**CUSTOMER PICK UP**

THIRD PARTY BILLING
CRISP INDUSTRIES

If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading shall state whether it is "carrier's or shipper's weight"

NOTE - Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the goods.

The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

$ _____ PER _____

This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation, according to the applicable regulations of the Department of Transportation.

*Shipper's imprint in lieu of stamp; not a part of bill of lading approved by the Interstate Commerce Commission.

**SPECIAL INSTRUCTIONS**

PLEASE FAX TO METSO MINERALS INDUSTRIES INC. ATTENTION OF KATHY LASKA, FAX # 262 717 2501 A SIGNED COPY OF THIS INLAND BILL OF LADING WHEN EQUIPMENT HAS BEEN PICKED UP.

*MCE Contracting Tnk 03 Wildwood Fla*

**metso**
Permanent post office address of shipper: **METSO MINERALS INDUSTRIES, INC.**
**20965 CROSSROADS CIRCLE, WAUKESHA, WI 53186**
AGENT, PER _____

| GROSS | |
|---|---|
| ACTUAL | |
| MARKED | |
| NET | |
| DUNNAGE | |

# Tab 5

Fourth Amended Docket Control Order

CAUSE NO. 12-09-27789-MCVAJA

| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 365th JUDICIAL DISTRICT |
| | § | |
| IPE AGGREGATE, LLC and | § | |
| METSO MINERALS INDUSTRIES, INC., | § | MAVERICK COUNTY, TEXAS |
| Defendants. | § | |

## FOURTH AMENDED DOCKET CONTROL ORDER

On this the _____ day of May, 2015, the Court considered the above cause for the entry of this amended docket control order.   The Court hereby orders the parties to comply with the below stated deadlines, as follows:

1.    This case is designated as Level II;

2.    The Plaintiff shall designate all experts and produce reports on or before July 30, 2015;

3.    The Defendants shall designate all experts and produce reports on or before August 30, 2015;

4.    All fact witnesses shall be designated on or before September 31, 2015;

5.    All additional parties shall be joined by July 15, 2015;

6.    The Plaintiff's amended pleadings shall be filed on or before July 29, 2015;

7.    The Defendants' amended pleadings shall be filed on or before August 12, 2015;

8.    All discovery shall be completed on or before October 21, 2014;

9.    All *Daubert/Robinson/Havner* motions or objections to the qualifications of witnesses shall be filed on or before November 13, 2015;

10.    The deadline to file dispositive motions shall be on or before November 6, 2015;

11.    Dispositive motions and all other pending pretrial motions shall be heard at a Pretrial Conference on or before December 11, 2015;

12. Docket Call is set for January 5, 2016 at 3 p.m.; ✓

13. Jury Selection and Trial are set for January 11, 2016 at 9 a.m., with a trial period of 5 days. ✓

The above being considered by the Court; it is **THEREFORE ORDERED**, that the above amended scheduling order shall be complied with by the parties unless modified in writing by the Court. It is further **ORDERED AND DECREED** that this matter may be set at other times than those listed above, on the Court's own motion.

SIGNED on this the _10th_ day of ~~May~~ _June_, 2015.

_____
PRESIDING JUDGE

**AGREED TO AND APPROVED BY:**

_____
Daniel Dutko
State Bar No. 24054206

**ATTORNEY FOR PLAINTIFF**

_____
Oscar A. Garza
State Bar No. 24040960 / permission

**ATTORNEY FOR DEFENDANT**
**IPE AGGREGATE, LLC**

_____
Heriberto Morales Jr.
State Bar No. 24011285
Eric W. Matzke (pro hac vice)
WI State Bar No. 1079340

**ATTORNEYS FOR DEFENDANT,**
**METSO MINERAL INDUSTRIES, INC.**

_____
G. Alan Powers
State Bar No. 24005089 / permission

**ATTORNEY FOR DEFENDANT**
**CRISP INDUSTRIES, INC.**

FILED
AT _____ O'CLOCK ___ M

2

JUN 1 2 2015

LEOPOLDO VIELMA
District Clerk Maverick County, Texas
By _____ Deputy

# Tab 6

Email from Plaintiff's counsel with Initial Rule 11 Agreement

**From:** Daniel Dutko
**To:** Eddie Morales
**Cc:** Norma Moreno; Paula Boston; Eric W. Matzke; Alan Powers; Oscar Garza
**Subject:** RE: Update Request: Order to Deny Application to Compel Arbitration
**Date:** Thursday, August 13, 2015 5:10:01 PM
**Attachments:** image001.png
image002.png
image003.png
doc15390720150813170420.pdf
Plaintiff"s Order Denying Application to Compel Arbitration 1.docx
Plaintiff"s Order Denying Application to Compel Arbitration 2.docx

Counsel,

Attached is the signed Rule 11 Agreement. Plaintiffs are not in agreement with Defendants' proposed order. Instead, we have drafted two alternatives. Please let me know if either of these is acceptable. If not, they we should submit our orders to the court separately.

Daniel

---

**From:** Eddie Morales [mailto:hmorales@langleybanack.com]
**Sent:** Tuesday, August 11, 2015 6:42 PM
**To:** Daniel Dutko
**Cc:** Norma Moreno; Paula Boston; Eric W. Matzke; Alan Powers; Oscar Garza
**Subject:** Re: Update Request: Order to Deny Application to Compel Arbitration

Daniel:

If we do not hear from you within 3 business days, we will assume you are in Agreement with the proposed Order and will forward same to the Court since everyone else is on board.

Thanks,

Eddie

Sent from my iPhone

On Aug 11, 2015, at 5:40 PM, Paula Boston <pboston@langleybanack.com> wrote:

> Hi Daniel,
>
> Alan Powers and Oscar Garza have both approved (as to form) the Order we sent out yesterday in the Maverick v. Metso matter. Please let us know whether the Order meets with your approval. For your convenience, the Order is attached to this email as well.
>
> Thank you,
> Paula
>
> Paula Boston
> pboston@langleybanack.com

*click to visit LangleyBanack.com*



LANGLEY & BANACK, INCORPORATED
**Attorneys and Counselors at Law**
745 EAST MULBERRY, STE 900   SAN ANTONIO, TEXAS 78212
TEL 210.736.6600   FAX 210.735.6889

This email may contain confidential and privileged material for the sole use of the intended recipient; any other use is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

**IRS Circular 230 Disclosure:** Effective June 21, 2005, IRS guidance requires written tax advice intended for reliance to avoid IRS penalties include detailed recitals and exhaustive analysis of relevant facts, assumptions and Federal tax issues. To ensure compliance with the IRS requirements, we inform you that any U.S. federal tax advice in this document is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter that is contained in this document.

MERITAS LAW FIRMS WORLDWIDE

<Order Denying Application to Compel Arbitration (L1006405-2x7AEDB).docx>

# SIMPSON BOYD POWERS & WILLIAMSON

## Attorneys at Law

105 NORTH STATE STREET, SUITE B
P.O. BOX 957
DECATUR, TEXAS 76234
TEL: 940-627-8308 FAX 940-627-8092
Writer's Address

1119 HALSELL STREET
P.O. BOX 685
BRIDGEPORT, TEXAS 76426
TEL: 940-683-4098
FAX 940-683-3122

*† Michael A. Simpson
Ross M. Simpson
** Derrick S. Boyd
G. Alan Powers
*** Allen L. Williamson
Kristy Pesnell Campbell
Matthew W. Meyer

* Board Certified - Personal Injury Trial Law
  Texas Board of Legal Specialization
† Board Certified - Civil Trial Specialist
  National Board of Trial Advocacy
** Board Certified - Civil Trial
  Texas Board of Legal Specialization
*** Board Certified - Criminal Law
  Texas Board of Legal Specialization

August 11, 2015

**Via Email**
Daniel R. Dutko
HANSZEN LAPORTE
11767 Katy Freeway, Suite 850
Houston, TX 77079

**Via Email**
Heriberto Morales, Jr.
LANGLEY & BANACK
401 Quarry Street
Eagle Pass, Texas 78852

**Via Email**
Oscar A. Garza
THE LAW FIRM OF OSCAR A. GARZA, L.L.C.
111 Soledad Street, 300
San Antonio, Texas 78201

Re:  Cause No. 12-09-27789; *Maverick Aggregates, Inc. v. IPE Aggregate, LLC, et al.*

Dear Counsel:

This letter will confirm our agreement that the parties agree to suspend the deadlines in the current amended docket control order until after a ruling on the mandamus that will be filed regarding the Order on the Motion to Compel Arbitration. After a ruling on the mandamus has been made, the parties will enter into a new Docket Control Order.

By signing the space provided below, each party certifies that this agreement is made in accordance with Rule 11 of the Texas Rules of Civil Procedure and shall be filed of record with the court. Each party further agrees that the signature affixed to this agreement and returned to my office by facsimile shall be the same as an original signature.

Thank you for your attention to this matter.

SIMPSON, BOYD & POWERS,

G. Alan Powers

_____
Daniel Dutko
**Attorney for Plaintiff**


_____
Heriberto Morales, Jr.
Eric. W. Matzke
**Attorneys for Defendant Metso**
**Mineral Industries, Inc.**


_____
Oscar A. Garza
**Attorney for Defendant IPE**
**Aggregate, LLC**

# Tab 7

Metso's Amended Answers

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 365th JUDICIAL DISTRICT |
| | § | |
| IPE AGGREGATE, LLC, | § | |
| METSO MINERALS INDUSTRIES, INC. | § | |
| and CRISP INDUSTRIES, INC., | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

## DEFENDANT METSO MINERALS INDUSTRIES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED PETITION AND CROSSCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Metso Minerals Industries, Inc., a named defendant in the above-style and numbered cause, and files its First Amended Answer to Plaintiff's First Amended Petition and Crossclaim ("Amended Answer"), respectfully showing the Court as follows:

## I. RESERVATION OF RIGHTS

Metso Minerals Industries, Inc., hereby files this Amended Answer subject to its Application to Compel Arbitration, without waiving any rights under equity or law, and with the intent of complying with the Court's mandates under the Fourth Amended Docket Control Order. The filing of this Amended Answer is not intended in any manner to substantially invoke the judicial process. It is only by order of the Court that Defendant Metso Mineral Industries, Inc. must and will preserve its rights and file this Amended Answer, expressly rejecting in advance any suggestion that doing so in any way further invokes the judicial process or waives the right to compel arbitration.

## II. GENERAL DENIAL

Defendant Metso Minerals Industries, Inc. generally denies each and every allegation of Plaintiff's First Amended Petition, and demands strict proof thereof as required by the Texas Rules of Civil Procedure.

## III. AFFIRMATIVE DEFENSES

Defendant Metso Minerals Industries, Inc. affirmatively pleads that any alleged defects with the product made the subject of Plaintiff's lawsuit, if any, are the proximate result of Plaintiff's negligence in handling and/or maintaining the product;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff failed to mitigate its damages, if any;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff's claims and causes of action for breach of warranty are barred due to lack of privity;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that, to the extent there is found to be a contractual relationship, its Sales Terms & Conditions (attached hereto as Exhibit A), including the arbitration clause, apply;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that any implied warranties were disclaimed and/or limited;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff's claims and causes of action for breach of warranty are barred under the terms of the express warranty;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff's tort claims herein are barred by application of the "economic loss rule";

Defendant Metso Minerals Industries, Inc. affirmatively pleads that any damages sustained by Plaintiff were caused by the acts or omissions of Plaintiff's agents and/or third parties for which Metso Minerals Industries, Inc. had no responsibility and over which it had no control;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that the statute of limitations bars Plaintiff from bringing any DTPA claims against Defendant;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff failed to provide any notice of the purported breach to Metso Minerals Industries, Inc., its agents or representatives;

Defendant Metso Minerals Industries, Inc. reserves the right to amend this Answer to assert additional defenses, affirmative or otherwise, to include verifying that plaintiff is not entitled to recover in the capacity in which it sues; to challenge venue; and to assert third party claims and any other claims; all as may be required upon the completion of discovery in this matter.

## IV. DENIAL OF CONDITIONS PRECEDENT

Defendant Metso Minerals Industries, Inc. specifically denies that all conditions precedent to Plaintiff's right to recovery have occurred. Plaintiff failed to provide notice of any problems and/or defects with the alleged unit and failed to provide Defendant Metso Minerals Industries, Inc. an opportunity to cure. Further, Plaintiff did not purchase the ST358 directly from Defendant Metso Minerals Industries, Inc. nor directly from Defendant's authorized agents or representatives, such that there is was no consideration, meeting of the minds, or acceptance as between Defendant Metso Minerals Industries, Inc. and Plaintiff.

## V. DEFENDANT'S RULE 193.7 NOTICE

Defendant Metso Minerals Industries, Inc. hereby provides notice of its intent to utilize items produced in discovery against the party producing same. The authenticity of such items is self-proven pursuant to Rule 193.7 of the Texas Rules of Civil Procedure.

## VI. CROSSCLAIM

Metso Minerals Industries, Inc., acting as Cross-Plaintiff, files this Original Crossclaim, and respectfully shows the Court as follows, without waiving any of its rights under law and equity, and subject to its Application to Compel Arbitration as detailed in Section I, above.

Cross-Plaintiff Metso Minerals Industries, Inc. hereby sues Cross-Defendant IPE Aggregate, LLC, for all actual damages proximately caused by its tortious interference with Defendant Metso Minerals Industries, Inc.'s contractual relationship with Crisp Industries, Inc. Cross-Defendant, IPE Aggregate, Inc. willfully and intentionally interfered with the distributorship arrangement and ST358 sales contract, both exclusively between Defendant Metso Minerals Industries, Inc. and Defendant Crisp Industries, Inc., by interposing itself, when it had knowledge of such contracts, as a third-party seller of Defendant Metso Minerals Industries, Inc.'s commercial equipment without Defendant Metso Minerals Industries, Inc.'s knowledge or authority. Cross-Defendant IPE Aggregate, Inc., through its actions, inactions, negligence, fraud, and subterfuge has, as evidenced by the lawsuit brought against Defendant Metso Minerals Industries, Inc. by Maverick Aggregates, Inc., proximately caused Defendant Metso Minerals Industries, Inc. to suffer actual damages and loss in the form of costs and expenses

related to defending itself in this lawsuit and protecting itself against Cross-Defendant's willful and intentional interference.

All conditions precedent to the assertion of the above-listed crossclaim have been performed or occurred. As a result of the facts alleged above, it has been necessary for Metso Minerals Industries, Inc. to hire an attorney to defend this action and prosecute this crossclaim, and to incur reasonable, equitable, and just attorney's fees for same, and any and all subsequent appeals. Accordingly, Metso Minerals Industries, Inc. seeks recovery of costs of court and reasonable and necessary attorney's fees pursuant to contracts or alleged contracts at issue and/or the Texas Civil Practice and Remedies Code.

## VII. JURY DEMAND

Defendant Metso Minerals Industries, Inc. demands that a jury be impaneled for the trial of this matter.

WHEREFORE, PREMISES CONSIDERED, Defendant Metso Minerals Industries, Inc. prays that upon final trial, Plaintiff takes nothing by its suit but Defendant Metso Minerals Industries, Inc. have judgment plus costs of court and such other and further relief to which it may be entitled from Plaintiff and Cross-Defendant, either at law or in equity.

Respectfully submitted,

By: _____
Heriberto Morales, Jr.
State Bar No. 24011285
Paula C. Boston
State Bar No. 24089661
LANGLEY & BANACK, INC.
401 Quarry Street
Eagle Pass, Texas 78852
(830) 773-6700 Telephone
(830) 757-4045 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2015, a copy of the above and foregoing document was sent via regular mail and in pdf format via email to:

Mr. Daniel R. Dutko  
HANSZEN LAPORTE  
11767 Katy Freeway, Ste. 850  
Houston, Texas 77970  
Attorneys for Maverick Aggregates, Inc.

DDutko@hanszenlaporte.com

Mr. Oscar A. Garza  
THE LAW FIRM OF OSCAR A. GARZA, LLC  
111 Soledad Street, Suite 300  
San Antonio, Texas 78205  
Attorney for IPE Aggregate, LLC

ogarza@oscargarzalaw.com

Mr. G. Alan Powers  
SIMPSON, BOYD & POWERS  
P. O. Box 685  
1119 Halsell Street  
Bridgeport, Texas 76426  
Attorneys for Crisp Industries, Inc.

apowers@sbplaw.com

Heriberto Morales, Jr.

1. "Metso" means Metso Minerals Industries, Inc., or a Metso corporate affiliate identified in the Proposal. "Proposal" means the Metso proposal, quotation, estimate or other Metso supplied cuments and all addenda thereto, including drawings and specifications, that describe a scope of pply. The provisions of this Metso Sales Terms and Conditions document are a part of the Proposal, except to the limited extent specifically provided elsewhere in the Proposal. "Agreement" means the Proposal and any other term, condition, or provision if and to the extent agreed to in writing Metso. "Product(s)" means the Metso supplied equipment and related parts, software, services or documentation as described in the Proposal.

2. BUYER'S ACCEPTANCE OF THE PROPOSAL IS EXPRESSLY LIMITED TO AND CONDITIONED UPON ACCEPTANCE ALL OF THE PROVISIONS THEREOF, INLCLUDING THESE SALES TERMS AND CONDITIONS. IF A METSO PROPOSAL IS CONSTRUED AS AN ACCEPTANCE OF BUYER'S OFFER OR AS A CONFIRMATION OF AN EXISTING CONTRACT, SUCH ACCEPTANCE OR CONFIRMATION IS EXPRESSLY CONDITIONED ON THE BUYER'S ASSENT TO ANY ADDITIONAL OR DIFFERENT TERMS CONTAINED HEREIN.

3. PRICE & PAYMENT: (A) Prices and payments are in U.S. Dollars and do not include any sales, use or excise taxes, customs duties or similar charges or fees. If not specifically stated elsewhere in the Proposal, Prices do not include the services of any representative of Metso including, but not limited to the assistance in the installation, inspection or startup of the Products. Pro rata payment are due for partial shipments. If shipment is delayed by Buyer, the date the shipment is ready shall be deemed to be the date of delivery for payment purposes and Metso reserves the right to store the Products at Buyer's risk and expense. If Buyer fails to pay by the due date, Metso shall be entitled to interest at a rate of 1.5% per month not to exceed the legal maximum. The Proposal is subject to credit approval and Metso's right to require an irrevocable letter of credit established in acceptable form with a prime U.S. bank. (B) For sales under $50,000 payment shall be net cash 30 days after shipment. For sales between $50,000 and $150,000, payment shall be 15% down payment due at time of Buyer purchase order placement with remaining 85% net cash 30 days after shipment. For sales over $150,000, payment shall be progress milestones as described elsewhere in the Proposal. (C) Metso shall have the right to suspend its performance of the Agreement if Buyer fails to pay on any due date.

4. DELIVERY: Delivery terms shall be a current Incoterm. Partial deliveries and transshipments are permitted. All delivery dates are approximate.

5. REJECTION: Any rejection of Products must be made by the Buyer in writing within a reasonable time after delivery but in no event later than thirty (30) business days after delivery. Failure to make such claim within the stated period shall constitute an irrevocable acceptance of the Products.

6. LIMITED WARRANTY: Except as provided herein, Metso warrants that Products will be free of defects in workmanship and material. This warranty covers the Buyer only and is not transferable. EXCEPT FOR WARRANTY OF TITLE, THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER REPRESENTATIONS, WARRANTIES, GUARANTEES AND THE LIKE, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, AND CONSTITUTES THE ONLY WARRANTY OF METSO WITH RESPECT TO THE PRODUCTS.

EXCLUSIONS TO WARRANTY: METSO MAKES NO WARRANTIES AS TO PERFORMANCE JR PRODUCTION, NOR AS TO WEAR PARTS OR CONSUMABLES, NOR AS TO ANY SEPARATELY LISTED ITEM OF THE PRODUCT(S) WHICH IS NOT MANUFACTURED BY METSO, which latter item shall be covered only by the manufacturer's warranty, if any. Metso and its suppliers shall have no obligation under the limited warranty as to any Product which has been improperly stored or handled, or which has not been installed, operated or maintained according to Metso or supplier furnished manuals or other instructions or is operated during the warranty remedy period with other than genuine Metso parts.

8. LIMITED WARRANTY REMEDY: (A) If, within twelve (12) months from date of delivery, but not more than eighteen (18) months from date that Buyer is advised that Products are ready for shipment, Buyer discovers that a Product was not as warranted and promptly notifies Metso in writing thereof, Metso shall cause the repair or replacement the defective Product or part thereof. Buyer shall assume all responsibility and expense for removal, reinstallation, and freight in connection with replacement parts furnished by Metso. Buyer's entitlement to warranty remedies is contingent upon Buyer's cooperation in permitting Metso to investigate the defect and in returning replaced parts to Metso, if requested, at Metso's expense. The warranty period shall not be extended by the repair or replacement, nor shall there be a separate remedy period for any replacement Product or part. The warranty remedy period for Metso spare parts (not replacement parts furnished under warranty) is six (6) months from date of delivery. (B) If, after a reasonable number of repeated efforts, Metso determines that it is unable to repair or replace a defective Product or part, Buyer shall, at Metso's option, return the Product (or part thereof, if such does not materially impair the value of the remaining Product) to Metso at Buyer's expense and Metso shall return the applicable purchase price as Buyer's entire and exclusive remedy. (C) THE REMEDIES EXPRESSLY PROVIDED HEREIN ARE BUYER'S EXCLUSIVE REMEDY AGAINST METSO AND ITS SUPPLIERS UNDER THE AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY, AND WHETHER ARISING OUT OF WARRANTIES, REPRESENTATIONS, INSTRUCTIONS, INSTALLATIONS OR DEFECTS FROM ANY CAUSE. (D) If the foregoing disclaimer of additional warranties is not given full force and effect, any resulting additional warranty shall be limited in duration to the above warranty remedy periods and be otherwise subject to and limited by these sales terms and conditions.

9. BUYER'S PERMITS, APPROVALS AND DATA: Buyer shall provide and pay for all permits and licenses required for the installation and operation of the Products. Timely performance by Metso is contingent upon Buyer's supplying to Metso, when needed, all required technical information and data, including drawing approval, and all required commercial documentation.

10. FOUNDATIONS: Buyer shall be solely responsible for the design and construction of foundations. Any plans furnished by Metso shall be considered examples only, and Metso assumes no responsibility for foundation adequacy and disclaims any liability arising out of inadequate foundations and any effect on Products.

11. BUYER EMPLOYEES AND PREMISES: Compliance with OSHA, MSHA or similar federal, state local laws during any installation, operation, or use of the Product(s) is the sole responsibility of yer.

12. NUCLEAR AND HAZARDOUS WASTE USES: Products shall not be used in or in connection with a nuclear or hazardous waste application, and Buyer agrees to indemnify, defend, and hold Metso harmless from all loss, cost, damage, expense and other liability whatsoever from such use. Buyer also acknowledges its responsibility for the disposal of any Products

(including any computer or other electronic equipment or components) in accordance with applicable law, including any recycling, reporting or record keeping requirements.

13. RELIEF. If Metso is hindered or suffers delay in performance due to any cause beyond its reasonable control, including but not limited to war or other hostilities or civil unrest, act or failure to act of government, lack or loss of services or access (such as utilities or roads), act of God, including fire, flood, earthquake, landslide, or extreme weather event, strike or other labor trouble, or any sabotage, the time of performance shall be extended a period of time equal to the period of the resulting inability to perform and its consequences. In no event shall Metso have liability to Buyer arising out of any such delays. If the delay arising under this section is more than 180 days, either party has the right to terminate the Agreement and the parties' respective obligations shall be equitably adjusted. Metso shall be reimbursed and for any additional costs it reasonably incurs as a direct result of Buyer's delay or inability or failure to perform.

14. INTELLECTUAL PROPERTY. (A) Metso shall pay costs and damages finally awarded to the extent based upon a finding by a U.S. court that the design or construction of a Product as furnished infringes a U.S. patent or copyright (except infringement occurring as a result of incorporating a design or modification at Buyer's request or Buyer's use of the Products in a manner contrary to the Agreement or Metso's manuals or instructions), provided that Buyer promptly notifies Metso in writing of any claim of such infringement, and Metso is given the right at its expense to settle and defend and control the defense of any such claim. THIS SECTION SETS FORTH METSO'S EXCLUSIVE LIABILITY WITH RESPECT TO INFRINGEMENT OF INTELLECTUAL PROPERTY. (B) All drawings, specifications, data, software, firmware, manuals, instructions, documentation or other works of authorship furnished by Metso are copyrighted property of Metso or its suppliers, and are to be used by Buyer only for the purpose of installing, operating, maintaining and repairing the Products. Such works and data may not be otherwise used or reproduced or disclosed. (C) Metso or its suppliers retain all right, title and interest in and to its and their inventions, discoveries, concepts, ideas or other intellectual property embodied in or related to its Products.

15. LIMITATION OF LIABILITY.

(A) NEITHER METSO NOR ITS SUPPLIERS SHALL BE LIABLE, WHETHER IN CONTRACT (INCLUDING BREACH OF REPRESENTATION OR WARRANTY) OR IN TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), OR FOR INFRINGEMENT OR UNDER ANY OTHER LEGAL THEORY, FOR LOSS OF USE, PRODUCTION, REVENUE OR PROFIT, OR FOR COST OF CAPITAL, OR FOR INCREASED COSTS OF OPERATION OR MAINTENANCE, OR FOR INCIDENTAL, INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT ANY OF THE FOREGOING DAMAGES ARE FORESEEABLE. In Agreements where Metso does not have responsibility for installation and erection of the equipment, all costs related to the disassembly, assembly reinstallation and erection shall be deemed to be excluded herein.

(B) IN ANY EVENT, METSO'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO 25% OF THE PURCHASE PRICE TO THE EXTENT PAID BY BUYER OR ANY SUCH OTHER LIABILITY CAP AS MAY BE PROVIDED ELSEWHERE IN THE AGREEMENT, WHICHEVER IS LESS.

(C) The limitations of liability contained in this section 15 shall be effective without regard to (i) Metso's performance or failure or delay of performance under any other term or condition of this Agreement, including any warranty or remedy or (ii) the invalidity or unenforcability of any other limitation, disclaimer or exclusion of any warranty, remedy or other right.

16. SECURITY INTEREST AND INSURANCE: Metso retains and Buyer grants to Metso a security interest in the Product(s) and proceeds and any replacement regardless of mode of attachment to realty or other property to secure payment of all amounts due to Metso. Buyer agrees to do all acts necessary to perfect and maintain said security interest, and to protect Metso's interest by adequately insuring the Product against loss or damage from any external cause with Metso named as insured or additionally insured.

17. CHANGES AND SUBSTITUTIONS: (A) Metso reserves the right to make, at no cost to Buyer, such changes in materials or designs that are, in Metso's judgment, reasonable and necessary for the proper operation and life of the Products. Metso further reserves the right to make improvements to subsequently supplied Products without imposing an obligation on itself to modify its previously supplied products. (B) Whenever a material, piece of equipment or other item is iden tifi ed by brand name, manufacturer' s or vendors' name, trademark, catalog number, etc ("Brand"), it is intended merely to establish a general quality standard and not to require the use of the Branded item. Metso shall have the option to provide items that otherwise conforms to the applicable standard, although the Buyer shall have the option to pay any increased cost of the Brand item.

18. NONCANCELLATION: Buyer acknowledges that the Proposal does not contain any Buyer right to terminate any Agreement for convenience or to suspend performance thereunder without cause (i.e., applicable Metso breach ).

19. ASSIGNMENT: The Proposal and any Agreement and any rights and obligations thereunder may not be assigned or delegated by either party, except with written consent of the parties, except that Metso may so assign or delegate to a corporate affiliate owned or controlled by Metso Corporation, a Finnish corporation.

20. APPLICABLE LAW, DISPUTE RESOLUTION AND SEVERALBILITY: (a) This Agreement shall be governed by, enforced and disputes resolved in accordance with the substantive laws of the State of Delaware, USA. (b) All disputes arising out of or in connection with the Agreement shall be submitted to the International Court of Arbitration of the International Chamber of Commerce and shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The arbitration shall take place in Chicago, Illinois, USA, in the English language. The arbitration hearings shall last no longer than two weeks and the arbitrators shall issue a reasoned written opinion. The arbitrator(s) shall have no authority to award punitive damages or other damages not permitted under this Agreement. Judgment upon such award may be entered in any court having jurisdiction. Arbitrator fees and costs shall be equally shared, but otherwise the parties are responsible for their own legal fees, costs and expenses. Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for preliminary injunctive or other interim or equitable relief to prevent disclosure of confidential information or misaappropration or other misuse of intellectual property pending final determination in arbitration. (c) Should any provision or portion thereof be held invalid or unenforceablee, the validity and enforceability of the remaining provisions of the Agreement will not be affected.



CONFIDENT **EXHIBIT "A"** IVE ORDER     Metso/Maverick 0163

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 365th JUDICIAL DISTRICT |
| | § | |
| IPE AGGREGATE, LLC, | § | |
| METSO MINERALS INDUSTRIES, INC. | § | |
| and CRISP INDUSTRIES, INC., | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

## DEFENDANT METSO MINERALS INDUSTRIES, INC.'S MOTION FOR LEAVE TO FILE AMENDED PLEADING

Defendant Metso Minerals Industries, Inc. ("Metso") asks the court to allow it to file Defendant's Amended Answer and Crossclaim.

1.    Plaintiff is Maverick Aggregates, Inc.;

2.    Plaintiff sued Metso for breach of an express warranty, among other claims;

3.    Discovery in this suit is to be conducted in accordance with a Level II discovery control plan under Rule 190.3 of the Texas Rules of Civil Procedure;

4.    There is a Fourth Amended Docket Control Order in this case, wherein the deadline to amend the defendants' pleadings was August 12, 2015;

5.    On August 12, 2015, Defendant Metso filed its amended pleadings, albeit with a typographic error.

6.    Metso Minerals Industries, Inc., hereby files this Motion for Leave to File Amended Pleading subject to its Application to Compel Arbitration, without waiving any rights under equity or law, and with the intent of complying with the Court's mandates while not substantially invoking the judicial process.

7.    Defendant Metso files this motion for leave to amend its most recent filing well in advance of the seven days before trial limitation;

8. Defendant Metso files the amended pleading simultaneously with the filing of this motion; the pleading corrects a typographic mistake and now correctly identifies Plaintiff's most recent petition, which Defendant is responding to in its Amended Answer at this juncture in the proceedings;

9. A court's permission to file an amended pleading is required when the pleading is filed after a deadline in a pretrial order. *See* TEX. R. CIV. P. 63; *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992) (per curiam).

10. There are only three instances when the trial court has the discretion to deny leave to amend a pleading after the filing deadline: (1) when the opposing party presents evidence of surprise, (2) when the amendment asserts a new claim or defense that is prejudicial on its face, or (3) when the amendment changes the case from a Level 1 to a Level 2 or 3 case, and the party presenting the amendment cannot show that good cause to file outweighs the prejudice to the opposing party. *See* TEX. R. CIV. P. 63; *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938 (Tex. 1990). The burden of showing surprise rests on the opposing party. *Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex. 1999); *Greenhalgh*, 787 S.W.2d at 939.

11. The purpose of Metso's amendment is to correct a typographic error in the pleadings by referencing the Plaintiff's First Amended Petition instead of Plaintiff's Second Amended Petition. The change to the pleading does not add a new claim and does not alter the nature of these proceedings.

12. A trial court should grant leave unless the opposing party can show surprise. TEX. R. CIV. P. 63; *Burrow*, 997 S.W.2d at 246. Plaintiff cannot claim to be surprised by the amendment.

13.  For these reasons, Defendant Metso asks the court to grant leave to file the amended pleading.

Respectfully submitted,

**LANGLEY & BANACK, INC.**

By:_____
Heriberto Morales, Jr.
State Bar No. 24011285
Paula C. Boston
State Bar No. 24089661
LANGLEY & BANACK, INC.
401 Quarry Street
Eagle Pass, Texas 78852
(830) 773-6700 Telephone
(830) 757-4045 Facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2015, a copy of the above and foregoing document was sent via E-service (Efile Texas) and/or fax to:

Mr. Daniel R. Dutko                                   DDutko@hanszenlaporte.com
HANSZEN LAPORTE                                    FAX: 713-524-2580
11767 Katy Freeway, Ste. 850
Houston, Texas 77970
Attorneys for Maverick Aggregates, Inc.

Mr. Oscar A. Garza                                    ogarza@oscargarzalaw.com
THE LAW FIRM OF OSCAR A. GARZA, LLC    FAX: 210-299-7711
111 Soledad Street, Suite 300
San Antonio, Texas 78205
Attorney for IPE Aggregate, LLC

Mr. G. Alan Powers                                    apowers@sbplaw.com
SIMPSON, BOYD & POWERS                         FAX: 940-683-3122
P. O. Box 685
1119 Halsell Street
Bridgeport, Texas 76426
Attorneys for Crisp Industries, Inc.

By:_____
Heriberto Morales, Jr.

CAUSE NO. 12-09-27789-MCVAJA

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 365th JUDICIAL DISTRICT |
| | § | |
| IPE AGGREGATE, LLC, | § | |
| METSO MINERALS INDUSTRIES, INC. | § | |
| and CRISP INDUSTRIES, INC., | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

## DEFENDANT METSO MINERALS INDUSTRIES, INC.'S AMENDED ANSWER AND CROSSCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Metso Minerals Industries, Inc., a named defendant in the above-style and numbered cause, and files its Amended Answer and Crossclaim ("Amended Answer"), respectfully showing the Court as follows:

### I.    RESERVATION OF RIGHTS

Metso Minerals Industries, Inc., hereby files this Amended Answer subject to its Application to Compel Arbitration, without waiving any rights under equity or law, and with the intent of complying with the Court's mandates under the Fourth Amended Docket Control Order. The filing of this Amended Answer is not intended in any manner to substantially invoke the judicial process.  It is only by order of the Court that Defendant Metso Mineral Industries, Inc. must and will preserve its rights and file this Amended Answer, expressly rejecting in advance any suggestion that doing so in any way further invokes the judicial process or waives the right to compel arbitration.

### II.    GENERAL DENIAL

Defendant Metso Minerals Industries, Inc. generally denies each and every allegation of Plaintiff's Second Amended Petition, and demands strict proof thereof as required by the Texas Rules of Civil Procedure.

# III. AFFIRMATIVE DEFENSES

Defendant Metso Minerals Industries, Inc. affirmatively pleads that any alleged defects with the product made the subject of Plaintiff's lawsuit, if any, are the proximate result of Plaintiff's negligence in handling and/or maintaining the product;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff failed to mitigate its damages, if any;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff's claims and causes of action for breach of warranty are barred due to lack of privity;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that, to the extent there is found to be a contractual relationship, its Sales Terms & Conditions (attached hereto as Exhibit A), including the arbitration clause, apply;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that any implied warranties were disclaimed and/or limited;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff's claims and causes of action for breach of warranty are barred under the terms of the express warranty;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff's tort claims herein are barred by application of the "economic loss rule";

Defendant Metso Minerals Industries, Inc. affirmatively pleads that any damages sustained by Plaintiff were caused by the acts or omissions of Plaintiff's agents and/or third parties for which Metso Minerals Industries, Inc. had no responsibility and over which it had no control;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that the statute of limitations bars Plaintiff from bringing any DTPA claims against Defendant;

Defendant Metso Minerals Industries, Inc. affirmatively pleads that Plaintiff failed to provide any notice of the purported breach to Metso Minerals Industries, Inc., its agents or representatives;

Defendant Metso Minerals Industries, Inc. reserves the right to amend this Answer to assert additional defenses, affirmative or otherwise, to include verifying that plaintiff is not entitled to recover in the capacity in which it sues; to challenge venue; and to assert third party claims and any other claims; all as may be required upon the completion of discovery in this matter.

## IV. DENIAL OF CONDITIONS PRECEDENT

Defendant Metso Minerals Industries, Inc. specifically denies that all conditions precedent to Plaintiff's right to recovery have occurred. Plaintiff failed to provide notice of any problems and/or defects with the alleged unit and failed to provide Defendant Metso Minerals Industries, Inc. an opportunity to cure. Further, Plaintiff did not purchase the ST358 directly from Defendant Metso Minerals Industries, Inc. nor directly from Defendant's authorized agents or representatives, such that there is was no consideration, meeting of the minds, or acceptance as between Defendant Metso Minerals Industries, Inc. and Plaintiff.

## V. DEFENDANT'S RULE 193.7 NOTICE

Defendant Metso Minerals Industries, Inc. hereby provides notice of its intent to utilize items produced in discovery against the party producing same. The authenticity of such items is self-proven pursuant to Rule 193.7 of the Texas Rules of Civil Procedure.

## VI. CROSSCLAIM

Metso Minerals Industries, Inc., acting as Cross-Plaintiff, files this Original Crossclaim, and respectfully shows the Court as follows, without waiving any of its rights under law and equity, and subject to its Application to Compel Arbitration as detailed in Section I, above.

Cross-Plaintiff Metso Minerals Industries, Inc. hereby sues Cross-Defendant IPE Aggregate, LLC, for all actual damages proximately caused by its tortious interference with Defendant Metso Minerals Industries, Inc.'s contractual relationship with Crisp Industries, Inc. Cross-Defendant, IPE Aggregate, Inc. willfully and intentionally interfered with the distributorship arrangement and ST358 sales contract, both exclusively between Defendant Metso Minerals Industries, Inc. and Defendant Crisp Industries, Inc., by interposing itself, when it had knowledge of such contracts, as a third-party seller of Defendant Metso Minerals Industries, Inc.'s commercial equipment without Defendant Metso Minerals Industries, Inc.'s knowledge or authority. Cross-Defendant IPE Aggregate, Inc., through its actions, inactions, negligence, fraud, and subterfuge has, as evidenced by the lawsuit brought against Defendant Metso Minerals Industries, Inc. by Maverick Aggregates, Inc., proximately caused Defendant Metso Minerals Industries, Inc. to suffer actual damages and loss in the form of costs and expenses

related to defending itself in this lawsuit and protecting itself against Cross-Defendant's willful and intentional interference.

All conditions precedent to the assertion of the above-listed crossclaim have been performed or occurred. As a result of the facts alleged above, it has been necessary for Metso Minerals Industries, Inc. to hire an attorney to defend this action and prosecute this crossclaim, and to incur reasonable, equitable, and just attorney's fees for same, and any and all subsequent appeals. Accordingly, Metso Minerals Industries, Inc. seeks recovery of costs of court and reasonable and necessary attorney's fees pursuant to contracts or alleged contracts at issue and/or the Texas Civil Practice and Remedies Code.

## VII. JURY DEMAND

Defendant Metso Minerals Industries, Inc. demands that a jury be impaneled for the trial of this matter.

WHEREFORE, PREMISES CONSIDERED, Defendant Metso Minerals Industries, Inc. prays that upon final trial, Plaintiff takes nothing by its suit but Defendant Metso Minerals Industries, Inc. have judgment plus costs of court and such other and further relief to which it may be entitled from Plaintiff and Cross-Defendant, either at law or in equity.

Respectfully submitted,

By: _____
Heriberto Morales, Jr.
State Bar No. 24011285
Paula C. Boston
State Bar No. 24089661
LANGLEY & BANACK, INC.
401 Quarry Street
Eagle Pass, Texas 78852
(830) 773-6700 Telephone
(830) 757-4045 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2015, a copy of the above and foregoing document was sent via E-service (Efile Texas) and/or fax to:

Mr. Daniel R. Dutko
HANSZEN LAPORTE
11767 Katy Freeway, Ste. 850
Houston, Texas 77970
Attorneys for Maverick Aggregates, Inc.

DDutko@hanszenlaporte.com
FAX: 713-524-2580

Mr. Oscar A. Garza
THE LAW FIRM OF OSCAR A. GARZA, LLC
111 Soledad Street, Suite 300
San Antonio, Texas 78205
Attorney for IPE Aggregate, LLC

ogarza@oscargarzalaw.com
FAX: 210-299-7711

Mr. G. Alan Powers
SIMPSON, BOYD & POWERS
P. O. Box 685
1119 Halsell Street
Bridgeport, Texas 76426
Attorneys for Crisp Industries, Inc.

apowers@sbplaw.com
FAX: 940-683-3122

By: _____
Heriberto Morales, Jr.

CAUSE NO. 12-09-27789-MCVAJA

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 365th JUDICIAL DISTRICT |
| | § | |
| IPE AGGREGATE, LLC, | § | |
| METSO MINERALS INDUSTRIES, INC. | § | |
| and CRISP INDUSTRIES, INC., | § | |
| Defendants. | § | MAVERICK COUNTY, TEXAS |

## ORDER GRANTING DEFENDANT METSO MINERALS INDUSTRIES INC.'S MOTION FOR LEAVE TO FILE AMENDED PLEADING

On August _____, 2015, the Court considered the Motion for Leave to File Amended Pleadings. It is the opinion of the court that the Defendant is entitled to amend its pleadings.

**It is therefore ordered, adjudged and decreed** that the Court grants the Motion for Leave to File Amended Pleadings filed by the Defendant, Metso Minerals Industries, Inc. ("Metso").


SIGNED _____, 2015.


_____
Presiding Judge

# Tab 8

Amended Answer of Crisp Industries, Inc.

CAUSE NO. 12-09-27789-MCVAJA

| | | |
|---|---|---|
| MAVERICK AGGREGATES, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | MAVERICK COUNTY, TEXAS |
| | § | |
| IPE AGGREGATE, LLC; | § | |
| METSO MINERALS INDUSTRIES, INC.; | § | |
| and CRISP INDUSTRIES, INC. | § | |
| | § | |
| Defendants | § | 365TH DISTRICT COURT |

## DEFENDANT CRISP INDUSTRIES, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Crisp Industries, Inc. (hereinafter "Crisp Industries), Defendant in the above-styled and referenced suit, and files this its First Amended Answer and Counterclaim, and in support thereof, would show the Court as follows:

### I.

Defendant Crisp Industries, Inc. has filed and has pending an Application to Compel Arbitration. This First Amended Answer and Counterclaim is only being filed to comply with the Fourth Amended Docket Control Ordered entered in the above styled matter and is filed pursuant to the Application to Compel Arbitration. Defendants Crisp Industries is not waiving its right to Arbitration or attempting to substantially invoke the judicial process, but is merely attempting to timely comply with the Docket Control Order in place by this Court.

### II.
### DEFENDANTS' FIRST AMENDED ANSWER

A.   **General Denial**

Defendant Crisp Industries, Inc., as authorized by Rule 92 of the Texas Rules of Civil

---

First Amended Answer and Counterclaim – Page 1

Procedure, herein enters a general denial, denying each and every, all and singular, the allegations contained in Plaintiffs' Second Amended Petition. Defendant demands strict proof thereof by a preponderance of the credible evidence, and demand proof of exemplary damages by clear and convincing evidence.

**B.      Affirmative Defenses**

1.      Defendant pleads further, in the alternative and by way of affirmative defense that in the event Plaintiff compromises or settles or have compromised or settled claims and/or causes of action against any individual or entity arising out of the claims made subject of this matter Defendant reserves the right and options granted to Defendant in accordance with Chapter 33 of the TEX.CIV.PRAC. & REM. CODE.

2.      Defendant pleads further, in the alternative and by way of affirmative defense that Plaintiff's claims are barred in whole or in part for Plaintiff's failure to mitigate damages, if any.

3.      Defendant pleads further, in the alternative and by way of affirmative defense that Plaintiff's damages, if any, are the result of its own acts or omissions.

4.      Defendant pleads further, in the alternative and by way of affirmative defense that if Plaintiff incurred any loss or damages as alleged in Plaintiff's Petition, the same were caused in whole or in part by acts or omissions of anther or others over whom this answering Defendant is not responsible, and over which Defendant exercised no control or authority, were the sole proximate cause or contributing cause of Plaintiff's alleged damages, if any.

5.      Defendant pleads further, in the alternative and by way of affirmative defense that with respect to all claims based upon alleged breach of express or implied warranties, there was no privity between the Plaintiff and this answering Defendant.

6.      Defendant pleads further, in the alternative and by way of affirmative defense that

---

Plaintiff's damages, if any, were caused by the misuse, abuse or inappropriate handling of the product by Plaintiffs or a third party, which was unforeseeable to this answering Defendant, and was the sole intervening cause of the damages alleged by Plaintiff.

7.      Defendant asserts that it intends to rely upon such other defenses as may become available or apparent during discovery proceedings in this case and hereby reserves its right to amend its Answer to plead such defenses.

## II.
## COUNTERCLAIMS

### A.      Discovery Control Plan

As stated above, Defendant Crisp Industries has an Application to Compel Arbitration on file and pending before this Court.  If after a ruling and all appeals the Application to Compel Arbitration is denied then this case should proceed as a Level 3 case pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### B.      Parties

1.      Crisp Industries, Inc. is a Texas corporation with its principle place of business in Bridgeport, Texas.

2.      Maverick Aggregates, Inc. is a Texas corporation with its principal place of business located in Eagle Pass, Texas.  Maverick Aggregates, Inc. has appeared herein through its attorney of record:  Daniel R. Dutko, HANSZWN LAPORTE, 11767 Katy Freeway, Suite 850, Houston, Texas 77079.

3.      IPE Aggregates, L.L.C. is a Texas Limited Liability Company with its principal place of business located in New Braunfels, Texas.  IPE Aggregates, Inc. has appeared herein through its attorney of record:  Oscar A. Garza, THE LAW FIRM OF OSCAR A. GARZA, L.L.C., 111 Soledad Street, San Antonio, Texas  78201.

---

First Amended Answer and Counterclaim – Page 3

4.      Metso Minerals Industries, Inc. is a corporation who has appeared herein through its attorney of record:   Heriberto Morales, Jr., LANGLEY & BANACK, 401 Quarry Street, Eagle Pass, Texas 78852.

**B.      Jurisdiction and Venue**

1.      The Court has subject-matter jurisdiction over this lawsuit because the amount in conversation exceeds the minimum jurisdictional amount of this court.

2.      Venue is proper pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) because all or a substantial part of the events giving rise to the claims occurred in Maverick County.  Venue is also proper because these are counterclaims. TEX. CIV. PRAC. & REM. CODE ANN. § 15.062(a).

**C.      Facts**

1.      Crisp Industries is a distributor for Metso Minerals (USA) Inc.  Crisp Industries purchased a refurbished Metso ST358 Screener from Defendant Metso Minerals (USA) Inc. Crisp Industries then resold the Metso ST385 Screener to Defendant IPE Aggregate, LLC. Crisp Industries did not have any contractual relationship with Plaintiff regarding the sale of the Metso ST358 Screener.  Despite this fact, Plaintiff is asserting claims against Crisp Industries.

2.      Because Crisp Industries is a distributor for Metso Minerals (USA) Inc., Crisp performs work on Metso equipment.  On a number of occasions, Maverick Aggregates, Inc. contacted Crisp Industries to perform work on the Metso ST385 Screener.

3.      In November 2011, Crisp Industries performed work on the Metso ST385 Screener at Maverick Aggregates, Inc.'s request.  The work performed in November 2011 on the Metso ST385 Screener was not work covered by the Metso warranty.  As such, Crisp Industries sent Maverick Aggregates, Inc. an invoice to be paid for the work performed.  As shown in the

itemized and verified account attached hereto and incorporated herein and on the dates evidenced thereby Crisp Industries sold goods to and performed services for Maverick Aggregates, Inc. Maverick Aggregates, Inc. accepted the goods and services provided.

4.      The invoice dated November 15, 2011, in the amount of $15,579.34 was mailed to Maverick Aggregate, Inc. and payment was due on December 15, 2011. The price charged for the work done and goods provided by Crisp Industries were the usual, customary and reasonable prices for the goods and services performed.   Despite the demand for payment to be made, to date, Crisp Industries' invoice in the amount of $15,579.34 has not been paid. As such, Crisp Industries has incurred damages for the nonpayment of its invoices for services and goods rendered.

## D.      Causes of Actions

1.      ***Suit On Sworn Account (Maverick Aggregates, Inc.).:*** In November 2011, Crisp Industries sold goods and furnished services to Maverick Aggregates, Inc. regarding the Metso ST385 Screener  The prices charged for the goods and services rendered were just and true because they were the usual, customary and reasonable prices for the goods and services provided. Attached hereto as Exhibit A and incorporated herein is a systematic record of the transaction for the services and goods rendered for the Metso ST385 Screener. All lawful offsets, payments and credits, if any, have been applied to Maverick Aggregates, Inc. account. To date, the invoice in the amount of $15,579.34 that was due on December 15, 2011 remains unpaid. As such, Crisp Industries is entitled to damages for its actual liquidated damages. In addition, Crisp Industries is entitled to reasonable and necessary attorney fees. TEX.CIV.PRAC. & REM.CODE §38.001.

---

**First Amended Answer and Counterclaim – Page 5**

2. ***Breach of Contract (Maverick Aggregates, Inc.):*** In the alternative, Maverick Aggregate, Inc. breached its agreement to pay for services and goods provided by Crisp Industries. As set forth above, Maverick Aggregates, Inc. breached its contract by failing to pay the invoice for the services and goods provided by Crisp Industries in the amount of $15,579.34. The breach of contract by Maverick Aggregates, Inc. caused legal injury damages to Crisp Industries. The damages sustained by Crisp Industries are general and specific, as well as direct and consequential. Crisp Industries damages including, but are not limited to, benefit of the bargain damages, out-of-pocket damages, reliance damages, and consequential damages. In addition, Crisp Industries is entitled to reasonable and necessary attorney fees. TEX.CIV.PRAC. & REM.CODE §38.001.

3. ***Quantum Meruit (Maverick Aggregates, Inc.):*** In the alternative, Crisp Industries provided valuable services or materials for the benefit of Maverick Aggregates, Inc., including but not limited to the work performed on or about November 15, 2011 on the Metso ST385 Screener. Maverick Aggregates, Inc. accepted and benefited from those services and materials. Maverick Aggregates, Inc. had reasonable notice that Crisp Industries anticipated compensation for such services and materials as recognized by Carlos Gonzalez signed acceptance of the services and goods on behalf of Maverick Aggregates, Inc. on November 11, 2011. As such, Maverick Aggregates, Inc. caused injuries to Crisp Industries. Crisp Industries are entitled to actual damages. In addition, Crisp Industries is entitled to reasonable and necessary attorney fees. TEX.CIV.PRAC. & REM.CODE §38.001.

4. ***Promissory Estoppel (Maverick Aggregates, Inc.):*** In the alternative, Maverick Aggregates, Inc. made one or more promises, including but not limited to promising Crisp Industries payment for the services and goods provided to Maverick Aggregates, Inc. for work

done on the Metso ST385 Screener. Crisp Industries reasonably and substantially relied on this promise to their detriment by providing their time and services in working on the Metso ST385 Screener. Crisp Industries reliance was foreseeable to Maverick Aggregates, Inc. and law and equity requires that Maverick Aggregates, Inc.'s promise be enforced. Crisp Industries is entitled reliance damages where it is entitled to be compensated for the time, effort and expense of the work done on the Metso ST385 Screener. In addition, Crisp Industries is entitled to reasonable and necessary attorney fees. TEX.CIV.PRAC. & REM.CODE §38.001.

WHEREFORE, PREMISES CONSIDERED, Crisp Industries, Inc. prays (1) that all relief prayed for by Maverick Aggregates be denied; (2) judgment be entered in Defendant Crisp Industries, Inc.; (3) that Crisp Industries, Inc. recover damages; (4) court costs; (5) reasonable attorney fees; (6) pre-judgment and post-judgment interest as provided by law; (7) for such other and further relief to which it may be justly entitled; and (8) that Maverick Aggregates take nothing.

BY: /s/ G. Alan Powers

SIMPSON, BOYD, POWERS & WILLIAMSON
Michael A. Simpson
Texas State Bar No. 18403650
G. Alan Powers
State Bar No. 24005089
P.O. Box 685
1119 Halsell Street
Bridgeport, Texas 76426
Telephone No. (940) 683-4098
Facsimile No. (940) 683-3122
ATTORNEYS FOR CRISP INDUSTRIES, INC.

First Amended Answer and Counterclaim – Page 7

Electronically Filed at
8/12/2015 4:15:10 PM
Leopoldo Vielma, District Clerk
Maverick County, Texas
By: M Cazares, Deputy

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of the forgoing document was served on Defendants via Fax and/or Certified Mail on this the 12th day of August, 2015.

# Tab 9

Amended Rule 11 Agreement

# SIMPSON BOYD POWERS & WILLIAMSON

## Attorneys at Law

1119 HALSELL STREET
P.O. BOX 685
BRIDGEPORT, TEXAS 76426
TEL. 940-683-4098 FAX 940-683-3122
Writer's Address

105 NORTH STATE STREET, SUITE B
P.O. BOX 957
DECATUR, TEXAS 76234
TEL. 940-627-8308
FAX 940-627-8092

\*† Michael A. Simpson
Ross M. Simpson
\*\* Derrick S. Boyd
G. Alan Powers
\*\*\* Allen L. Williamson
Kristy Pesnell Campbell
Matthew W. Meyer

\* Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization
† Board Certified - Civil Trial Specialist
National Board of Trial Advocacy
\*\* Board Certified - Civil Trial
Texas Board of Legal Specialization
\*\*\* Board Certified - Criminal Law
Texas Board of Legal Specialization

August 26, 2015

**Via Email**
Daniel R. Dutko
HANSZEN LAPORTE
11767 Katy Freeway, Suite 850
Houston, TX 77079

**Via Email**
Heriberto Morales, Jr.
LANGLEY & BANACK
401 Quarry Street
Eagle Pass, Texas 78852

**Via Email**
Oscar A. Garza
THE LAW FIRM OF OSCAR A. GARZA, L.L.C.
111 Soledad Street, 300
San Antonio, Texas 78201

Re:     Cause No. 12-09-27789; *Maverick Aggregates, Inc. v. IPE Aggregate, LLC, et al.*

Dear Counsel:

This letter will confirm our agreement that the parties agree to suspend the upcoming deadlines in the current amended docket control order until after a ruling on the accelerated interlocutory appeal that will be filed regarding the Order on Metso Mineral Industries, Inc.'s Application to Compel Arbitration. After a final decision has been issued on appeal, the parties will enter into another amended Docket Control Order.

By signing the space provided below, each party certifies that this agreement is made in accordance with Rule 11 of the Texas Rules of Civil Procedure and shall be filed of record with the court. Each party further agrees that the signature affixed to this agreement and returned to my office by facsimile shall be the same as an original signature. The defendants signing this

Rule 11 agreement are expressly not waiving any of their rights to have this entire matter submitted to arbitration and are not hereby substantially invoking the judicial process.

Thank you for your attention to this matter.

SIMPSON BOYD POWERS & WILLIAMSON,

G. Alan Powers

---

Daniel Dutko
**Attorney for Plaintiff**

Heriberto Morales, Jr.
Eric. W. Matzke
**Attorneys for Defendant Metso
Mineral Industries, Inc.**

---

Oscar A. Garza
**Attorney for Defendant IPE
Aggregate, LLC**

Rule 11 agreement are expressly not waiving any of their rights to have this entire matter submitted to arbitration and are not hereby substantially invoking the judicial process.

Thank you for your attention to this matter.

SIMPSON BOYD POWERS & WILLIAMSON,

G. Alan Powers

Daniel Dutko
**Attorney for Plaintiff**

Heriberto Morales, Jr.
Eric. W. Matzke
**Attorneys for Defendant Metso**
**Mineral Industries, Inc.**

Oscar A. Garza
**Attorney for Defendant IPE**
**Aggregate, LLC**

# Tab 10

August 2015 emails between Plaintiff's counsel and Metso's counsel

| From: | Daniel Dutko |
|---|---|
| To: | Paula Boston |
| Cc: | Eddie Morales; Eric W. Matzke; Norma Moreno; Oscar Garza; Alan Powers |
| Subject: | RE: Mav v Metso: Conferring on possible Motion for Temporary Orders (to stay trial court proceedings while interlocutory appeal is decided) |
| Date: | Friday, August 21, 2015 8:37:39 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |

I have no objection to suspending the deadlines (expert designations, discovery deadline, etc.) while the interlocutory appeal is being considered. When the appeal is decided we can enter into a new DCO with new deadlines if that is what everyone wants. However, there is no reason to stay the entire case while the Court of Appeals decides whether the case against one of the parties should be sent to arbitration. We need to take depositions and resolve several discovery disputes. This can all be accomplished while the appeal is being heard.

Daniel

**From:** Paula Boston [mailto:pboston@langleybanack.com]
**Sent:** Thursday, August 20, 2015 6:25 PM
**To:** Daniel Dutko
**Cc:** Eddie Morales; Eric W. Matzke; Norma Moreno; Oscar Garza; Alan Powers
**Subject:** RE: Mav v Metso: Conferring on possible Motion for Temporary Orders (to stay trial court proceedings while interlocutory appeal is decided)

Hi Daniel,

Could you please clarify what you mean by agreeing to move current deadlines as requested by Crisp? The last draft of the Rule 11 you were in agreement with stated: "[t]his letter will confirm our agreement that the parties agree to suspend the deadlines in the current amended docket control order until after a ruling on the mandamus that will be filed regarding the Order on the Motion to Compel Arbitration." But, now it appears that you're opposed to staying the underlying case during an accelerated appeal. Perhaps I've missed an email or conversation with additional details?

Many thanks,
Paula

Paula Boston
pboston@langleybanack.com

*click to visit LangleyBanack.com*



LANGLEY & BANACK, INCORPORATED
**Attorneys and Counselors at Law**
745 EAST MULBERRY, STE 900    SAN ANTONIO, TEXAS 78212
TEL 210.736.6600    FAX 210.735.6889

This email may contain confidential and privileged material for the sole use of the intended recipient; any other use is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

**IRS Circular 230 Disclosure:** Effective June 21, 2005, IRS guidance requires written tax advice intended for reliance to avoid IRS penalties include detailed recitals and exhaustive analysis of relevant facts, assumptions and Federal tax issues. To ensure compliance with the IRS requirements, we inform you that any U.S. federal tax advice in this document is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter that is contained in this document.

MERITAS LAW FIRMS WORLDWIDE

**From:** Daniel Dutko [mailto:DDutko@hanszenlaporte.com]
**Sent:** Thursday, August 20, 2015 5:42 PM

**To:** Paula Boston
**Cc:** Eddie Morales; Eric W. Matzke; Norma Moreno; Oscar Garza; Alan Powers
**Subject:** Re: Mav v Metso: Conferring on possible Motion for Temporary Orders (to stay trial court proceedings while interlocutory appeal is decided)

Paula,

Unfortunately after talking to my client we are opposed to staying the underlying case during the Interlocutory appeal. However, we will agree to move current deadlines as requested by Crisp.

Daniel

Sent from my iPhone

On Aug 20, 2015, at 12:25 PM, Paula Boston <pboston@langleybanack.com> wrote:

> Good afternoon, Daniel:
>
> When we last spoke, you mentioned that Maverick Aggregates would not likely be opposed to a motion staying the underlying trial court proceedings during this appeal. Oscar and Alan have responded to my email, below, that they are unopposed . . . but we haven't heard back from Maverick. To avoid any last-minute filing issues, I will assume that there remains no opposition from Maverick Aggregates to our requesting that the appellate court stay the trial court proceedings pending the 4th Court's determination, unless I hear otherwise from you before noon tomorrow. If you have any questions, as always, I am available to confer via phone: 210-736-6600 (ext. 168).
>
> All the best,
> Paula
>
> Paula Boston
> pboston@langleybanack.com



LANGLEY & BANACK, INCORPORATED
Attorneys and Counselors at Law
745 EAST MULBERRY, STE 900    SAN ANTONIO, TEXAS 78212
TEL 210.736.6600    FAX 210.735.6889

click to visit LangleyBanack.com

<image002.png>

MERITAS LAW FIRMS WORLDWIDE

**From:** Paula Boston
**Sent:** Tuesday, August 18, 2015 4:55 PM
**To:** Daniel Dutko; Oscar Garza; Alan Powers
**Cc:** Eddie Morales; Eric W. Matzke; Norma Moreno
**Subject:** Mav v Metso: Conferring on possible Motion for Temporary Orders (to stay trial court proceedings while interlocutory appeal is decided)

Hi Alan, Daniel, and Oscar,

If we receive the trial court's signed order shortly, we may well request temporary orders from the appellate court to stay the trial court proceedings. Is there any objection to our requesting that the 4th Court of Appeals stay all trial court proceedings in this matter pending the 4th Court's determination on our (soon-to-be-perfected) accelerated interlocutory appeal?

Many thanks,
Paula

Paula Boston
pboston@langleybanack.com

click to visit LangleyBanack.com

LANGLEY & BANACK, INCORPORATED
**Attorneys and Counselors at Law**
745 EAST MULBERRY, STE 900     SAN ANTONIO, TEXAS 78212
TEL 210.736.6600     FAX 210.735.6889

MERITAS LAW FIRMS WORLDWIDE



# Tab 11

Plaintiff's Response and Objections to Application to Compel
Arbitration of Metso Minerals Industries, Inc.

| MAVERICK AGGREGATES, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | MAVERICK COUNTY |
| | § | |
| IPE AGGREGATE, LLC; and METSO | § | |
| MINERALS INDUSTRIES, INC. | § | 365TH JUDICIAL DISTRICT |

## PLAINTIFF'S RESPONSE AND OBJECTIONS TO APPLICATION TO COMPEL ARBITRATION OF METSO MINERALS INDUSTRIES, INC.

COMES NOW, Maverick Aggregates, Inc. ("Plaintiff") and files this Plaintiff's Response and Objections to Application to Compel Arbitration of Metso Minerals Industries, Inc., ("Metso") and in support thereof would show unto this Honorable Court the following:

## 1.   REQUEST FOR ADDITIONAL TIME TO SUPPLEMENT RESPONSE

Plaintiff respectfully requests additional time to respond to this Application to Compel Arbitration. Current Plaintiff's counsel recently substituted into the case and needs time to familiarize with the documents and the facts.

More importantly, the depositions of the representative of IPE Aggregate LLC ("IPE") may have a direct impact on the alleged arbitration provision. As such, Metso's Application should not be considered until the deposition of IPE's representative can be taken.

## 2.   METSO'S APPLICATION IS EXTREMELY UNTIMELY AND SHOULD BE DENIED

Under Texas law, the right to a jury trial is so strongly favored that the right to a jury trial should not be not be interfered with lightly.[1]

---

[1] *See In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 132 33 (Tex.2004).

There is a presumption against the waiver of the constitutional right to a jury trial.[2] The existence of the basic fact of a contractual jury trial waiver gives rise to a presumed fact that the waiver was not knowingly and voluntarily made until the presumed fact is rebutted, and the burden is on the party seeking to enforce the prelitigation contractual jury waiver to rebut the presumption with evidence that the waiver was knowingly and voluntarily made with full awareness of the legal consequences. *Id.*

A. Metso's Reliance on Jury Waiver is Untimely

Because the right to a jury trial is so strongly favored, to enforce a contractual jury waiver the party asserting the waiver must act with diligence in asserting its rights. *See Rivercenter Associates v. Rivera*, 858 S.W.2d 366 (Tex. 1993); *see also Rogers v. Ricane Enters.*, 772 S.W.2d 76, 80 (Tex.1989). The failure to act with diligence results in a waiver of the right to enforce a contractual jury waiver.[3]

In *Rivercenter Associates v. Rivera*, Rivercenter brought suit against All Ashore, Inc. and Les Robbins to recover rental payments after All Ashore's alleged default on its lease of store space in the Rivercenter shopping mall.[4] Defendants filed a jury demand and paid the filing fee on March 17, 1992. On July 14, 1992, Rivercenter filed a motion to set a date for trial on the jury docket. Two weeks later, Rivercenter filed a motion to quash the jury demand based on jury waiver provisions in its contracts with All Ashore and Robbins. The trial court overruled this motion and assigned the case to the jury docket.[5]

The Texas Supreme Court denied mandamus because Rivercenter did not move to quash

---

[2] *Mikey's Houses LLC v. Bank of America, N.A.*, 232 S.W.3d 145 (Tex. App. Fort Worth 2007, no pet.).
[3] *Id*.
[4] *See Rivercenter Associates v. Rivera*, 858 S.W.2d 366 (Tex. 1993).
[5] *Id*.

2

a jury demand that conflicted with a jury waiver until four months after receiving notice of the jury demand. The court reasoned that "those who slumber on their rights" are not entitled to the rights.[6]

The Texas Supreme Court held:

> Rivercenter waited over four months after the filing of the Defendants' jury demand before asserting any rights it may have had under the jury waiver provisions. The record reveals no justification for this delay. Under these circumstances, Rivercenter has not shown diligent pursuit of any right to a non-jury trial. *See Bailey v. Baker*, 696 S.W.2d 255, 256 (Tex.App.-Houston [14th Dist.] 1985, orig. proceeding). . . Accordingly, the petition is denied.[7]

In this case, Plaintiff filed its Petition on September 4, 2012 and Metso filed its Original Answer on September 28, 2012. Metso filed its Application to Compel Arbitration on February 5, <u>2015</u>, more than two years after Metso made an appearance.

According to the Texas Supreme Court, waiting four months would be a lack of due diligence.[8] In this case, Plaintiff waited more than two years to assert their rights under the alleged arbitration provisions. Therefore, Metso failed to act with the diligence necessary to assert its rights and its Application should be denied as a matter of law.

3. <u>METSO FAILED TO MEET ITS INITIAL BURDEN OF PROOF</u>

There is a presumption against the waiver of the constitutional right to a jury trial.[9] The existence of the basic fact of a contractual jury trial waiver gives rise to a presumed fact that the waiver was not knowingly and voluntarily made until the presumed fact is rebutted, and the burden is on the party seeking to enforce the prelitigation contractual jury waiver to rebut the

---

[6] *See Rivercenter Associates v. Rivera* 858 S.W.2d 366 (Tex. 1993).
[7] *Id*.
[8] *See Rivercenter Associates v. Rivera* 858 S.W.2d 366 (Tex. 1993).
[9] *Mikey's Houses LLC v. Bank of America, N.A.*, 232 S.W.3d 145 (Tex. App. Fort Worth 2007, no pet.); I*n re Wells Fargo Bank Minnesota N.A.*, 115 S.W.3d 600 (Tex. App. Houston 14th Dist. 2003).

presumption with evidence that the waiver was knowingly and voluntarily made with full awareness of the legal consequences.[10] The party seeking to enforce a contractual jury waiver must rebut the presumption against the waiver by bringing forward prima facie evidence that the jury waiver was knowingly and voluntarily made.[11]

The party seeking to enforce a contractual jury waiver should present evidence of the following factors:

- The parties' experience in negotiating the particular type of contract signed;

- Whether the parties were represented by counsel;

- Whether the waiving party's counsel had an opportunity to examine the agreement;

- The parties' negotiations concerning the entire agreement;

- The parties' negotiations concerning the waiver provision, if any;

- The conspicuousness of the provision; and

- The relative bargaining power of the parties.[12]

Defendant, in its three page Motion, presented no evidence to prove its burden. Before this Court takes away the Constitutional and fundamental right to a jury trial, Defendant must present prima facie evidence that the jury waiver was knowingly and voluntarily made. Defendant failed to present any evidence in this case to rebut the presumption against the waiver of the constitutional right to a jury trial.

---

[10] *Id.*
[11] *Id.*
[12] *See Mikey's Houses LLC v. Bank of America*, N.A., 232 S.W.3d 145 (Tex. App. Fort Worth 2007, no pet.); *In re Wells Fargo Bank Minnesota N.A.*, 115 S.W.3d 600 (Tex. App. Houston 14th Dist. 2003).

Therefore, this Court should deny Defendant's Motion as a matter of law.[13]

Assuming arguendo that this Court entertains Metso's Application, Plaintiff responds as follows:

## 4. FACTUAL BACKGROUND

Plaintiff has initiated litigation in this Court against Defendants for misrepresentations made by Defendants in conjunction with the sale and purchase of a Metso ST358 screener to Plaintiff. Plaintiff is seeking damages and relief pursuant to the Texas Deceptive Trade Practices—Consumer Protection Act as well as other relief pursuant to Texas law. Metso seeks through its Application to Compel Arbitration to force an arbitration proceeding upon Plaintiff based upon its allegation that Plaintiff's claims in this suit are subject to an arbitration agreement.

## 5. LEGAL BURDENS AND STANDARDS

### A. Defendant must first establish the existence of an enforceable contract to arbitrate the claims at issue in this suit

The first inquiry this Court must undertake is to determine whether Metso has established, under the laws of the State of Texas[14], (1) "that a valid arbitration agreement exists"[15] and also (2) "whether the dispute in question falls within the scope of that arbitration"[16] agreement. "Arbitration is a matter of contract and a party cannot be required to

---

[13] *See Mikey's Houses LLC v. Bank of America, N.A.*, 232 S.W.3d 145 (Tex. App. Fort Worth 2007, no pet.); *In re Wells Fargo Bank Minnesota N.A.,* 115 S.W.3d 600 (Tex. App. Houston 14th Dist. 2003).

[14] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. Miss. 2004); *Jones v. Defendant Co.*, 2008 U.S. Dist. LEXIS 38099, 8-9 (S.D. Tex. May 9, 2008).

[15] *In re Igloo Prods. Corp.*, 238 S.W.3d 574, 577 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (Citations Omitted) see also Tex. Civ. Prac. & Rem. Code §171.021.

[16] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005).

submit to arbitration any dispute which he has not agreed so to submit."[17] "Arbitration may be ordered only for a dispute that the parties have agreed to arbitrate."[18] "When [the courts] are called upon to decide whether the parties have agreed to arbitrate, [they] do not resolve doubts or indulge a presumption in favor of arbitration."[19]

"Under standard contract principles, the presence or absence of signatures on a written contract is relevant to determining whether the contract is binding on the parties."[20] In the absence of a signature, other evidence must be relied upon to prove the party's *unconditional assent*.[21]

Similarly, an agreement to arbitrate is valid under the Federal Arbitration Act ("FAA") if it meets the requirements of the general contract law of the applicable state. In determining the validity of an agreement to arbitrate under the FAA, <u>courts must first apply state law governing contract formation.</u>[22] Section 4 of the FAA requires a court to order a party to arbitration only upon a showing that an agreement to arbitrate the claims at issue exists.[23] Therefore, "a state court must initially determine—through the neutral application of its own contract law—whether an enforceable agreement exists in the first instance, and whether 'generally applicable contract defenses . . . may be applied to invalidate arbitration agreements without contravening' the policies of the FAA.'"[24] In other words, the FAA has not been read so broadly as to mandate

---

[17] *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643 (1986). See also *Rice Co. v. Precious Flowers Limited*, 523 F.3d 528 (5th Cir. 2008); *Baton Rouge Oil & Chem. Workers Union v. Exxonmobil Corp.*, 289 F.3d 373 (5th Cir. 2002).

[18] *Baton Rouge Oil & Chem. Workers Union v. Exxonmobil Corp.*, 289 F.3d 373 (5th Cir. 2002).

[19] *In re: Bunzl USA Inc.*, 155 S.W.3d 202, 208 (Tex.App.—El Paso, 2004).

[20] *Id.* at 209.

[21] *Id.* (emphasis added).

[22] *In re Poly-America, L.P.*, 2008 Tex. Lexis 770 at *3 (Tex. 2008) (citing *In re Advance PCS Health L.P.*, 172 S.W.3d 603, 606 (Tex 2005) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct.1920, 131 L.Ed.2d 985 (1995))) (emphasis added).

[23] 9 U.S.C. § 4.

[24] *In re Poly-America, L.P.*, 2008 Tex. Lexis 770 at *4 (Tex. 2008) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (emphasis added).

preemption of all state public-policy grounds for finding an arbitration agreement unenforceable.

When both the FAA and Texas state law are applicable to an arbitration agreement, the Fifth Circuit has clarified the interplay between the two bodies of law by holding that "the FAA and Texas law, including [Texas'] arbitration law, apply concurrently because Texas law incorporates the FAA as part of the substantive law of that state."[25]

If Metso establishes the existence of a valid arbitration agreement between it and Plaintiff, and that both the claims and issues in this case fall within the terms of that agreement, then "the burden shifts to the party opposing arbitration to present a valid defense to the agreement,"[26] as adjudged under the laws of this state.

### B.    Unless the Application is denied, an evidentiary hearing is required when material facts are in dispute

11.    The Court's standard for consideration of an application to compel arbitration, under Texas law, is the same as that for consideration of a motion for summary judgment.[27] "Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."[28]  "When reviewing a summary judgment, we take as true all

---

[25] *Jones v. Defendant Co.*, 2008 U.S. Dist. LEXIS 38099, 23 (S.D. Tex. May 9, 2008) (citing *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004) (*citing Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel*, 343 F.3d 355, 361 (5th Cir. 2003); *L & L Kempwood Associates v. Omega Builders, Inc.*, 9 S.W.3d 125, 127-28 & n. 15 (Tex. 1999)).

[26] *In re Igloo Prods. Corp.* at 577.

[27] *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266 (Tex. 1992).

[28] *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150 (Tex. 2004).  See also *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211 (Tex. 2002); *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985); *Nichols v. Tanglewood Manor Apts.*, 2006 Tex. App. LEXIS 975 (Tex. App. Houston 14th Dist. Feb. 7, 2006).

evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor."[29]

In a case of first impression on the issue in Texas, the Court in *Jack B. Anglin Co, Inc.* sets out the following reasoning for the standard:

> Summary disposition of contested issues is the exception under our rules of civil procedure. Ordinarily, contested issues are decided after a plenary hearing, that is, a hearing at which witnesses present sworn testimony in person or by deposition rather than by affidavit. For example, our rules permit trial courts to render final judgments in civil cases on motions for summary judgment. A trial court may render a summary judgment based on a record consisting of deposition transcripts, interrogatory answers, and other discovery responses, along with pleadings, admissions, affidavits, stipulations, and authenticated or certified public records . . . . Our rules also prescribe summary determination of motions to transfer venue, objections to discovery requests, and special appearances contesting jurisdiction. These matters are likewise determinable on the basis of affidavits, pleadings, the results of discovery, and the stipulations of the parties. TEX. R. CIV. P. 87, 88 (venue); TEX. R. CIV. P. 166b(4) (objections to discovery); TEX. R. CIV. P. 120a(3) (special appearance).[30]

The Court in *Jack B. Anglin Co, Inc.* then held that "[w]ith these considerations in mind, a trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, *the trial court must conduct an evidentiary hearing to determine the disputed material facts*."[31]

Appellate Courts have explained the procedure to compel arbitration as follows:

> The party alleging an arbitration agreement must present complete summary proof of his 'case in chief' that an agreement to arbitrate requires arbitration of the issues in dispute. If that summary proof intrinsically raises issues about the procedural enforceability of the agreement, the movant's summary proof should include any evidence that resolves those issues without creating an issue of

---

[29] *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150 (Tex. 2004). See also *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211 (Tex. 2002); *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985); *Nichols v. Tanglewood Manor Apts.*, 2006 Tex. App. LEXIS 975 (Tex. App. Houston 14th Dist. Feb. 7, 2006).
[30] *Jack B. Anglin Co.* at 269 (Citations Omitted).
[31] *Id.* (Emphasis Added).

material fact. Naturally, the non-movant, to resist summary arbitration, needs only to raise an issue of material fact about a necessary element of its opponent's 'case in chief' or present some evidence supporting every element of a defensive claim that there is no enforceable agreement to arbitrate.[32]

Similarly, the FAA also provides a procedure for obtaining an evidentiary hearing, prior to deciding a motion to compel arbitration, if the "making of the arbitration agreement or the failure, neglect, refusal to perform the same be in issue."[33] Section 4 of the FAA further provides that the party alleged to be in default may request a jury at the trial thereof, and such shall be provided upon proper request. The hearing shall be held in accordance with the Federal Rules of Civil Procedure.[34] If the jury, or the court if no jury is requested, "finds that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding [on the motion to compel] shall be dismissed."[35]

## 6. ARGUMENTS

A. **The Application to Compel Should Properly Be Denied Because Defendant Has Failed to Show the Existence of a Valid and Enforceable Arbitration Agreement with Plaintiff**

Metso has the burden to prove with sufficient evidence that a valid and enforceable arbitration agreement exists between the parties which encompasses and governs the disputes and issues forming the basis for this suit. Defendant's Application fails in this respect because Defendant has failed to show that there was ever an agreement between it and Plaintiff to *arbitrate*—that is, to submit a dispute to arbitration.

*i. Defendant has failed to proffer any valid and enforceable arbitration agreement between Plaintiff and Defendant*

---

[32] *In re: Bunzl USA Inc.*, 155 S.W.3d 202, 208 (Tex.App.—El Paso, 2004) (citing *In re Jebia*, 26 S.W.3d 753 (Tex.App.—Houston [14th Dist.] 2000, orig. proceeding)).
[33] 9 U.S.C. § 4
[34] *Id.*
[35] *Id.*

9

Subject to the objections to the documentary evidence below, and without waiving same, Defendant has not offered any admissible evidence of a valid and enforceable arbitration agreement between Plaintiff and Defendant that encompasses the claims at issue in this case.

Plaintiff cannot be held to an agreement that Defendant cannot show was ever entered into by Plaintiff. Basic contract law mandates an offer and meeting of the minds to form a contract. There was no meeting of the minds between Plaintiff and Defendant with respect to any agreement to arbitrate. In fact, there was not even a discussion or negotiation whatsoever regarding the arbitration clause. Further, no consideration was given to support the alleged arbitration agreement. Simply, Defendant has failed to proffer any arbitration agreement that satisfies the requirements of basic contract law. In fact, in its own application to compel arbitration, Defendant states that "Metso did not have any contractual relationship with Plaintiff with regard to the sale of this Screener."[36] Clearly, Defendant has wholly failed to show, as a matter of law, that Plaintiff intended to assent to the instrument containing the arbitration clause. Moreover, Plaintiff cannot be held to an agreement that cannot be read and is illegible and indecipherable. As Defendant has wholly failed to carry its evidentiary burden in this case and proffer any enforceable and valid arbitration agreement between Plaintiff and Defendant, Defendant's Application must be denied.

---

[36] See Application to Compel Arbitration of Metso Minerals Industries, Inc., Page 2, Paragraph 2, attached hereto as Exhibit A and incorporated by reference for all purposes.

## ii. Objections to Exhibits proffered by Defendant in its Application

Defendant's Application further fails, based upon the following objections, because the evidence it is seeking to submit and rely upon in its Application is inadmissible as a matter of law.

Plaintiff objects to the admissibility of Exhibit A, B, and C to Defendant's Application in that Defendant fails to provide the requisite evidentiary predicate and testimony required by Texas Rules of Evidence 803(6), 803(7), and 902(10), and fails to provide testimony, from a person with knowledge, that the alleged records:

- were made at or near the time the matter recorded occurred;[37]
- were made either by a person with knowledge of the matter recorded or from information transmitted by a person with knowledge of the matter recorded;[38]
- were kept in the course of a regularly conducted business activity; and
- it was the regular practice of Defendant to make the records.[39]

Pursuant to Texas Rule of Evidence 1002, Plaintiff further objects that Exhibits A, B, and C to Defendant's Application are not the best evidence of the contents of the documents Defendant is attempting to proffer in this case. Additionally, Exhibits A and B to Defendant's Application are illegible. The terms of the alleged agreement cannot be read or determined, and are thus unenforceable.[40]

As such, the inadmissible evidence contained in Defendant's Application must be stricken. The evidentiary failures and lack of proper authentication of the proffered documents cause Defendant to fail in its burden to establish that a valid arbitration agreement exists between Plaintiff and Defendant, and the Application should therefore be denied.

---

[37] *GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 257 (Tex.App.—Houston [1st Dist.] 1991, writ denied).
[38] *Sholdra v. Bluebonnet Sav. Bank*, 858 S.W.2d 533, 535 (Tex.App.—Ft. Worth 1993, writ denied); *Woodard v. State*, 696 S.W.2d 622, 628 (Tex.App.—Dallas 1985, no writ).
[39] *Texas Employer's Ins. Ass'n v. Sauceda*, 636 S.W.2d 494, 499 (Civ.App.—San Antonio 1982, no writ).
[40] Attached hereto as Exhibit "B" is a true and correct copy of Exhibits A and B to Defendant's Application received by Plaintiff.

### *iii. Demand for evidentiary hearing, discovery, and jury trial of arbitrability*

Alternatively, by way of alternative pleading and without waiving the foregoing, if the Court is not inclined to strike the inadmissible evidence contained in Defendant's Application, and deny the Application, Plaintiff requests the Court schedule a formal evidentiary hearing of all contested and disputed fact issues in this matter. Plaintiff requests such hearing be scheduled with sufficient time to allow Plaintiff to conduct written and deposition discovery of witnesses relevant to these issues, including but not limited to all electronic versions of documents at issue in this case, and all individuals identified as authors of any and all documents Defendant seeks to admit into evidence in this case, together with sufficient time in that discovery period for the forensic analysis of all documents, necessary computers, hard drives, backup tapes, and metadata of/from such documents and items. Plaintiff further requests this Court issue an Order allowing Plaintiff to conduct electronic discovery with regard to the relevant documents to Defendant's Application, permitting the necessary time frame for Plaintiff to conduct forensic computer analysis prior to the evidentiary hearing in this case. Plaintiff further demands a jury trial of this hearing, pursuant to 9 U.S.C. §4.

B.    **The Application to Compel Should Be Denied Because The Scope of the Arbitration Agreement Sought to be Enforced Does Not Encompass Plaintiff's Claims in this Cause**

The alleged agreement proffered by Defendant in this case is illegible, and its terms and provisions cannot be read and analyzed. Plaintiff objects to Exhibit A to Defendant's Application, as such is not legible and thus cannot form the basis for the relief sought by Defendant. In the event this Honorable Court finds that Defendant has proffered a valid and legally enforceable arbitration agreement against Plaintiff in this case, by way of alternative pleading and without waiving the foregoing, the arbitration agreement proffered by Defendant in its Application does not encompass the claims at issue in this case. Indeed, to the extent any

12

valid and enforceable arbitration agreement has been proffered by Defendant, such agreement is believed to be very narrow and limited in scope.

The mere existence of an arbitration agreement does not mandate that all claims and causes of action between the parties be referred to arbitration. Indeed, "Courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract."[41] "Even broad clauses have their limits."[42] Plaintiff's claims in this case pertain to a failure by Defendant to disclose extensive and significant repairs made to the screener and misrepresentations about the screener. The arbitration agreement proffered by Defendant is not believed to be broad enough to encompass these claims.

C.     The Application to Compel Should Properly Be Denied Because the Arbitration Agreement Sought to be Imposed Upon Plaintiff is Unconscionable

Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself.[43] Courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision.[44] Substantive unconscionability is intended to reach oppression and unfair surprise, not adjust the bargaining power between the parties.[45]

The arbitration agreement Defendant seeks to impose upon Plaintiff is substantively and procedurally unconscionable because it is illegible, has not been shown to be binding upon or

---

[41] *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).
[42] *Pennzoil* at 1067 n. 8.
[43] *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002).
[44] *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002).
[45] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (quoting Tex. Bus. & Com. Code §2.302 cmt.1).

agreed upon by Plaintiff, and deprives Plaintiff of substantive and statutory rights and remedies.[46]

Additionally, if this case is stayed and referred to arbitration as sought by Defendant, Plaintiff will most likely be required to incur and pay unreasonable and exorbitant initial filing fees, case service fees, fees to the arbitrator(s) in this case, and other costs associated therewith. Such costs would deny Plaintiff a forum in which to have this case heard, as such costs and expenses would be prohibitive to Plaintiff. Defendant would thereby deny justice to Plaintiff by forcing Plaintiff into arbitration.

Further, Plaintiff is unfairly surprised by Defendant's attempt to refer this case to arbitration, as Plaintiff has no knowledge or recollection of seeing, signing, or agreeing to the arbitration agreement. The arbitration agreement Defendant seeks to impose upon Plaintiff is unconscionable, and Defendant's Application must therefore be denied.

## 7. CONCLUSION

Defendant has failed to proffer any enforceable arbitration agreement between it and Plaintiff which governs the claims and issues in this case. Further, Exhibit A to Defendant's Application is illegible and cannot be imposed upon Plaintiff. Plaintiff disputes the facts and assertions in Defendant's Application, denies that it executed or assented to any alleged arbitration agreement Defendant seeks to impose upon Plaintiff in this case (and requests and evidentiary hearing in this regard), and denies that the claims and issues in this case are governed by any alleged arbitration agreement. Any such agreement would be unconscionable and void under Texas law. In the event the Court finds an enforceable arbitration agreement exists between Plaintiff and Defendant, Plaintiff demands a jury trial of all disputed fact issues and the arbitrability of this case pursuant to 9 U.S.C. §4.

---

[46] See Defendant Metso Minerals, Inc.'s Original Answer.

14

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Honorable Court deny Defendant's Application to Compel Arbitration.  Alternatively, Plaintiff prays that this Honorable Court grant Plaintiff an evidentiary hearing and jury trial of all disputed facts in the Application, and allow Plaintiff time to conduct written and deposition discovery as pled for herein, and that this Court grant Plaintiff the right to conduct e-discovery upon Defendant, securing computer forensic discovery as pled for herein.  Plaintiff prays for all relief to which it may show itself justly entitled, whether at law or in equity.

Respectfully submitted,

/s/ Daniel R. Dutko
DANIEL R. DUTKO
State Bar No. 24054206
HANSZEN LAPORTE
11767 Katy Freeway, Suite 850
Houston, Texas 77079
Telephone: (713) 522-9444
Facsimile: (713) 524-2850

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2015, a true and correct copy of the Plaintiff's Response and Objections to Application to Compel Arbitration of Metso Minerals Industries, Inc. has been served to all counsel of record as indicated:

| | |
|---|---|
| Mr. Heriberto Morales, Jr. | **VIA FACSIMILE (830) 757-4045** |
| Langley & Banack, Inc. | *and/or E-service: Efile Texas* |
| 401 Quarry Street | |
| Eagle Pass, Texas 78852 | |
| | |
| Mr. Eric Matzke | **VIA FACSIMILE (414) 978-8906** |
| Quarles & Brady | *and/or E-service: Efile Texas* |
| 411 East Wisconsin Avenue, Suite 2350 | |
| Milwaukee, Wisconsin  53202 | |

Mr. Oscar A. Garza
The Law Firm of Oscar A. Garza, LLC
111 Soledad Street, Suite 300
San Antonio, Texas 78205

**VIA FACSIMILE (210) 299-7711**
*and/or E-service: Efile Texas*

Mr. Michael A. Simpson
Mr. G. Alan Powers
Simpson, Boyd & Powers
P.O. Box 685
1119 Halsell Street
Bridgeport, Texas 76426

**VIA FACSIMILE (940) 683-3122**
*and/or E-service: Efile Texas*

*/s/ Daniel R. Dutko*
Daniel R. Dutko

# Tab 12

ICC Rules

INTERNATIONAL COURT OF ARBITRATION® | INTERNATIONAL CENTRE FOR ADR | LEADING DISPUTE RESOLUTION WORLDWIDE

# ARBITRATION RULES

# MEDIATION RULES



ICC INTERNATIONAL CHAMBER OF COMMERCE



International Chamber of Commerce (ICC)
33-43 avenue du Président Wilson
75116 Paris, France
**www.iccwbo.org**

Copyright © 2011, 2013
International Chamber of Commerce (ICC)

All rights reserved

ICC holds all copyright and other intellectual property
rights in this collective work. No part of this work may be
reproduced, distributed, transmitted, translated or adapted
in any form or by any means except as permitted by law
without the written permission of ICC. Permission can be
requested from ICC through copyright.drs@iccwbo.org.

Of the various languages in which these Rules are published,
the English and French versions are the only official texts.

ICC, the ICC logo, CCI, International Chamber of Commerce
(including Spanish, French, Portuguese and Chinese
translations), World Business Organization, International
Court of Arbitration and ICC International Court of
Arbitration (including Spanish, French, German, Arabic
and Portuguese translations) are all trademarks of ICC,
registered in several countries.

Designed by Fishburn®
www.thisisfishburn.com

Printed in France in June 2015 by
Imprimerie Port Royal, Trappes (78)

Dépôt legal juillet 2015

# ARBITRATION RULES

# MEDIATION RULES

*This booklet contains two discrete but complementary dispute resolution procedures offered by the International Chamber of Commerce (ICC). Arbitration under the ICC Arbitration Rules is a formal procedure leading to a binding decision from a neutral arbitral tribunal, susceptible to enforcement pursuant to both domestic arbitration laws and international treaties such as the 1958 New York Convention. Mediation under the ICC Mediation Rules is a flexible procedure aimed at achieving a negotiated settlement with the help of a neutral facilitator. The two sets of Rules are published together in this booklet in answer to the growing demand for a holistic approach to dispute resolution techniques.*

*Each set of Rules defines a structured, institutional framework intended to ensure transparency, efficiency and fairness in the dispute resolution process while allowing parties to exercise their choice over many aspects of procedure. Arbitration is administered by the International Court of Arbitration and mediation by the International Centre for ADR. These are the only bodies empowered to administer proceedings under their respective Rules, thereby affording parties the benefit of the experience, expertise and professionalism of a leading international dispute resolution provider.*

*Drafted by dispute resolution specialists and users representing a wide range of legal traditions, cultures and professions, these Rules provide a modern framework for the conduct of procedures and respond to the needs of international trade today. At the same time, they remain faithful to the ethos and essential features of ICC dispute resolution and, in particular, its suitability for use in any part of the world in proceedings conducted in any language and subject to any law.*

## FOREWORD

*The Arbitration Rules are those of 2012 when new provisions were added to address such matters as disputes involving multiple contracts and parties; updated case management procedures; the appointment of an emergency arbitrator to order urgent measures; and changes to facilitate the handling of disputes arising under investment treaties and free trade agreements. References to the ICC ADR Rules in Appendices III and IV of the Arbitration Rules have been replaced with references to the Mediation Rules.*

*The Mediation Rules, in force from 2014, reflect modern practice and set clear parameters for the conduct of proceedings, while recognizing and maintaining the need for flexibility. Like the ADR Rules, which they replace, they can be used for conducting other procedures or combinations of procedures that are similarly aimed at an amicable settlement of the dispute, such as conciliation or neutral evaluation.*

*Parties wishing to have recourse to ICC arbitration, mediation, or both, are encouraged to include an appropriate dispute resolution clause in their agreements. For this purpose, each set of Rules is followed by model clauses, together with guidance on their use and how they may be adjusted to particular needs and circumstances. The recommended clauses include multi-tiered clauses providing for a combination of techniques as well as clauses contemplating a single technique.*

*Both the Rules and the model clauses are available for use by parties, whether or not members of the ICC. For the convenience of users, they have been translated into several languages and can be downloaded from the ICC website.*

## TABLE OF CONTENTS

## ARBITRATION RULES      07

### Introductory Provisions      08

Article 1    International Court of Arbitration      08
Article 2    Definitions      09
Article 3    Written Notifications or Communications;
            Time Limits      09

### Commencing the Arbitration      11

Article 4    Request for Arbitration      11
Article 5    Answer to the Request; Counterclaims      12
Article 6    Effect of the Arbitration Agreement      14

### Multiple Parties, Multiple Contracts and Consolidation      17

Article 7    Joinder of Additional Parties      17
Article 8    Claims Between Multiple Parties      18
Article 9    Multiple Contracts      18
Article 10    Consolidation of Arbitrations      19

### The Arbitral Tribunal      20

Article 11    General Provisions      20
Article 12    Constitution of the Arbitral Tribunal      21
Article 13    Appointment and Confirmation of
            the Arbitrators      23
Article 14    Challenge of Arbitrators      24
Article 15    Replacement of Arbitrators      25

### The Arbitral Proceedings      26

Article 16    Transmission of the File to
            the Arbitral Tribunal      26
Article 17    Proof of Authority      26
Article 18    Place of the Arbitration      26
Article 19    Rules Governing the Proceedings      26
Article 20    Language of the Arbitration      27
Article 21    Applicable Rules of Law      27
Article 22    Conduct of the Arbitration      27
Article 23    Terms of Reference      28
Article 24    Case Management Conference and
            Procedural Timetable      29
Article 25    Establishing the Facts of the Case      30
Article 26    Hearings      31
Article 27    Closing of the Proceedings and Date
            for Submission of Draft Awards      32
Article 28    Conservatory and Interim Measures      32
Article 29    Emergency Arbitrator      33

## TABLE OF CONTENTS

### Awards — 35

Article 30  Time Limit for the Final Award — 35
Article 31  Making of the Award — 35
Article 32  Award by Consent — 35
Article 33  Scrutiny of the Award by the Court — 36
Article 34  Notification, Deposit and
Enforceability of the Award — 36
Article 35  Correction and Interpretation of
the Award; Remission of Awards — 37

### Costs — 38

Article 36  Advance to Cover the Costs of
the Arbitration — 38
Article 37  Decision as to the Costs of the Arbitration — 39

### Miscellaneous — 41

Article 38  Modified Time Limits — 41
Article 39  Waiver — 41
Article 40  Limitation of Liability — 41
Article 41  General Rule — 41

### Appendix I – Statutes of the International Court of Arbitration — 42

Article 1  Function — 42
Article 2  Composition of the Court — 42
Article 3  Appointment — 42
Article 4  Plenary Session of the Court — 43
Article 5  Committees — 43
Article 6  Confidentiality — 44
Article 7  Modification of the Rules of Arbitration — 44

### Appendix II – Internal Rules of the International Court of Arbitration — 45

Article 1  Confidential Character of the Work of
the International Court of Arbitration — 45
Article 2  Participation of Members of the
International Court of Arbitration in
ICC Arbitration — 46
Article 3  Relations Between the Members
of  the Court and the ICC National
Committees and Groups — 47
Article 4  Committee of the Court — 47
Article 5  Court Secretariat — 48
Article 6  Scrutiny of Arbitral Awards — 48

## Appendix III – Arbitration Costs and Fees     **49**

| Article 1 | Advance on Costs | 49 |
| Article 2 | Costs and Fees | 51 |
| Article 3 | ICC as Appointing Authority | 53 |
| Article 4 | Scales of Administrative Expenses and Arbitrator's Fees | 53 |

## Appendix IV – Case Management Techniques     **57**

## Appendix V – Emergency Arbitrator Rules     **59**

| Article 1 | Application for Emergency Measures | 59 |
| Article 2 | Appointment of the Emergency Arbitrator; Transmission of the File | 61 |
| Article 3 | Challenge of an Emergency Arbitrator | 62 |
| Article 4 | Place of the Emergency Arbitrator Proceedings | 62 |
| Article 5 | Proceedings | 63 |
| Article 6 | Order | 63 |
| Article 7 | Costs of the Emergency Arbitrator Proceedings | 64 |
| Article 8 | General Rule | 65 |

## ARBITRATION CLAUSES     **67**

## TABLE OF CONTENTS

### MEDIATION RULES                                                     71

| Article 1 | Introductory Provisions | 72 |
| Article 2 | Commencement Where there is an Agreement to Refer to the Rules | 73 |
| Article 3 | Commencement Where there is No Prior Agreement to Refer to the Rules | 74 |
| Article 4 | Place and Language(s) of the Mediation | 75 |
| Article 5 | Selection of the Mediator | 75 |
| Article 6 | Fees and Costs | 77 |
| Article 7 | Conduct of the Mediation | 78 |
| Article 8 | Termination of the Proceedings | 78 |
| Article 9 | Confidentiality | 79 |
| Article 10 | General Provisions | 80 |

### Appendix – Fees and Costs                                           82

| Article 1 | Filing Fee | 82 |
| Article 2 | Administrative Expenses | 82 |
| Article 3 | Mediator's Fees and Expenses | 83 |
| Article 4 | Prior ICC Arbitration | 84 |
| Article 5 | Currency, VAT and Scope | 84 |
| Article 6 | ICC as Appointing Authority | 85 |

### MEDIATION CLAUSES                                                   87

# ARBITRATION RULES

**Rules of Arbitration of the International Chamber of Commerce**

In force as from 1 January 2012



## ARTICLE 1

### International Court of Arbitration

1   The International Court of Arbitration (the "Court") of the International Chamber of Commerce (the "ICC") is the independent arbitration body of the ICC. The statutes of the Court are set forth in Appendix I.

2   The Court does not itself resolve disputes. It administers the resolution of disputes by arbitral tribunals, in accordance with the Rules of Arbitration of the ICC (the "Rules"). The Court is the only body authorized to administer arbitrations under the Rules, including the scrutiny and approval of awards rendered in accordance with the Rules. It draws up its own internal rules, which are set forth in Appendix II (the "Internal Rules").

3   The President of the Court (the "President") or, in the President's absence or otherwise at the President's request, one of its Vice-Presidents shall have the power to take urgent decisions on behalf of the Court, provided that any such decision is reported to the Court at its next session.

4   As provided for in the Internal Rules, the Court may delegate to one or more committees composed of its members the power to take certain decisions, provided that any such decision is reported to the Court at its next session.

5   The Court is assisted in its work by the Secretariat of the Court (the "Secretariat") under the direction of its Secretary General (the "Secretary General").

## ARTICLE 2

### Definitions

In the Rules:

(i) "arbitral tribunal" includes one or more arbitrators;

(ii) "claimant" includes one or more claimants, "respondent" includes one or more respondents, and "additional party" includes one or more additional parties;

(iii) "party" or "parties" include claimants, respondents or additional parties;

(iv) "claim" or "claims" include any claim by any party against any other party;

(v) "award" includes, *inter alia*, an interim, partial or final award.

## ARTICLE 3

### Written Notifications or Communications; Time Limits

1 All pleadings and other written communications submitted by any party, as well as all documents annexed thereto, shall be supplied in a number of copies sufficient to provide one copy for each party, plus one for each arbitrator, and one for the Secretariat. A copy of any notification or communication from the arbitral tribunal to the parties shall be sent to the Secretariat.

2 All notifications or communications from the Secretariat and the arbitral tribunal shall be made to the last address of the party or its representative for whom the same are intended, as notified either by the party in question or by the other party. Such notification or communication may be made by delivery against receipt, registered post, courier, email, or any other means of telecommunication that provides a record of the sending thereof.

3   A notification or communication shall be deemed to have been made on the day it was received by the party itself or by its representative, or would have been received if made in accordance with Article 3(2).

4   Periods of time specified in or fixed under the Rules shall start to run on the day following the date a notification or communication is deemed to have been made in accordance with Article 3(3). When the day next following such date is an official holiday, or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall commence on the first following business day. Official holidays and non-business days are included in the calculation of the period of time. If the last day of the relevant period of time granted is an official holiday or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall expire at the end of the first following business day.

## ARTICLE 4

### Request for Arbitration

1   A party wishing to have recourse to arbitration under the Rules shall submit its Request for Arbitration (the "Request") to the Secretariat at any of the offices specified in the Internal Rules. The Secretariat shall notify the claimant and respondent of the receipt of the Request and the date of such receipt.

2   The date on which the Request is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of the arbitration.

3   The Request shall contain the following information:

   a) the name in full, description, address and other contact details of each of the parties;

   b) the name in full, address and other contact details of any person(s) representing the claimant in the arbitration;

   c) a description of the nature and circumstances of the dispute giving rise to the claims and of the basis upon which the claims are made;

   d) a statement of the relief sought, together with the amounts of any quantified claims and, to the extent possible, an estimate of the monetary value of any other claims;

   e) any relevant agreements and, in particular, the arbitration agreement(s);

   f) where claims are made under more than one arbitration agreement, an indication of the arbitration agreement under which each claim is made;

   g) all relevant particulars and any observations or proposals concerning the number of arbitrators and their choice in accordance with the provisions of Articles 12 and 13, and any nomination of an arbitrator required thereby; and

   h) all relevant particulars and any observations or proposals as to the place of the arbitration, the applicable rules of law and the language of the arbitration.

The claimant may submit such other documents or information with the Request as it considers appropriate or as may contribute to the efficient resolution of the dispute.

4   Together with the Request, the claimant shall:

   a)  submit the number of copies thereof required by Article 3(1); and

   b)  make payment of the filing fee required by Appendix III ("Arbitration Costs and Fees") in force on the date the Request is submitted.

   In the event that the claimant fails to comply with either of these requirements, the Secretariat may fix a time limit within which the claimant must comply, failing which the file shall be closed without prejudice to the claimant's right to submit the same claims at a later date in another Request.

5   The Secretariat shall transmit a copy of the Request and the documents annexed thereto to the respondent for its Answer to the Request once the Secretariat has sufficient copies of the Request and the required filing fee.

## ARTICLE 5

### Answer to the Request; Counterclaims

1   Within 30 days from the receipt of the Request from the Secretariat, the respondent shall submit an Answer (the "Answer") which shall contain the following information:

   a)  its name in full, description, address and other contact details;

   b)  the name in full, address and other contact details of any person(s) representing the respondent in the arbitration;

   c)  its comments as to the nature and circumstances of the dispute giving rise to the claims and the basis upon which the claims are made;

   d)  its response to the relief sought;

e) any observations or proposals concerning the number of arbitrators and their choice in light of the claimant's proposals and in accordance with the provisions of Articles 12 and 13, and any nomination of an arbitrator required thereby; and

f) any observations or proposals as to the place of the arbitration, the applicable rules of law and the language of the arbitration.

The respondent may submit such other documents or information with the Answer as it considers appropriate or as may contribute to the efficient resolution of the dispute.

2 The Secretariat may grant the respondent an extension of the time for submitting the Answer, provided the application for such an extension contains the respondent's observations or proposals concerning the number of arbitrators and their choice and, where required by Articles 12 and 13, the nomination of an arbitrator. If the respondent fails to do so, the Court shall proceed in accordance with the Rules.

3 The Answer shall be submitted to the Secretariat in the number of copies specified by Article 3(1).

4 The Secretariat shall communicate the Answer and the documents annexed thereto to all other parties.

5 Any counterclaims made by the respondent shall be submitted with the Answer and shall provide:

a) a description of the nature and circumstances of the dispute giving rise to the counterclaims and of the basis upon which the counterclaims are made;

b) a statement of the relief sought together with the amounts of any quantified counterclaims and, to the extent possible, an estimate of the monetary value of any other counterclaims;

c) any relevant agreements and, in particular, the arbitration agreement(s); and

d) where counterclaims are made under more than one arbitration agreement, an indication of the arbitration agreement under which each counterclaim is made.

The respondent may submit such other documents or information with the counterclaims as it considers appropriate or as may contribute to the efficient resolution of the dispute.

6   The claimant shall submit a reply to any counterclaim within 30 days from the date of receipt of the counterclaims communicated by the Secretariat. Prior to the transmission of the file to the arbitral tribunal, the Secretariat may grant the claimant an extension of time for submitting the reply.

## ARTICLE 6

### Effect of the Arbitration Agreement

1   Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted *ipso facto* to the Rules in effect on the date of commencement of the arbitration, unless they have agreed to submit to the Rules in effect on the date of their arbitration agreement.

2   By agreeing to arbitration under the Rules, the parties have accepted that the arbitration shall be administered by the Court.

3   If any party against which a claim has been made does not submit an Answer, or raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal, unless the Secretary General refers the matter to the Court for its decision pursuant to Article 6(4).

4   In all cases referred to the Court under Article 6(3), the Court shall decide whether and to what extent the arbitration shall proceed. The arbitration shall proceed if and to the extent that the Court is *prima facie* satisfied that an arbitration agreement under the Rules may exist. In particular:

(i) where there are more than two parties to the arbitration, the arbitration shall proceed between those of the parties, including any additional parties joined pursuant to Article 7, with respect to which the Court is *prima facie* satisfied that an arbitration agreement under the Rules that binds them all may exist; and

(ii) where claims pursuant to Article 9 are made under more than one arbitration agreement, the arbitration shall proceed as to those claims with respect to which the Court is *prima facie* satisfied (a) that the arbitration agreements under which those claims are made may be compatible, and (b) that all parties to the arbitration may have agreed that those claims can be determined together in a single arbitration.

The Court's decision pursuant to Article 6(4) is without prejudice to the admissibility or merits of any party's plea or pleas.

5   In all matters decided by the Court under Article 6(4), any decision as to the jurisdiction of the arbitral tribunal, except as to parties or claims with respect to which the Court decides that the arbitration cannot proceed, shall then be taken by the arbitral tribunal itself.

6   Where the parties are notified of the Court's decision pursuant to Article 6(4) that the arbitration cannot proceed in respect of some or all of them, any party retains the right to ask any court having jurisdiction whether or not, and in respect of which of them, there is a binding arbitration agreement.

7   Where the Court has decided pursuant to Article 6(4) that the arbitration cannot proceed in respect of any of the claims, such decision shall not prevent a party from reintroducing the same claim at a later date in other proceedings.

8   If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure.

9   Unless otherwise agreed, the arbitral tribunal shall not cease to have jurisdiction by reason of any allegation that the contract is non-existent or null and void, provided that the arbitral tribunal upholds the validity of the arbitration agreement. The arbitral tribunal shall continue to have jurisdiction to determine the parties' respective rights and to decide their claims and pleas even though the contract itself may be non-existent or null and void.

## ARTICLE 7

### Joinder of Additional Parties

1   A party wishing to join an additional party to the arbitration shall submit its request for arbitration against the additional party (the "Request for Joinder") to the Secretariat. The date on which the Request for Joinder is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of arbitration against the additional party. Any such joinder shall be subject to the provisions of Articles 6(3)–6(7) and 9. No additional party may be joined after the confirmation or appointment of any arbitrator, unless all parties, including the additional party, otherwise agree. The Secretariat may fix a time limit for the submission of a Request for Joinder.

2   The Request for Joinder shall contain the following information:

   a)  the case reference of the existing arbitration;

   b)  the name in full, description, address and other contact details of each of the parties, including the additional party; and

   c)  the information specified in Article 4(3), subparagraphs c), d), e) and f).

   The party filing the Request for Joinder may submit therewith such other documents or information as it considers appropriate or as may contribute to the efficient resolution of the dispute.

3   The provisions of Articles 4(4) and 4(5) shall apply, *mutatis mutandis*, to the Request for Joinder.

4   The additional party shall submit an Answer in accordance, *mutatis mutandis*, with the provisions of Articles 5(1)–5(4). The additional party may make claims against any other party in accordance with the provisions of Article 8.

## ARTICLE 8

### Claims Between Multiple Parties

1   In an arbitration with multiple parties, claims may be made by any party against any other party, subject to the provisions of Articles 6(3)–6(7) and 9 and provided that no new claims may be made after the Terms of Reference are signed or approved by the Court without the authorization of the arbitral tribunal pursuant to Article 23(4).

2   Any party making a claim pursuant to Article 8(1) shall provide the information specified in Article 4(3), subparagraphs c), d), e) and f).

3   Before the Secretariat transmits the file to the arbitral tribunal in accordance with Article 16, the following provisions shall apply, *mutatis mutandis*, to any claim made: Article 4(4) subparagraph a); Article 4(5); Article 5(1) except for subparagraphs a), b), e) and f); Article 5(2); Article 5(3) and Article 5(4). Thereafter, the arbitral tribunal shall determine the procedure for making a claim.

## ARTICLE 9

### Multiple Contracts

Subject to the provisions of Articles 6(3)–6(7) and 23(4), claims arising out of or in connection with more than one contract may be made in a single arbitration, irrespective of whether such claims are made under one or more than one arbitration agreement under the Rules.

## ARTICLE 10

### Consolidation of Arbitrations

The Court may, at the request of a party, consolidate two or more arbitrations pending under the Rules into a single arbitration, where:

a) the parties have agreed to consolidation; or

b) all of the claims in the arbitrations are made under the same arbitration agreement; or

c) where the claims in the arbitrations are made under more than one arbitration agreement, the arbitrations are between the same parties, the disputes in the arbitrations arise in connection with the same legal relationship, and the Court finds the arbitration agreements to be compatible.

In deciding whether to consolidate, the Court may take into account any circumstances it considers to be relevant, including whether one or more arbitrators have been confirmed or appointed in more than one of the arbitrations and, if so, whether the same or different persons have been confirmed or appointed.

When arbitrations are consolidated, they shall be consolidated into the arbitration that commenced first, unless otherwise agreed by all parties.

## ARTICLE 11

### General Provisions

1   Every arbitrator must be and remain impartial and independent of the parties involved in the arbitration.

2   Before appointment or confirmation, a prospective arbitrator shall sign a statement of acceptance, availability, impartiality and independence. The prospective arbitrator shall disclose in writing to the Secretariat any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties, as well as any circumstances that could give rise to reasonable doubts as to the arbitrator's impartiality. The Secretariat shall provide such information to the parties in writing and fix a time limit for any comments from them.

3   An arbitrator shall immediately disclose in writing to the Secretariat and to the parties any facts or circumstances of a similar nature to those referred to in Article 11(2) concerning the arbitrator's impartiality or independence which may arise during the arbitration.

4   The decisions of the Court as to the appointment, confirmation, challenge or replacement of an arbitrator shall be final, and the reasons for such decisions shall not be communicated.

5   By accepting to serve, arbitrators undertake to carry out their responsibilities in accordance with the Rules.

6   Insofar as the parties have not provided otherwise, the arbitral tribunal shall be constituted in accordance with the provisions of Articles 12 and 13.

## ARTICLE 12

### Constitution of the Arbitral Tribunal
### Number of Arbitrators

1   The disputes shall be decided by a sole arbitrator or by three arbitrators.

2   Where the parties have not agreed upon the number of arbitrators, the Court shall appoint a sole arbitrator, save where it appears to the Court that the dispute is such as to warrant the appointment of three arbitrators. In such case, the claimant shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the decision of the Court, and the respondent shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the nomination made by the claimant. If a party fails to nominate an arbitrator, the appointment shall be made by the Court.

### Sole Arbitrator

3   Where the parties have agreed that the dispute shall be resolved by a sole arbitrator, they may, by agreement, nominate the sole arbitrator for confirmation. If the parties fail to nominate a sole arbitrator within 30 days from the date when the claimant's Request for Arbitration has been received by the other party, or within such additional time as may be allowed by the Secretariat, the sole arbitrator shall be appointed by the Court.

### Three Arbitrators

4   Where the parties have agreed that the dispute shall be resolved by three arbitrators, each party shall nominate in the Request and the Answer, respectively, one arbitrator for confirmation. If a party fails to nominate an arbitrator, the appointment shall be made by the Court.

5   Where the dispute is to be referred to three arbitrators, the third arbitrator, who will act as president of the arbitral tribunal, shall be appointed by the Court, unless the parties have agreed upon another procedure for such appointment, in which case the nomination will be subject to confirmation pursuant to Article 13. Should such procedure not result in a nomination within 30 days from the confirmation or appointment of the co-arbitrators or any other time limit agreed by the parties or fixed by the Court, the third arbitrator shall be appointed by the Court.

6   Where there are multiple claimants or multiple respondents, and where the dispute is to be referred to three arbitrators, the multiple claimants, jointly, and the multiple respondents, jointly, shall nominate an arbitrator for confirmation pursuant to Article 13.

7   Where an additional party has been joined, and where the dispute is to be referred to three arbitrators, the additional party may, jointly with the claimant(s) or with the respondent(s), nominate an arbitrator for confirmation pursuant to Article 13.

8   In the absence of a joint nomination pursuant to Articles 12(6) or 12(7) and where all parties are unable to agree to a method for the constitution of the arbitral tribunal, the Court may appoint each member of the arbitral tribunal and shall designate one of them to act as president. In such case, the Court shall be at liberty to choose any person it regards as suitable to act as arbitrator, applying Article 13 when it considers this appropriate.

## ARTICLE 13

### Appointment and Confirmation of the Arbitrators

1   In confirming or appointing arbitrators, the Court shall consider the prospective arbitrator's nationality, residence and other relationships with the countries of which the parties or the other arbitrators are nationals and the prospective arbitrator's availability and ability to conduct the arbitration in accordance with the Rules. The same shall apply where the Secretary General confirms arbitrators pursuant to Article 13(2).

2   The Secretary General may confirm as co-arbitrators, sole arbitrators and presidents of arbitral tribunals persons nominated by the parties or pursuant to their particular agreements, provided that the statement they have submitted contains no qualification regarding impartiality or independence or that a qualified statement regarding impartiality or independence has not given rise to objections. Such confirmation shall be reported to the Court at its next session. If the Secretary General considers that a co-arbitrator, sole arbitrator or president of an arbitral tribunal should not be confirmed, the matter shall be submitted to the Court.

3   Where the Court is to appoint an arbitrator, it shall make the appointment upon proposal of a National Committee or Group of the ICC that it considers to be appropriate. If the Court does not accept the proposal made, or if the National Committee or Group fails to make the proposal requested within the time limit fixed by the Court, the Court may repeat its request, request a proposal from another National Committee or Group that it considers to be appropriate, or appoint directly any person whom it regards as suitable.

4   The Court may also appoint directly to act as arbitrator any person whom it regards as suitable where:

   a) one or more of the parties is a state or claims to be a state entity; or

b) the Court considers that it would be appropriate to appoint an arbitrator from a country or territory where there is no National Committee or Group; or

c) the President certifies to the Court that circumstances exist which, in the President's opinion, make a direct appointment necessary and appropriate.

5   The sole arbitrator or the president of the arbitral tribunal shall be of a nationality other than those of the parties. However, in suitable circumstances and provided that none of the parties objects within the time limit fixed by the Court, the sole arbitrator or the president of the arbitral tribunal may be chosen from a country of which any of the parties is a national.

## ARTICLE 14

### Challenge of Arbitrators

1   A challenge of an arbitrator, whether for an alleged lack of impartiality or independence, or otherwise, shall be made by the submission to the Secretariat of a written statement specifying the facts and circumstances on which the challenge is based.

2   For a challenge to be admissible, it must be submitted by a party either within 30 days from receipt by that party of the notification of the appointment or confirmation of the arbitrator, or within 30 days from the date when the party making the challenge was informed of the facts and circumstances on which the challenge is based if such date is subsequent to the receipt of such notification.

3   The Court shall decide on the admissibility and, at the same time, if necessary, on the merits of a challenge after the Secretariat has afforded an opportunity for the arbitrator concerned, the other party or parties and any other members of the arbitral tribunal to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

## ARTICLE 15

### Replacement of Arbitrators

1   An arbitrator shall be replaced upon death, upon acceptance by the Court of the arbitrator's resignation, upon acceptance by the Court of a challenge, or upon acceptance by the Court of a request of all the parties.

2   An arbitrator shall also be replaced on the Court's own initiative when it decides that the arbitrator is prevented *de jure* or *de facto* from fulfilling the arbitrator's functions, or that the arbitrator is not fulfilling those functions in accordance with the Rules or within the prescribed time limits.

3   When, on the basis of information that has come to its attention, the Court considers applying Article 15(2), it shall decide on the matter after the arbitrator concerned, the parties and any other members of the arbitral tribunal have had an opportunity to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

4   When an arbitrator is to be replaced, the Court has discretion to decide whether or not to follow the original nominating process. Once reconstituted, and after having invited the parties to comment, the arbitral tribunal shall determine if and to what extent prior proceedings shall be repeated before the reconstituted arbitral tribunal.

5   Subsequent to the closing of the proceedings, instead of replacing an arbitrator who has died or been removed by the Court pursuant to Articles 15(1) or 15(2), the Court may decide, when it considers it appropriate, that the remaining arbitrators shall continue the arbitration. In making such determination, the Court shall take into account the views of the remaining arbitrators and of the parties and such other matters that it considers appropriate in the circumstances.

## ARTICLE 16

### Transmission of the File to the Arbitral Tribunal

The Secretariat shall transmit the file to the arbitral tribunal as soon as it has been constituted, provided the advance on costs requested by the Secretariat at this stage has been paid.

## ARTICLE 17

### Proof of Authority

At any time after the commencement of the arbitration, the arbitral tribunal or the Secretariat may require proof of the authority of any party representatives.

## ARTICLE 18

### Place of the Arbitration

1  The place of the arbitration shall be fixed by the Court, unless agreed upon by the parties.

2  The arbitral tribunal may, after consultation with the parties, conduct hearings and meetings at any location it considers appropriate, unless otherwise agreed by the parties.

3  The arbitral tribunal may deliberate at any location it considers appropriate.

## ARTICLE 19

### Rules Governing the Proceedings

The proceedings before the arbitral tribunal shall be governed by the Rules and, where the Rules are silent, by any rules which the parties or, failing them, the arbitral tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

## ARTICLE 20

### Language of the Arbitration

In the absence of an agreement by the parties, the arbitral tribunal shall determine the language or languages of the arbitration, due regard being given to all relevant circumstances, including the language of the contract.

## ARTICLE 21

### Applicable Rules of Law

1   The parties shall be free to agree upon the rules of law to be applied by the arbitral tribunal to the merits of the dispute. In the absence of any such agreement, the arbitral tribunal shall apply the rules of law which it determines to be appropriate.

2   The arbitral tribunal shall take account of the provisions of the contract, if any, between the parties and of any relevant trade usages.

3   The arbitral tribunal shall assume the powers of an *amiable compositeur* or decide *ex aequo et bono* only if the parties have agreed to give it such powers.

## ARTICLE 22

### Conduct of the Arbitration

1   The arbitral tribunal and the parties shall make every effort to conduct the arbitration in an expeditious and cost-effective manner, having regard to the complexity and value of the dispute.

2   In order to ensure effective case management, the arbitral tribunal, after consulting the parties, may adopt such procedural measures as it considers appropriate, provided that they are not contrary to any agreement of the parties.

3   Upon the request of any party, the arbitral tribunal may make orders concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration and may take measures for protecting trade secrets and confidential information.

4   In all cases, the arbitral tribunal shall act fairly and impartially and ensure that each party has a reasonable opportunity to present its case.

5   The parties undertake to comply with any order made by the arbitral tribunal.

## ARTICLE 23

### Terms of Reference

1   As soon as it has received the file from the Secretariat, the arbitral tribunal shall draw up, on the basis of documents or in the presence of the parties and in the light of their most recent submissions, a document defining its Terms of Reference. This document shall include the following particulars:

   a) the names in full, description, address and other contact details of each of the parties and of any person(s) representing a party in the arbitration;

   b) the addresses to which notifications and communications arising in the course of the arbitration may be made;

   c) a summary of the parties' respective claims and of the relief sought by each party, together with the amounts of any quantified claims and, to the extent possible, an estimate of the monetary value of any other claims;

   d) unless the arbitral tribunal considers it inappropriate, a list of issues to be determined;

   e) the names in full, address and other contact details of each of the arbitrators;

   f) the place of the arbitration; and

g) particulars of the applicable procedural rules and, if such is the case, reference to the power conferred upon the arbitral tribunal to act as *amiable compositeur* or to decide *ex aequo et bono.*

2 The Terms of Reference shall be signed by the parties and the arbitral tribunal. Within two months of the date on which the file has been transmitted to it, the arbitral tribunal shall transmit to the Court the Terms of Reference signed by it and by the parties. The Court may extend this time limit pursuant to a reasoned request from the arbitral tribunal or on its own initiative if it decides it is necessary to do so.

3 If any of the parties refuses to take part in the drawing up of the Terms of Reference or to sign the same, they shall be submitted to the Court for approval. When the Terms of Reference have been signed in accordance with Article 23(2) or approved by the Court, the arbitration shall proceed.

4 After the Terms of Reference have been signed or approved by the Court, no party shall make new claims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the arbitral tribunal, which shall consider the nature of such new claims, the stage of the arbitration and other relevant circumstances.

## ARTICLE 24

### Case Management Conference and Procedural Timetable

1 When drawing up the Terms of Reference or as soon as possible thereafter, the arbitral tribunal shall convene a case management conference to consult the parties on procedural measures that may be adopted pursuant to Article 22(2). Such measures may include one or more of the case management techniques described in Appendix IV.

2   During or following such conference, the arbitral tribunal shall establish the procedural timetable that it intends to follow for the conduct of the arbitration. The procedural timetable and any modifications thereto shall be communicated to the Court and the parties.

3   To ensure continued effective case management, the arbitral tribunal, after consulting the parties by means of a further case management conference or otherwise, may adopt further procedural measures or modify the procedural timetable.

4   Case management conferences may be conducted through a meeting in person, by video conference, telephone or similar means of communication. In the absence of an agreement of the parties, the arbitral tribunal shall determine the means by which the conference will be conducted. The arbitral tribunal may request the parties to submit case management proposals in advance of a case management conference and may request the attendance at any case management conference of the parties in person or through an internal representative.

## ARTICLE 25

### Establishing the Facts of the Case

1   The arbitral tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means.

2   After studying the written submissions of the parties and all documents relied upon, the arbitral tribunal shall hear the parties together in person if any of them so requests or, failing such a request, it may of its own motion decide to hear them.

3   The arbitral tribunal may decide to hear witnesses, experts appointed by the parties or any other person, in the presence of the parties, or in their absence provided they have been duly summoned.

4   The arbitral tribunal, after having consulted the parties, may appoint one or more experts, define their terms of reference and receive their reports. At the request of a party, the parties shall be given the opportunity to question at a hearing any such expert.

5   At any time during the proceedings, the arbitral tribunal may summon any party to provide additional evidence.

6   The arbitral tribunal may decide the case solely on the documents submitted by the parties unless any of the parties requests a hearing.

## ARTICLE 26

### Hearings

1   When a hearing is to be held, the arbitral tribunal, giving reasonable notice, shall summon the parties to appear before it on the day and at the place fixed by it.

2   If any of the parties, although duly summoned, fails to appear without valid excuse, the arbitral tribunal shall have the power to proceed with the hearing.

3   The arbitral tribunal shall be in full charge of the hearings, at which all the parties shall be entitled to be present. Save with the approval of the arbitral tribunal and the parties, persons not involved in the proceedings shall not be admitted.

4   The parties may appear in person or through duly authorized representatives. In addition, they may be assisted by advisers.

## ARTICLE 27

### Closing of the Proceedings and Date for Submission of Draft Awards

As soon as possible after the last hearing concerning matters to be decided in an award or the filing of the last authorized submissions concerning such matters, whichever is later, the arbitral tribunal shall:

a)  declare the proceedings closed with respect to the matters to be decided in the award; and

b)  inform the Secretariat and the parties of the date by which it expects to submit its draft award to the Court for approval pursuant to Article 33.

After the proceedings are closed, no further submission or argument may be made, or evidence produced, with respect to the matters to be decided in the award, unless requested or authorized by the arbitral tribunal.

## ARTICLE 28

### Conservatory and Interim Measures

1   Unless the parties have otherwise agreed, as soon as the file has been transmitted to it, the arbitral tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate. The arbitral tribunal may make the granting of any such measure subject to appropriate security being furnished by the requesting party. Any such measure shall take the form of an order, giving reasons, or of an award, as the arbitral tribunal considers appropriate.

2   Before the file is transmitted to the arbitral tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim or conservatory measures. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an arbitral tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the arbitral tribunal.

Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat. The Secretariat shall inform the arbitral tribunal thereof.

## ARTICLE 29

### Emergency Arbitrator

1   A party that needs urgent interim or conservatory measures that cannot await the constitution of an arbitral tribunal ("Emergency Measures") may make an application for such measures pursuant to the Emergency Arbitrator Rules in Appendix V. Any such application shall be accepted only if it is received by the Secretariat prior to the transmission of the file to the arbitral tribunal pursuant to Article 16 and irrespective of whether the party making the application has already submitted its Request for Arbitration.

2   The emergency arbitrator's decision shall take the form of an order. The parties undertake to comply with any order made by the emergency arbitrator.

3   The emergency arbitrator's order shall not bind the arbitral tribunal with respect to any question, issue or dispute determined in the order. The arbitral tribunal may modify, terminate or annul the order or any modification thereto made by the emergency arbitrator.

4   The arbitral tribunal shall decide upon any party's requests or claims related to the emergency arbitrator proceedings, including the reallocation of the costs of such proceedings and any claims arising out of or in connection with the compliance or non-compliance with the order.

5   Articles 29(1)–29(4) and the Emergency Arbitrator Rules set forth in Appendix V (collectively the "Emergency Arbitrator Provisions") shall apply only to parties that are either signatories of the arbitration agreement under the Rules that is relied upon for the application or successors to such signatories.

6   The Emergency Arbitrator Provisions shall not apply if:

   a) the arbitration agreement under the Rules was concluded before the date on which the Rules came into force;

   b) the parties have agreed to opt out of the Emergency Arbitrator Provisions; or

   c) the parties have agreed to another pre-arbitral procedure that provides for the granting of conservatory, interim or similar measures.

7   The Emergency Arbitrator Provisions are not intended to prevent any party from seeking urgent interim or conservatory measures from a competent judicial authority at any time prior to making an application for such measures, and in appropriate circumstances even thereafter, pursuant to the Rules. Any application for such measures from a competent judicial authority shall not be deemed to be an infringement or a waiver of the arbitration agreement. Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat.

## ARTICLE 30

### Time Limit for the Final Award

1   The time limit within which the arbitral tribunal must render its final award is six months. Such time limit shall start to run from the date of the last signature by the arbitral tribunal or by the parties of the Terms of Reference or, in the case of application of Article 23(3), the date of the notification to the arbitral tribunal by the Secretariat of the approval of the Terms of Reference by the Court. The Court may fix a different time limit based upon the procedural timetable established pursuant to Article 24(2).

2   The Court may extend the time limit pursuant to a reasoned request from the arbitral tribunal or on its own initiative if it decides it is necessary to do so.

## ARTICLE 31

### Making of the Award

1   When the arbitral tribunal is composed of more than one arbitrator, an award is made by a majority decision. If there is no majority, the award shall be made by the president of the arbitral tribunal alone.

2   The award shall state the reasons upon which it is based.

3   The award shall be deemed to be made at the place of the arbitration and on the date stated therein.

## ARTICLE 32

### Award by Consent

If the parties reach a settlement after the file has been transmitted to the arbitral tribunal in accordance with Article 16, the settlement shall be recorded in the form of an award made by consent of the parties, if so requested by the parties and if the arbitral tribunal agrees to do so.

## ARTICLE 33

### Scrutiny of the Award by the Court

Before signing any award, the arbitral tribunal shall submit it in draft form to the Court. The Court may lay down modifications as to the form of the award and, without affecting the arbitral tribunal's liberty of decision, may also draw its attention to points of substance. No award shall be rendered by the arbitral tribunal until it has been approved by the Court as to its form.

## ARTICLE 34

### Notification, Deposit and Enforceability of the Award

1 Once an award has been made, the Secretariat shall notify to the parties the text signed by the arbitral tribunal, provided always that the costs of the arbitration have been fully paid to the ICC by the parties or by one of them.

2 Additional copies certified true by the Secretary General shall be made available on request and at any time to the parties, but to no one else.

3 By virtue of the notification made in accordance with Article 34(1), the parties waive any other form of notification or deposit on the part of the arbitral tribunal.

4 An original of each award made in accordance with the Rules shall be deposited with the Secretariat.

5 The arbitral tribunal and the Secretariat shall assist the parties in complying with whatever further formalities may be necessary.

6 Every award shall be binding on the parties. By submitting the dispute to arbitration under the Rules, the parties undertake to carry out any award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made.

## ARTICLE 35

### Correction and Interpretation of the Award; Remission of Awards

1 On its own initiative, the arbitral tribunal may correct a clerical, computational or typographical error, or any errors of similar nature contained in an award, provided such correction is submitted for approval to the Court within 30 days of the date of such award.

2 Any application of a party for the correction of an error of the kind referred to in Article 35(1), or for the interpretation of an award, must be made to the Secretariat within 30 days of the receipt of the award by such party, in a number of copies as stated in Article 3(1). After transmittal of the application to the arbitral tribunal, the latter shall grant the other party a short time limit, normally not exceeding 30 days, from the receipt of the application by that party, to submit any comments thereon. The arbitral tribunal shall submit its decision on the application in draft form to the Court not later than 30 days following the expiration of the time limit for the receipt of any comments from the other party or within such other period as the Court may decide.

3 A decision to correct or to interpret the award shall take the form of an addendum and shall constitute part of the award. The provisions of Articles 31, 33 and 34 shall apply *mutatis mutandis*.

4 Where a court remits an award to the arbitral tribunal, the provisions of Articles 31, 33, 34 and this Article 35 shall apply *mutatis mutandis* to any addendum or award made pursuant to the terms of such remission. The Court may take any steps as may be necessary to enable the arbitral tribunal to comply with the terms of such remission and may fix an advance to cover any additional fees and expenses of the arbitral tribunal and any additional ICC administrative expenses.

## ARTICLE 36

### Advance to Cover the Costs of the Arbitration

1 After receipt of the Request, the Secretary General may request the claimant to pay a provisional advance in an amount intended to cover the costs of the arbitration until the Terms of Reference have been drawn up. Any provisional advance paid will be considered as a partial payment by the claimant of any advance on costs fixed by the Court pursuant to this Article 36.

2 As soon as practicable, the Court shall fix the advance on costs in an amount likely to cover the fees and expenses of the arbitrators and the ICC administrative expenses for the claims which have been referred to it by the parties, unless any claims are made under Article 7 or 8 in which case Article 36(4) shall apply. The advance on costs fixed by the Court pursuant to this Article 36(2) shall be payable in equal shares by the claimant and the respondent.

3 Where counterclaims are submitted by the respondent under Article 5 or otherwise, the Court may fix separate advances on costs for the claims and the counterclaims. When the Court has fixed separate advances on costs, each of the parties shall pay the advance on costs corresponding to its claims.

4 Where claims are made under Article 7 or 8, the Court shall fix one or more advances on costs that shall be payable by the parties as decided by the Court. Where the Court has previously fixed any advance on costs pursuant to this Article 36, any such advance shall be replaced by the advance(s) fixed pursuant to this Article 36(4), and the amount of any advance previously paid by any party will be considered as a partial payment by such party of its share of the advance(s) on costs as fixed by the Court pursuant to this Article 36(4).

5   The amount of any advance on costs fixed by the Court pursuant to this Article 36 may be subject to readjustment at any time during the arbitration. In all cases, any party shall be free to pay any other party's share of any advance on costs should such other party fail to pay its share.

6   When a request for an advance on costs has not been complied with, and after consultation with the arbitral tribunal, the Secretary General may direct the arbitral tribunal to suspend its work and set a time limit, which must be not less than 15 days, on the expiry of which the relevant claims shall be considered as withdrawn. Should the party in question wish to object to this measure, it must make a request within the aforementioned period for the matter to be decided by the Court. Such party shall not be prevented, on the ground of such withdrawal, from reintroducing the same claims at a later date in another proceeding.

7   If one of the parties claims a right to a set-off with regard to any claim, such set-off shall be taken into account in determining the advance to cover the costs of the arbitration in the same way as a separate claim insofar as it may require the arbitral tribunal to consider additional matters.

## ARTICLE 37

### Decision as to the Costs of the Arbitration

1   The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitration, as well as the fees and expenses of any experts appointed by the arbitral tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.

2   The Court may fix the fees of the arbitrators at a figure higher or lower than that which would result from the application of the relevant scale should this be deemed necessary due to the exceptional circumstances of the case.

3   At any time during the arbitral proceedings, the arbitral tribunal may make decisions on costs, other than those to be fixed by the Court, and order payment.

4   The final award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

5   In making decisions as to costs, the arbitral tribunal may take into account such circumstances as it considers relevant, including the extent to which each party has conducted the arbitration in an expeditious and cost-effective manner.

6   In the event of the withdrawal of all claims or the termination of the arbitration before the rendering of a final award, the Court shall fix the fees and expenses of the arbitrators and the ICC administrative expenses. If the parties have not agreed upon the allocation of the costs of the arbitration or other relevant issues with respect to costs, such matters shall be decided by the arbitral tribunal. If the arbitral tribunal has not been constituted at the time of such withdrawal or termination, any party may request the Court to proceed with the constitution of the arbitral tribunal in accordance with the Rules so that the arbitral tribunal may make decisions as to costs.

## ARTICLE 38

### Modified Time Limits

1   The parties may agree to shorten the various time limits set out in the Rules. Any such agreement entered into subsequent to the constitution of an arbitral tribunal shall become effective only upon the approval of the arbitral tribunal.

2   The Court, on its own initiative, may extend any time limit which has been modified pursuant to Article 38(1) if it decides that it is necessary to do so in order that the arbitral tribunal and the Court may fulfil their responsibilities in accordance with the Rules.

## ARTICLE 39

### Waiver

A party which proceeds with the arbitration without raising its objection to a failure to comply with any provision of the Rules, or of any other rules applicable to the proceedings, any direction given by the arbitral tribunal, or any requirement under the arbitration agreement relating to the constitution of the arbitral tribunal or the conduct of the proceedings, shall be deemed to have waived its right to object.

## ARTICLE 40

### Limitation of Liability

The arbitrators, any person appointed by the arbitral tribunal, the emergency arbitrator, the Court and its members, the ICC and its employees, and the ICC National Committees and Groups and their employees and representatives shall not be liable to any person for any act or omission in connection with the arbitration, except to the extent such limitation of liability is prohibited by applicable law.

## ARTICLE 41

### General Rule

In all matters not expressly provided for in the Rules, the Court and the arbitral tribunal shall act in the spirit of the Rules and shall make every effort to make sure that the award is enforceable at law.